Tom Retzlaff
PO Box 46424
Phoenix, AZ 85063
210-317-9800

FILED ✓ LODGED
RECEIVED COPY

NOV 0 8 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF ARIZONA
PHOENIX DIVISION**

JASON LEE VAN DYKE,
*Plaintiff,*

v.                                                          CASE NO. CV-18-4003-PHX-JJT

TOM RETZLAFF,
*Defendant.*

## RETZLAFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND FOR SANCTIONS PURSUANT TO THE TEXAS CITIZENS PARTICIPATION ACT

## (oral argument requested)

Defendant, Tom Retzlaff, asks the Court to dismiss plaintiff's petition and request for injunction under the Texas Citizens Participation Act (codified in Texas Civil Practice & Remedies Code chapter 27). Retzlaff seeks $1 million in attorney's fees and mandatory sanctions.

## A. Introduction

1.     Plaintiff is Jason Lee Van Dyke; defendant is Tom Retzlaff.

2.     In his original petition, Van Dyke sued Retzlaff for injunctive relief in the form of both a temporary restraining order and a permanent injunction.

1

Van Dyke, who is an attorney licensed in Colorado, Georgia, Texas, and Washington, D.C. is also suing Retzlaff on behalf of two other individuals (Susan L. Van Dyke and Joshua L. Van Dyke – two adult individuals) even though Van Dyke is not licensed to practice law in Arizona and has not sought *pro hac vice* status with either the Arizona Supreme Court (pursuant to Arizona Supreme Court Rule 39) or with this Court (pursuant to LR Civ 83.1(b)(2). **See attached Exhibit One** – the State Court lawsuit.

3.      For what it is worth, Retzlaff would point out that because Van Dyke is pending disbarment by the State Bar of Texas[1], and is presently subject to disciplinary proceedings by the State Bars of both Colorado and Georgia (all based upon complaints filed by Retzlaff!), that Van Dyke is not eligible to practice before this Court anyways.  See LR Civ 83.1(b)(2)(iii), (iv).

**B.  Background**

4.      A strategic lawsuit against public participation (SLAPP) is a lawsuit that is intended to censor, intimidate, and silence critics by burdening them

---

[1] Van Dyke has a February 22, 2019, trial date for his disbarment case in *Comm'n for Lawyer Disc. v. Jason Lee Van Dyke*, Case No. 201707583, before the District 14 Grievance Committee – Evidentiary Panel 14-2 of Denton County, Texas.

with the cost of a legal defense until they abandon their criticism or opposition. The typical SLAPP plaintiff does not normally expect to win the lawsuit. The plaintiff's goals are accomplished if the defendant succumbs to fear, intimidation, mounting legal costs, or simple exhaustion and abandons the criticism. A SLAPP may also intimidate others from participating in the debate. A SLAPP is often preceded by a legal threat.

5.      Van Dyke, who is a leader of a violent white supremacist organization called the "Proud Boys", is currently under investigation by the New York City Police Department's Counterterrorism Bureau for his role in a violent street riot three weeks ago that resulted in the arrests of nine of the "Proud Boys", and for a string of violent attacks all across the nation – to include the "Unite the Right" rally in Charlottesville, VA. Van Dyke is also associated with San Jose, CA based revenge pornographer James McGibney (who claims to be a member of the illegal hacking groups *Anonymous* and *The Rustle League*).[2] McGibney has been sued at least four times in federal court for defamation, revenge porn, cyberstalking, blackmail, and RICO. He also filed a series of SLAPP lawsuits against Retzlaff that resulted in a

_____

[2] Interestingly enough, McGibney claims to be an informant for the FBI.

judgment against McGibney for $1.3 million in attorney's fees and sanctions.[3]

6.      Both Van Dyke and McGibney (internationally known white supremacists) have engaged in repeated SWATting attempts upon Retzlaff, his family, and lawyers by making a series of false reports to law enforcement agencies all across the country. These *police threat hoaxes* represent attempts by them to use law enforcement resources as a means of gaining an unfair advantage over Retzlaff and his lawyers in all of these SLAPP lawsuits.[4] In fact, no less than THREE associates of James McGibney are doing hard time in federal prison for computer hacking and cyberstalking type crimes: Matthew Keys, Deric Lostutter, and Justin Liverman.[5] And one associate, Christopher Doyon (aka "Commander X") is still on the run from the FBI today.

---

[3] *McGibney & ViaView, Inc. v. Retzlaff, et al*, Case No. 067-270669-14 in the 67th District Court of Tarrant County, Texas.

[4] McGibney has made specific claims and threats that he is going to hack into the computers of Retzlaff's attorneys at the Hanszen Laporte law firm in Houston, TX and place child porn on them as a means of intimidation and to deny Retzlaff his right to legal representation of his choice. He and Van Dyke have further falsely accused Retzlaff of being a cyberstalker and a member of the *ISIS* terrorist group, and of having a stockpile of illegal machine guns and bombs.

[5] Liverman is the individual who hacked into the email accounts for then-CIA chief John Brennan and James R. Clapper Jr., (former director of national intelligence); Keys hacked into the computer servers for the *LA Times* newspaper; and Lostutter (who falsely claims

4

7.     Van Dyke is an attorney licensed by the States of Texas, Georgia, Colorado, and the District of Columbia, who has made numerous appearances in the public media pontificating on such topics as revenge pornography, race relations, and governance. Van Dyke is also a former employee and felony prosecutor for the Victoria County (Tex.) District Attorney's office. **See Exhibit One** – Petition at ¶3.1. As such, Van Dyke is a public figure who has, or appears to the public to have, a significant role in the business of government and public affairs.

8.     Retzlaff attaches affidavits to this motion to establish facts not apparent from the record and incorporates them by reference.

9.     On April 10, 2018, Van Dyke filed a lawsuit against Retzlaff in Texas seeking $100 million in damages along with identical claims for injunctive relief. The lawsuit was removed to federal court and the matter is currently pending in the U.S. District Court for the Eastern District of Texas – Sherman Division, *Jason Van Dyke v. Thomas Retzlaff*, Case 4:18-cv-00247. **See attached Exhibit Two**. While Van Dyke admits that there is such a lawsuit currently pending, Van Dyke only tells this Court that he is merely

---

to having been involved in 'exposing' the Steubenville rape) is recently released from federal prison for computer hacking and lying to the FBI.

suing for "libel, intrusion on seclusion, and tortious interference with contract" (**see Exhibit One** – Petition at ¶3.1), and he totally leaves out the fact that he is also seeking identical injunctive relief as in this pending matter!

10.     Van Dyke is also openly racist, as evidenced by this recent Twitter post using his law firm's official account: **@MeanTXLawyer**.



And he is extremely violent and threatening.




**Jason L. Van Dyke**
@MeanTXLawyer

@OneTrueDoxbin: Your kiddies are quite a nuisance. My advice: run and hide. If I find you, I WILL kill both you and your family.

↩ Reply  ★ Favorite  ••• More

10 58 AM - 12 Sep 2014



# C. Argument & Authorities

## I.  This Action Is Governed By Texas Law

11.    Due to Arizona choice-of-law provisions, the Texas Anti-SLAPP statute (TCPA) is applicable to this case involving a plaintiff who claims Texas citizenship and who claims his injuries happened in Texas. *Pounders v. Enserch E&C Inc.*, 306 P.3d 9, 11-13 (Ariz. 2013); see, e.g., *Clifford v. Trump*, 2018 U.S. Dist. LEXIS 178688, *7-9 (C.D. of Calif. Oct 15, 2018) (applying TCPA to Calif. lawsuit involving Pres. Trump).

12.    Arizona follows the Restatement's "most significant relationship" test. See *Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Magellan Real Estate Inv. Tr. v. Losch*, 109 F.Supp.2d 1144, 1155 (D. Ariz. 2000); Restatement (Second) of Conflict of Laws.  Under this test, the law of the state that has the most significant relationship to an issue governs that issue. In a tort claim, factors to consider include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the

parties is centered." *Magellan*, 109 F.Supp.2d at 1156 (quoting Restatement (Second) of Conflict of Laws § 145).

13.     Further, the Restatement (Second) Conflicts of Law supports this Court finding that Texas law applies.  In defamation lawsuits involving "multistate communication," a court must apply "the local law of the state where the plaintiff has suffered the greatest injury by reason of [his] loss of reputation," which "will usually be the state of the plaintiff's domicile if the matter complained of has there been published."  Restatement (Second) of Conflict of Laws § 150 (1971).

14.     Van Dyke states in his petition that he is a citizen and resident **of Texas**, that he lost employment and other job opportunities **in Texas**, and damage to his reputation **in Texas**, and suffered alleged "stalking" and "harassment" **in Texas**, and that he has suffered $100 million in damages **in Texas** – all as a result of Retzlaff's alleged actions – **in Texas!**

## II.  The Texas Anti-SLAPP Statute Applies To This Action

15.     The Texas anti-SLAPP statute, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq.*, applies to any "[e]xercise of the right to free speech," which in turn

means "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" includes an issue related to "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). **See attached Exhibit Three** – full text of the TCPA.

16. The anti-SLAPP statute provides for a party to file a special motion to dismiss a legal action. Tex. Civ. Prac. & Rem. Code § 27.003(a). "In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The Court must dismiss the action unless "clear and specific evidence [establishes] a *prima facie* case for each essential element of the claim in question". *Id.* § 27.005(c).

17. When an individual attempts to manipulate the legal system to intimidate and silence others who have used the system to vindicate their

rights, the act threatens a core value of democracy – the right to petition the government to address a grievance. Laura Lee Prather and Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech L. Rev. 725, 727 (2015).

18.    In the case at hand, this is exactly what Van Dyke is doing here when he basically admits in his petition that this lawsuit (styled as a "Petition for injunction against harassment") is the direct result of (1) Retzlaff's alleged petitioning the government in the form of a grievance filed with the State Bar of Texas, and (2) his further alleged petitioning the government with regards to the qualifications (or complete lack thereof) Van Dyke has for the public office of Chief Felony Prosecutor in the Victoria County, Texas, District Attorney's Office, or (3) Retzlaff's alleged communications to others in the community relating to the legal services offered by Van Dyke (an attorney) in the marketplace, or (4) Retzlaff alleged communications on a public figure / public official and matters of public controversy.

19.    The Texas Legislature enacted the Texas Citizens Participation Act (TCPA) to encourage and safeguard the constitutional rights of a defendant to speak freely, petition, associate freely, and otherwise participate in government to the maximum extent provided by law. Tex. Civ. Prac. &

Rem. Code §27.002. See also *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (explaining that the TCPA "protects citizens from retaliatory lawsuits").

20.     To safeguard these constitutional rights expeditiously and by cost-effective means, the TCPA gives defendants the power to resolve at an early stage whether a legal action impinging on such rights has merit by filing a motion to dismiss (commonly referred to as an "anti-SLAPP motion" or a motion to dismiss a "Strategic Lawsuit Against Public Participation"). *See* Tex. Civ. Prac. & Rem. Code §27.003(a), (b). **Once the motion is filed, all discovery is stayed in the legal action until the court rules on the motion**, which must occur within 60 days after the motion is served. *See id.* §§27.003(c), 27.004, 27.005. If the defendant is successful in dismissing the legal action, the defendant is entitled to court costs, attorney fees, and other expenses incurred in defending against the action as justice and equity may require. *Id.* §27.009(a)(1). The court must also impose sanctions sufficient to deter the plaintiff from bringing a similar action in the future. *Id.* §§27.007(a), 27.009(a)(2).

21.     To succeed on a motion to dismiss under the TCPA, the defendant must show by a preponderance of the evidence that the plaintiff's legal

action is based on, related to, or in response to the defendant's exercise of
(1) the right of free speech, (2) the right to petition, or (3) the right of
association. Tex. Civ. Prac. & Rem. Code §27.005(b); *Hersh v. Tatum*, 526
S.W.3d 462 (Tex. 2017); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d
895 (Tex. 2017); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). If the
defendant meets its burden, the court must dismiss the plaintiff's action
unless the plaintiff can either (1) establish that the challenged claim is
exempt from the TCPA, or (2) establish by clear and specific evidence a
prima facie case for each essential element of the challenged claim. See
Tex. Civ. Prac. & Rem. Code §§27.005(c), 27.010; *D Magazine Partners,
L.P. v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017); In re Lipsky, 460 S.W.3d at
587. In evaluating a motion to dismiss, the court must construe the TCPA
liberally to fully effectuate its purpose and intent to encourage and safeguard
a defendant's constitutional rights. See Tex. Civ. Prac. & Rem. Code
§§27.002, 27.011.


### III. Van Dyke's Legal Action Impinges On Retzlaff's Constitutional Rights

22.     Van Dyke's petition should be dismissed because it is based on,
related to, or in response to Retzlaff's exercise of his right of free speech.

Under the TCPA, a defendant exercises his right of free speech when he makes a communication in connection with a matter of public concern. Tex. Civ. Prac. & Rem. Code §27.001(3); *Hersh*, 526 S.W.3d at 466; *ExxonMobil*, 512 S.W.3d at 898; *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); see *Better Bus. Bur. of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353-54 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A communication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic, regardless of whether the communication is made or submitted publicly or privately. *ExxonMobil*, 512 S.W.3d at 898; *Lippincott*, 462 S.W.3d at 509; see Tex. Civ. Prac. & Rem. Code §27.001(1). A matter of public concern includes an issue related to (1) health or safety, (2) environmental, economic, or community well-being, (3) the government, (4) a public official or public figure, or (5) a good, product, or service in the marketplace. Tex. Civ. Prac. & Rem. Code §27.001(7); *ExxonMobil*, 512 S.W.3d at 899; see also *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App. – Houston [14th Dist.] 2015, no pet.) (holding statements relating to legal services offered by attorney in the marketplace addressed matters of public concern).

23.     In his petition, Van Dyke seeks an injunction prohibiting Retzlaff

from:

a) Committing any act of harassment against Plaintiff or the other
   protected persons, either through his own name, the use of a
   pseudonym (e.g. "Dean Anderson"), or on his "BV Files" website
   located at www.ViaViewFiles.net;

b) Having any contact with Plaintiff except through attorneys, legal
   process, court hearings, and hearings of administrative agencies (e.g.
   State Bar of Texas;

c) Having any contact with the other protected persons except through
   attorneys, legal process, court hearings, and hearings of administrative
   agencies (e.g. State Bar of Texas);

d) From going near 108 Durango Drive, Crossroads, TX 76227 or 13360
   Chittamwood Lane, Frisco, TX 75035 for any reason;

e) From having any contact with Plaintiff's employers, persons or
   entities with whom Plaintiff has an independent contractor
   relationship, or any persons or entities with whom Plaintiff has an
   attorney-client relationship; and,

f) From having any contact with any employer of the other protected
   persons, or any other person or entity with whom the other protected
   persons have an independent contractor relationship.

**See Exhibit One** – Petition at 5.1.


24.     Van Dyke claims that these alleged communications caused injury to

his "office, profession, and occupation", which is an interesting claim to

make in light of Van Dyke's own social media statements going back many

years:





25.    In his petition, Van Dyke never once alleges any in-person contact

with Retzlaff.  Nor does he allege that Retzlaff has had any in-person contact

with his clients, Susan L. Van Dyke (plaintiff's mother) or Joshua L. Van

Dyke (plaintiff's brother) (none of whom are members of his household).

Nor does Van Dyke attach any affidavits from Susan or Joshua claiming any

"harassment" or injuries to them caused by Retzlaff, or that Van Dyke is

even authorized to seek an injunction on their behalf's!! Van Dyke is

requesting an unconstitutional prior restraint on Retzlaff's speech simply

because he does not like it or finds it to be "harassing" – which sucks for

him!

26.    Van Dyke does claim that all of his injuries (the loss of employment

with the Victoria County DA's office, the Karlseng, LeBlanc &

Rich L.L.C. law firm, and the loss of clients Claude & Catia Rich – see

Petition at 3.1-3.4) all took place in Texas. The same with any alleged

"stalking" of Van Dyke through the viewing of social media posts regarding

Van Dyke by people known to him or within his community, or the receipt

of emails allegedly authored by Retzlaff pertaining to Van Dyke. See

Petition at 3.5 – 3.12.

27.    In construing the TCPA liberally, these allegations clearly fall within

the scope of the TCPA because they are based on, related to, or in response

to a communication made by Retzlaff on a matter of public concern. Van

Dyke's fitness and qualifications for the job of felony prosecutor (let alone

being a member of the State Bar!), in light of his open and violently racist

statements, is clearly a matter of public concern. The same is true regarding

Van Dyke's claims that Retzlaff made statements to the KLM law firm and many others relating to legal services offered by attorney Van Dyke in the marketplace.

28.    These communications and public statements about Van Dyke (who is an attorney licensed in four different states and who is a person who was selected for employment as an Assistant District Attorney for Victoria County, Texas), are matters of "public concern". See, e.g., *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App. – Houston [14th Dist.] 2015, no pet.) (website dedicated to criticism of attorney addressed the attorney's legal services which were offered on the public marketplace, and qualified as a communication made in connection with a matter of public concern, i.e., the exercise of free speech within scope of TCPA); see also *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App. – Dallas 2012, pet. denied) (communication on television about lawyer's handling of cases was a matter of public concern because it related to lawyer's services in the marketplace).

29.    Van Dyke's petition should be dismissed because it is based on, related to, or in response to Retzlaff's exercise of his right to petition. Under the TCPA, a defendant exercises his right to petition when he makes

(1) a communication in or pertaining to a judicial proceeding or one of the other proceedings described in Texas Civil Practice & Remedies Code section 27.001(4)(A);

(2) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(3) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(4) a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; or,

(5) any other communication that falls within the protection of the right to petition government under the U.S. Constitution or the Texas Constitution.

Tex. Civ. Prac. & Rem. Code §27.001(4).

30. A communication includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic, regardless of whether the communication is made or submitted publicly or privately. *ExxonMobil*, 512 S.W.3d at 898; *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); see Tex. Civ. Prac. & Rem. Code §27.001(1); *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied). Retzlaff's communications to the State Bar of Texas and various other governmental organizations, as

well as his public comments regarding the lawsuits filed by Van Dyke against him, are all protected communications pertaining to ongoing judicial proceedings.

31. In his petition, Van Dyke alleged the following in support of his claim for injunctive relief against Retzlaff:

a) That Retzlaff allegedly contacted the Victoria County District Attorney and supposedly said "Don't hire this guy – he's a fucking lunatic!"

b) That Retzlaff then allegedly directed the District Attorney to review news articles and social media posts of Van Dyke in an effort to show that he is not fit for employment as an Assistant District Attorney in charge of felony prosecutions.

c) That Retzlaff contacted other employers of Van Dyke and complained about them employing a violent racist who is a leader of a white supremacist organization.

d) That Retzlaff made social media posts pertaining to Van Dyke (and his family), Van Dyke's racists activities, legal actions, and public controversies he is involved in, and urged others not to employ or associate with Van Dyke.

32. In construing the TCPA liberally, these allegations clearly fall within the scope of the TCPA because they are based on, related to, or in response to a communication made by Retzlaff in exercising his right to petition. Contacting a local elected official about the potential hiring of a public official, and filing a grievance with State Bar of Texas, are all examples of

a) communications in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and,

b) communications that are reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding.


## IV. Retzlaff Denies Engaging In The Conduct

33.     Retzlaff's denies Van Dyke's allegations contained in paragraphs 3.1 – 3.3, and 3.9 – 3.12 of the petition. Specifically, for over 4 ½ years, in one lawsuit or another, Retzlaff has always denied being an Administrator for this *BV Files / ViaView Files* blog and he has always denied being responsible for any of the *Dean Anderson* emails. See Retzlaff's affidavit at ¶3.

34.     The Texas Supreme Court has held that, under the TCPA, a defendant moving for dismissal need show only that the plaintiff's "legal action is based on, relates to, or is in response to the [defendant's] exercise of . . . the right of free speech" – that is, "a communication made in connection with a matter of public concern" – not that the communication actually occurred.

*Hersh*, 526 S.W.3d at 467. Thus, Retzlaff denials alone are enough to invoke the applicability of the TCPA.

## V. Retzlaff's Conduct Is Constitutionally Protected

35.     Even taking Van Dyke's claims as true, Retzlaff has a Constitutional right to contact Van Dyke's employers, clients, potential clients, and the community at large, about his racially charged online activities, or his fitness and qualifications for public office and being a member of the State Bar. The United States Supreme Court has determined in similar cases that speech like Retzlaff's is protected. See *Org for a Better Austin v Keefe*, 402 US, 415, 417-419 (1971) (holding that First Amendment protection applied to the distribution of leaflets even where those leaflets accused an individual of racism, provided personal information about the person including his telephone number, and urged the recipients of the leaflets to contact him); see also *NAACP v Claiborne Hardware Co.*, 458 US 886, 909-910 (1982) (holding that "[s]peech does not lose its protected character," even where the speech involved publicly listing the names of individuals that did not participate in a boycott, which undoubtedly was meant to lead to

unconsented contact with those individuals, so as to "persuade [them] to join the boycott through social pressure and the 'threat' of social ostracism.").

36.    At its very base, the exception to the First Amendment for incitement of imminent lawless action requires that the incitement be for actually illegal actions, not just inconvenient or aggravating ones. See *id*. "There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v State College Area Sch Dist.*, 240 F3d 200, 204 (3rd Cir. 2001) (opinion by ALITO, J.).  Here, the record does not support that Retzlaff's statements were intended to incite imminent lawless action. *Keefe*, 402 US at 417-419.


## VI. Res Judicata Applies

37.    *Res Judicata* would seem to apply because these claims for injunctive relief are claims Van Dyke has made in the other federal lawsuit already. Recall that Van Dyke's petition in that case requests injunctive relief. **Exhibit Two** – TX Petition at ¶5.1 – 5.12.  In that lawsuit, Van Dyke has already filed a motion for injunction seeking identical relief as in the present lawsuit (with the exception of mentioning his mom and brother herein), which is currently pending before U.S. District Court Judge Amos Mazzant.

**See attached Exhibit Four** – Van Dyke's motion for injunction filed in

Case No. 4:18-cv-00247-ALM (Dkt# 46). Van Dyke should not be allowed

to forum shop his claims in simultaneous legal actions!

## VII. Retzlaff Seeks $1 Million In Attorney's Fees And Mandatory Sanctions

38. As previously stated, this motion is governed by the Texas anti-

SLAPP statute. The TCPA provides, in pertinent part:

> (a) If the court orders dismissal of a legal action under this chapter, the court **shall** award to the moving party:
>
> (1) court costs, reasonable **attorney's fees**, and other expenses **incurred in defending against the legal action** as justice and equity may require;
>
> (2) **sanctions** against the party who brought the legal action as the court determines sufficient to **deter the party who brought the legal action** from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)-(2) (emphasis added).

39. The award of attorney's fees is mandatory. *See Sullivan v. Abraham*,

488 S.W.3d 294, 299 (Tex. 2016); *Cruz v. Van Sickle*, 452 S.W.3d 503, 522

(Tex.App. – Dallas 2014, pet. denied). Further, because the TCPA requires

an award of fees "incurred in defending against the legal action," the award

24

includes **all fees incurred from the inception of the dispute through its conclusion**, not just those related to the anti-SLAPP motion.

40.     The award of sanctions is mandatory.  Under the TCPA, a successful movant is entitled to sanctions "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). "[W]hen a legal action is dismissed under the TCPA, an award of sanctions against the party who brought the action **is mandatory** under section 27.009." *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 612-13 (Tex.App. – Fort Worth 2017, pet denied) (emphasis added); *see also Serafine v. Blunt*, 2017 WL 2224528, at *7 (Tex.App. – Austin May 19, 2017, pet. denied) (Section 27.009(a)(2) gives "the trial court broad discretion to determine an amount" of sanctions).

41.     Because this is so clearly a SLAPP lawsuit, with absolutely no arguable basis in law or in fact, and because this is Van Dyke's second SLAPP lawsuit against Retzlaff (and his seventh overall!), the Court needs to assess a significant amount of sanctions.  Van Dyke is, after all, an attorney licensed in four separate jurisdictions; thus, he should have known better.

42.    Retzlaff asks for $1 million in sanctions, over and above his attorney's fees, as an amount sufficient to deter Van Dyke from filing future SLAPP actions. [6]

## D. Conclusion

43.    Because Van Dyke's legal action relates solely to Retzlaff exercising his right to petition both the State Bar of Texas and the District Attorney of Victoria County, Retzlaff has established that he enjoys absolute immunity under the judicial communication privilege.  Further, the remainder of Retzlaff's alleged activity (even if taken as true) are also protected communications.  Thus, Van Dyke's lawsuit must be dismissed and Retzlaff must be awarded his attorney's fees and mandatory sanctions.

---

[6] While Retzlaff is presently appearing *pro se*, that is only because time was of the essence in filing this removal action due to Van Dyke's attempts in the state court to get an injunction against Retzlaff.  Retzlaff's attorney was briefly hospitalized this week and he anticipates filing an appearance in this action shortly, along with the appropriate *pro hac vice* forms, and securing local counsel.

## E. Prayer

44.     For these reasons, and in the interests of justice and fairness, Retzlaff

asks the Court to dismiss, with prejudice, Van Dyke's lawsuit and award

Retzlaff attorney's fees and mandatory sanctions, as provided by the TCPA.

Respectfully submitted,

Thomas Retzlaff
2402 E. Esplanade Ln.
PO Box 46424
Phoenix, AZ 85063-6424
(210) 317-9800
email: Retzlaff@texas.net

DEFENDANT, Pro Se

# DECLARATION OF TOM RETZLAFF

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      "My name is Tom Retzlaff. I am more than 18 years of age and capable of making this affidavit. I have personal knowledge of the facts and matters set forth herein, which are true and correct.

2.      I am the defendant in this lawsuit.

3.      I have always denied being an Administrator for this *BV Files / Via View Files* blog and I have always denied being responsible for any of the Dean Anderson emails.

4.      At no time have I ever had any personal contact with Susan L. Van Dyke or Joshua L. Van Dyke, or any communications with them, either in person or via 3rd party. The only time I have ever had any personal contact with Jason Van Dyke was during a four hour video deposition on October 25, 2018, with an attorney for the State Bar of Texas, Van Dyke, and myself pertaining to the disbarment lawsuit pending against Van Dyke that is about to go to trial. Nor have I ever been to Denton or Collin County, Texas (places where they are alleged to reside) at any point within the past ten years.

5.      I personally checked today the State Bar of Texas website and found that Van Dyke is an attorney licensed in Texas (Bar Card Number: 24057426). I checked on the website for the Georgia State Bar and found a listing for Van Dyke, with an Admission date of Sept 16, 2015. I also checked the Colorado State Bar's website and found a listing for Van Dyke, as well. I personally know that in March of 2017 Van Dyke was hired to be an Assistant District Attorney for Victoria County, Texas.

6.      Prior to the filing of Van Dyke's lawsuit, I, never had any personal knowledge of an employment contract between Van Dyke and the Karlseng, LeBlanc & Rich L.L.C. law firm in Plano, Texas.

7.      Prior to the filing of plaintiff's lawsuit, I never had any communication with the Karlseng, LeBlanc & Rich L.L.C. law firm in Plano, Texas, or Robert Karlseng and/or Claude Rich.

8. Prior to the filing of plaintiff's lawsuit, I, Tom Retzlaff, deny saying:

a) "Plaintiff is a Nazi."
b) "Plaintiff is a pedophile."
c) "Plaintiff is a drug addict."
d) "Plaintiff has a criminal record for abusing women."
e) "Plaintiff has committed professional misconduct against him (Retzlaff)."

See **Exhibit Two** – Van Dyke's Texas lawsuit at ¶3.5. I do admit that in a March 30, 2018, letter (Doc. # 40-4, p. 35) to Hon. Jonathan Bailey, Judge of the 431st State District Court, where Cause No. 18-2793-431; *Van Dyke v. Retzlaff*; was pending, I wrote, "No doubt Van Dyke is a pedophile, too. He has that look about him." I further admit that, in that same letter to Judge Bailey, I wrote that "Jason Lee Van Dyke is a Nazi, racist piece of human shit who has no business being a lawyer." But, again, at no point did Van Dyke ever contact me requesting a correction, clarification, or retraction with regards to any of those statements. In my opinion, Jason Van Dyke does look exactly like a pedophile and I further think that he is a Nazi, racist piece of human shit who has absolutely no business being a lawyer. I also admit that in December 2017 I filed a complaint with the State Bar of Texas regarding Van Dyke.



**Jason L. Van Dyke**
@MeanTXLawyer

Follow

@dividedly_ I don't waste my breath on niggers like you. I hang them.

12| PM - 29 Dec 2014

9.     The above is just a small example of social media posts I found on the internet posted by a Twitter user with the name "Jason L. Van Dyke" under the user name **@MeanTXLawyer**.   And here is another example below:



These are true and accurate screen shots of the Tweets that I found while conducting a search for tweets by the user **@MeanTXLawyer**.   This is exactly what is on the Twitter site when I searched and the screen shot is a fair and accurate representation of what I actually saw.   Van Dyke has admitted that this was his user name in his response to the State Bar grievance I filed against him regarding, in part, these violently racist tweets.

I declare under penalty of perjury, that the foregoing is true and correct, dated November 8, 2018.


_____

**TOM RETZLAFF**

## CERTIFICATE OF SERVICE

I certify that on November 8, 2018, a copy of this document was served upon plaintiff via 1st class US Mail at his residence of:

**Jason L. Van Dyke, 108 Durango Dr., Aubrey, TX 76227**

Thomas Retzlaff

# EXHIBIT ONE


AZ State Court Petition

# CV2018-013856

CASE NO. _____

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | IN THE SUPERIOR COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | COUNTY OF MARICOPA |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF a/k/a | § | |
| Dean Anderson | § | |
| Defendant. | § | STATE OF ARIZONA |

## ORIGINAL PETITION FOR INJUNCTION AGAINST HARASSMENT

## I.     PARTIES

1.1     Plaintiff, Jason Lee Van Dyke, resides at 108 Durango Drive, Crossroads, TX 76227.

Plaintiff's date of birth is April 3, 1980. Plaintiff's daytime telephone number is (469)

964-5346. Plaintiff's e-mail address is jason@vandykelawfirm.com.

1.2     Defendant, Thomas Christopher Retzlaff, resides at 2402 E. Esplanade Avenue, Phoenix,

AZ 85016. On information and belief, Defendant lives in a condominium located at this

address. Plaintiff has no personal knowledge of the condominium number. Defendant's

mailing address is PO Box 46424, Phoenix, AZ 85063.

## II.     RELATIONSHIP OF PARTIES AND PRIORS

2.1     The parties are not now, nor have they ever been married.  The parties do not now, nor

have they ever lived together. The parties are not related by blood or marriage. The

parties have never dated or had any type of romantic or sexual relationship. The only

relationship between the parties is that Defendant is a stalker and Plaintiff is the person

who Defendant is stalking.

2.2     There is no pending action between the parties involving maternity, paternity, annulment,

legal separation, dissolution, custody, parenting time, or support. There is currently a

civil case between the parties styled *Jason Lee Van Dyke v. Thomas Christopher Retzlaff* pending in the U.S. District Court for the Eastern District of Texas in Cause No. 4:18-CV-0247-ALM. In that case, Plaintiff is suing Defendant for libel, intrusion on seclusion, and tortious interference with contract.

2.3     Plaintiff was previously charged with domestic violence on or around November 15, 2000 in Ingham County, Michigan. Those charges were dismissed with prejudice. The dismissal of those charges was not due to any sort of deferred adjudication or similar agreement. Defendant has a lengthy criminal history in Texas which is attached hereto as Exhibit "A" and incorporated by reference herein. Defendant has been declared a "vexatious litigant" in Texas.

### III.    FACTS

3.1     Defendant has been harassing Plaintiff in an ongoing manner for nearly two years. The harassment started on or prior to March of 2017 when Plaintiff was offered a job as a felony prosecutor with the Victoria County District Attorney in Victoria County, Texas. Defendant has admitted that, after he became privy to the job offer, he made several false and defamatory communications to Victoria County District Attorney and, in doing so, procured the rescission of Plaintiff's job offer. A copy of the document in which Defendant admits to this conduct is attached hereto as Exhibit "B" and incorporated by reference herein.

3.2     Plaintiff subsequently became employed as an associate attorney at Karlseng, LeBlanc & Rich L.L.C. ("KLR"). On or around March 25, 2018, Defendant learned of Plaintiff's new employment and used the pseudonym of "Dean Anderson" to send a letter to Plaintiff's

supervisor, Robert Karlseng, which is attached hereto as Exhibit "C" and incorporated by reference herein.

3.3    Defendant subsequently began stalking Mr. Karlseng on a website that is either owned by Defendant or to which Defendant regularly contributes. Defendant posted the information attached hereto as Exhibit "D" on the website commonly known as "BV Files" and which is accessible at www.viaviewfiles.net. Plaintiff's employment with KLR was terminated once Mr. Karlseng became aware of Defendant's posting, and Plaintiff filed the lawsuit referenced in paragraph 2.2 above the following day (March 28, 2018). The lawsuit was initially filed in the 431st District Court in and for Denton County, Texas, but it was later removed by Defendant to the U.S. District Court in and for the Eastern District of Texas.

3.4    Since the filing of that lawsuit, Plaintiff lost a contract with Claude and Catia Rich, which pre-dated his employment with Karlseng, LeBlanc & Rich L.L.C. ("KLR") under which he had been retained to represent them in a claim for negligence and deceptive trade practices for damages related to faulty concrete in the construction of their house. This was Cause No. DC-17-06085, styled *Claude Rich, et al. v. Big D Concrete, Inc., et al.,* in the 160th District Court in and for Dallas County, Texas.

3.5    Continued stalking by Defendant was confirmed when, on May 3, 2018, Plaintiff was approached by attorney Jared Julian (opposing counsel) and informed that he too had been contacted by Defendant. The case was Cause No. 17-10442-431, styled *In The Matter of the Marriage of Jennifer Melisa Jaynes and Chris David Roberts,* and pending in the 431st District Court in and for Denton County, Texas.

3.6    On or around May 22, 2018, Plaintiff was interviewed by Pawl Bazile for an article on "Dangerous.com", a website affiliated with conservative media personality Milo

Yiannopolous, concerning the tortious acts that Defendant has committed against him over the course of the previous months, as well as the events leading up to Defendant's stalking of Plaintiff. The article was published on May 24, 2018 in an article entitled "Leftwing Stalkers Cost Me Two Jobs, Here's How I'm Fighting Back".

3.7    In response to the article, Defendant sent the electronic e-mail communication attached hereto as Exhibit "E" to Mr. Bazile. The electronic e-mail communication specifically references Gavin McInnes, who has been a client of Plaintiff since August of 2017, and who Plaintiff had been retained to represent in Cause No. 2:18-cv-10542-LJM-EAS, styled *Joel Vanghelwe, et al. v. GotNews, LLC, et al.* in the U.S. District Court for the Eastern District of Michigan (Plaintiff is also licensed to practice law before that court). Mr. Bazile contacted Mr. McInnes about the e-mail communication who, in turn, reached out to Plaintiff concerning its contents.

3.8.   The following day, Defendant sent a second e-mail communication to Mr. Bazile. The e-mail communication is attached hereto as Exhibit "F" and incorporated by reference herein. As an attachment, Defendant sent Mr. Bazile a copy of a letter that Plaintiff later confirmed was also sent directly to Mr. McInnes. That attachment is attached hereto as Exhibit "G" and incorporated by reference herein.

3.9    On May 28, 2018, Plaintiff learned that Defendant had begun blogging about Mr. McInnes on his "BV Files" blog. Plaintiff has attached relevant copies of this posting hereto as Exhibit "H" and they are incorporated by reference herein. The blog post contains pictures of Mr. McInnes' wife and children. It also contains the home address of Mr. McInnes and encourages members of the domestic terrorist collective known as "Antifa" to stalk Mr. McInnes and his family at their home. Additional communications

concerning Plaintiff were made by Defendant the same day, and are attached to this motion as Exhibit "I" and incorporated by reference herein.

3.10 On the morning of May 29, 2018, Plaintiff received the electronic mail communication from Defendant, using his "Dean Anderson" pseudonym, attached hereto as Exhibit "J".

3.11 Defendant continued using his "Dean Anderson" pseudonym to send harassing electronic communications to Plaintiff from May 30, 2018 - October 23, 2018 without further serious incident. The next most serious incident occurred on October 24, 2018 when Defendant sent Plaintiff the correspondence attached hereto as Exhibit "K" and incorporated by reference herein.

3.12 The receipt of this correspondence caused Plaintiff to again access Defendant's website, where he found material about his mother and his brother on Defendant's website. That material is attached hereto as Exhibit "L" and incorporated by reference herein. Plaintiff immediately took his mother to the police department in her community to make a report about Defendant and document this behavior.

3.13 Defendant has continued to threaten and harass Plaintiff and his family. The most recent communications are attached hereto as Exhibit "M" and incorporated by reference herein.

## IV.   PROTECTED PERSONS AND PLACES

4.1 The following persons should also be on this order because, for the reasons set forth in paragraphs 3.1 - 3.13 above, Defendant is a danger to them.

Susan L. Van Dyke          -          10/24/1948

Joshua L. Van Dyke          -          6/4/1982

4.2  Defendant should be ordered to stay away from the following locations, at all times, even when I am not present:

> 108 Durango Drive, Crossroads, TX 76227

> 13360 Chittamwood Lane, Frisco, TX 75035

4.3  Defendant is a convicted felon and is prohibited from possessing firearms by federal and state law. However, due to the risk of harm, this Court should also order Defendant not to possess firearms or ammunition.

## V.  PRAYER

5.1  Plaintiff prays that Defendant be cited to appear and answer. Plaintiff prays that, after hearing on this petition, this Honorable Court enter an order prohibiting Defendant from:

> A.  Committing any act of harassment against Plaintiff or the other protected persons, either through his own name, the use of a pseudonym (e.g. "Dean Anderson"), or on his "BV Files" website located at www.viaviewfiles.net.

> B.  Having any contact with Plaintiff except through attorneys, legal process, court hearings, and hearings of administrative agencies (e.g. State Bar of Texas);

> C.  Having any contact with the other protected persons except through attorneys, legal process, court hearings, and hearings of administrative agencies (e.g. State Bar of Texas);

> D.  From going near 108 Durango Drive, Crossroads, TX 76227 or 13360 Chittamwood Lane, Frisco, TX 75035 for any reason;

E.   From having any contact with Plaintiff's employers, persons or entities with whom Plaintiff has an independent contractor relationship, or any persons or entities with whom Plaintiff has an attorney-client relationship, and

F.   From having any contact with any employer of the other protected persons, or any other person or entity with whom the other protected persons have an independent contractor relationship.

Respectfully submitted,



Jason L. Van Dyke
108 Durango Drive
Crossroads, TX 76227
P - (469) 964-5346
F - (972) 421-1830
E - jason@vandykelawfirm.com

## VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared Jason Lee Van Dyke, who is personally known to me, and who stated to me under oath that the facts stated in the foregoing petition are true and correct to the best of his knowledge.

NOTARY PUBLIC
CHRISTINE SCALLIN
Notary ID #131652665
My Commission Expires
July 23, 2022
STATE OF TEXAS

Christine Scallin
Notary Public
State of Texas

EXHIBIT "A"



### Texas Department of Public Safety
### Criminal History Search

USER: jason@vandykelawfirm.com (1565685,1607546) SERVER: DPSWEBSLAVE2 DATE:3/12/2018 9:41:27 AM
LANG:ENGLISH (UNITED STATES) ORIG:PublicSite



# Criminal History Conviction Search
## Search Information

| | |
|---|---|
| BATCH # | 4067597 |
| SEARCH # | 18545141 |
| SEARCH SUMMARY | RETZLAFF,THOMAS CHRISTOPHER |
| USER NAME | JASON@VANDYKELAWFIRM.COM |
| DATE | 2018-03-12T09:41:27.0551929-05:00 |

# RETZLAFF,THOMAS CHRISTOPHER (SID: ███████)

| | |
|---|---|
| SID | ███████ |
| DATE LAST UPDATED | 10/31/2017 |
| SEX | MALE |
| RACE | WHITE |
| ETHNICITY | NON-HISPANIC |
| HEIGHT | ███ |
| WEIGHT | ███ |
| EYES | ███ |
| HAIR | ███ |
| PLACE OF BIRTH | TEXAS |
| NAME(S) | RETZLAFF,T |
| | RETZLAFF,THOMAS |
| | RETZLAFF,THOMAS C |
| | RETZLAFF,THOMAS CHRISTOP |
| | RETZLAFF,THOMAS CHRISTOPHER (PRIMARY) |
| | RETZLAFF,TOM |
| BIRTH DATE(S) | ███████ (PRIMARY) |

## ARREST SUMMARY

| DATE OF ARREST | SEQUENCE CODE | TRACKING NUMBER | AGENCY DESCRIPTION |
|---|---|---|---|
| 9/27/1994 | A | 9014640285 | TEXAS HWY PATROL REG 6 DIST B AUSTIN |
| 8/15/1995 | A | 9015439923 | TEMPLE PD |
| 2/12/1997 | A | 9015495696 | TEMPLE PD |
| 3/6/1997 | A | 0015581217 | BELL CO SO BELTON |
| 3/15/1997 | B | 9015498849 | BELL CO SO BELTON |
| 3/19/1997 | A | 9015499160 | TEMPLE PD |

*Searches based on names, date of birth and other alphanumeric identifiers are not always accurate. The only way to positively link someone to a criminal record is through fingerprint identification. It is your responsibility to make sure the records you access through this site pertain to the person about whom you*

*are seeking information. Extreme care should be exercised in using any information obtained from this Web site. Neither the DPS nor the State of Texas shall be responsible for any errors or omissions produced by secondary dissemination of this data.*

## ARREST DATE 9/27/1994 (1 CHARGES)

### ARREST DETAIL

| | |
|---|---|
| ARREST DATE | 9/27/1994 |
| SEQUENCE CODE | A |
| TRACKING NUMBER | 9014640285 |
| ARRESTING AGENCY | TEXAS HWY PATROL REG 6 DIST B AUSTIN (TXDPS6500) |

## ARREST DATE 9/27/1994 (CHARGE A001)

### OFFENSE RECORD

| | |
|---|---|
| INTERNAL AGENCY PERSON NUMBER | 38170 |
| ARREST OFFENSE | FLEEING POLICE OFFICER (48010004) |
| ARREST OFFENSE CITATION | 6701D(186)(A) |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS B (MB) |
| DATE OF OFFENSE | 9/27/1994 |
| ARREST DISPOSITION DATE | 9/27/1994 |
| ARREST DISPOSITION | HELD (205) |
| ARREST DISPOSITION LITERAL | WILLIAMSON COUNTY |
| PROSECUTOR ORI REFERRED TO | WILLIAMSON COUNTY ATTORNEY (TX246013A) |

### COURT STATUS A

| | |
|---|---|
| AGENCY DESCRIPTION | COUNTY COURT AT LAW 1 GEORGETOWN (TX246093J) |
| COURT OFFENSE | FLEEING POLICE OFFICER (48010004) |
| COURT OFFENSE CITATION | 6701D(186)(A) |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS B (MB) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 2/8/1996 |
| DATE OF SENTENCE/STATUS | 2/8/1996 |
| CAUSE NUMBER | CAU:9437161 |
| FINAL PLEADING | NOT GUILTY (N) |
| COURT CONFINEMENT | 0Y0M180D |
| COURT PROBATION | 0Y6M0D |
| COURT FINE | 1500 |
| COURT COSTS | 253 |
| AGENCY RECEIVING CUSTODY | COUNTY COURT AT LAW 1 GEORGETOWN (TX246015G) |

## ARREST DATE 8/15/1995 (1 CHARGES)

### ARREST DETAIL

| | |
|---|---|
| ARREST DATE | 8/15/1995 |
| SEQUENCE CODE | A |
| TRACKING NUMBER | 9015439923 |
| ARRESTING AGENCY | TEMPLE PD (TX0140700) |

## ARREST DATE 8/15/1995 (CHARGE A001)

## OFFENSE RECORD

| | |
|---|---|
| INTERNAL AGENCY PERSON NUMBER | 098028 |
| INTERNAL AGENCY CASE NUMBER | 95065809 |
| ARREST OFFENSE | HARRASSMENT (53990004) |
| ARREST OFFENSE CITATION | 42.07(A) |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS B (MB) |
| DATE OF OFFENSE | 8/15/1995 |
| ARREST DISPOSITION DATE | 8/15/1995 |
| ARREST DISPOSITION | BAIL/RELEASED ON OWN RECOGNIZANCE (206) |
| PROSECUTOR ORI REFERRED TO | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |

## PROSECUTION DETAIL

| | |
|---|---|
| AGENCY | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |
| PROSECUTOR ACTION FIELD | PROSECUTOR ACCEPTS THE CHARGE (A) |
| PROSECUTOR OFFENSE CITATION | 42.07(A) |
| PROSECUTOR OFFENSE | HARRASSMENT (53990004) |
| LEVEL AND DEGREE PROSECUTED | MISDEMEANOR - CLASS B (MB) |

## COURT STATUS A

| | |
|---|---|
| AGENCY DESCRIPTION | BELL COUNTY COURT AT LAW 2 BELTON (TX014083J) |
| COURT OFFENSE | CLASS C MISDEMEANOR (99999999) |
| COURT OFFENSE LITERAL | ATTEMPT TO COMMIT HARASSING COMMUNICATION |
| COURT OFFENSE CITATION | X |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS C (MC) |
| COURT DISPOSITION | DEFERRED (312) |
| COURT DISPOSITION DATE | 2/7/1996 |
| DATE OF SENTENCE/STATUS | 2/7/1996 |
| COURT SENTENCE SUSPENDED TIME | 0D |
| COURT SENTENCE SUSPENDED FINE | 400 |
| CAUSE NUMBER | CAU:MR2C955198 |
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 0D |
| COURT PROBATION | 6M |
| COURT FINE | 500 |
| COURT COSTS | 741 |
| AGENCY RECEIVING CUSTODY | BELL COUNTY COURT AT LAW 2 BELTON (TX014015G) |
| COURT PROVISION | DEFERRED ADJUDICATION (378) |

## ARREST DATE 2/12/1997 (1 CHARGES)

### ARREST DETAIL

| | |
|---|---|
| ARREST DATE | 2/12/1997 |
| SEQUENCE CODE | A |
| TRACKING NUMBER | 9015495696 |
| ARRESTING AGENCY | TEMPLE PD (TX0140700) |

## ARREST DATE 2/12/1997 (CHARGE D001)

## COURT STATUS A

| | |
|---|---|
| AGENCY DESCRIPTION | 27TH DISTRICT COURT BELTON (TX014015J) |
| COURT OFFENSE | UNL CARRYING WEAPON PROHIBITED PLACES (52030009) |
| COURT OFFENSE CITATION | 46.03 |
| LEVEL AND DEGREE OFFENSE | FELONY - 3RD DEGREE (F3) |
| COURT DISPOSITION | DEFERRED (312) |
| COURT DISPOSITION DATE | 4/10/1997 |
| CAUSE NUMBER | CAU:47206 |
| FINAL PLEADING | GUILTY (G) |
| COURT PROBATION | 10Y |
| AGENCY RECEIVING CUSTODY | 27TH DISTRICT COURT BELTON (CSCD) |

## COURT STATUS B

| | |
|---|---|
| AGENCY DESCRIPTION | 27TH DISTRICT COURT BELTON (TX014015J) |
| COURT OFFENSE | UNL CARRYING WEAPON PROHIBITED PLACES (52030009) |
| COURT OFFENSE CITATION | 46.03 |
| LEVEL AND DEGREE OFFENSE | FELONY - 3RD DEGREE (F3) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 4/10/1997 |
| DATE OF SENTENCE/STATUS | 2/13/1998 |
| CAUSE NUMBER | CAU:47206 |
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 8Y |
| COURT FINE | 5000 |
| COURT COSTS | 313 |
| AGENCY RECEIVING CUSTODY | 27TH DISTRICT COURT BELTON (TDCJ) |
| COURT PROVISION LITERAL | PROBATION REVOKED/130D CREDIT TIME SERVED |

# ARREST DATE 3/6/1997 (1 CHARGES)

## ARREST DETAIL

| | |
|---|---|
| ARREST DATE | 3/6/1997 |
| SEQUENCE CODE | A |
| TRACKING NUMBER | 0015581217 |
| ARRESTING AGENCY | BELL CO SO BELTON (TX0140000) |

# ARREST DATE 3/6/1997 (CHARGE A001)

## OFFENSE RECORD

| | |
|---|---|
| INTERNAL AGENCY PERSON NUMBER | 91870 |
| ARREST OFFENSE | TAMPERING WITH GOVT RECORD (73990275) |
| ARREST OFFENSE CITATION | 37.10(A) |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS A (MA) |
| DATE OF OFFENSE | 3/6/1997 |
| ARREST DISPOSITION DATE | 3/7/1997 |
| ARREST DISPOSITION | BAIL/RELEASED ON OWN RECOGNIZANCE (206) |
| PROSECUTOR ORI REFERRED TO | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |

## PROSECUTION DETAIL

| AGENCY | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |
|---|---|
| PROSECUTOR ACTION FIELD | PROSECUTOR ACCEPTS THE CHARGE (A) |
| PROSECUTOR OFFENSE CITATION | 37.10(A) |
| PROSECUTOR OFFENSE | TAMPERING WITH GOVT RECORD (73990275) |
| LEVEL AND DEGREE PROSECUTED | MISDEMEANOR - CLASS A (MA) |

**COURT STATUS A**

| AGENCY DESCRIPTION | BELL COUNTY COURT AT LAW 2 BELTON (TX014083J) |
|---|---|
| COURT OFFENSE | TAMPERING WITH GOVT RECORD (73990275) |
| COURT OFFENSE CITATION | 37.10(A) |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS A (MA) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 9/2/1997 |
| DATE OF SENTENCE/STATUS | 9/2/1997 |
| CAUSE NUMBER | CAU:MR2C971676 |
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 325D |
| COURT FINE | 100 |
| COURT COSTS | 157 |
| AGENCY RECEIVING CUSTODY | BELL COUNTY COURT AT LAW 2 BELTON (TX0140000) |

## ARREST DATE 3/15/1997 (2 CHARGES)

**ARREST DETAIL**

| ARREST DATE | 3/15/1997 |
|---|---|
| SEQUENCE CODE | B |
| TRACKING NUMBER | 9015498849 |
| ARRESTING AGENCY | BELL CO SO BELTON (TX0140000) |

## ARREST DATE 3/15/1997 (CHARGE A001)

**OFFENSE RECORD**

| INTERNAL AGENCY PERSON NUMBER | 91870 |
|---|---|
| ARREST OFFENSE | THEFT PROP>=$500 < $1500 (23990003) |
| ARREST OFFENSE CITATION | 31.03(E)(3) |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS A (MA) |
| DATE OF OFFENSE | 3/6/1997 |
| ARREST DISPOSITION | HELD (205) |
| PROSECUTOR ORI REFERRED TO | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |

**COURT STATUS A**

| AGENCY DESCRIPTION | BELL COUNTY COURT AT LAW 2 BELTON (TX014083J) |
|---|---|
| COURT OFFENSE | THEFT PROP>=$500 < $1500 (23990003) |
| COURT OFFENSE CITATION | 31.03(E)(3) |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS A (MA) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 9/2/1997 |
| DATE OF SENTENCE/STATUS | 9/2/1997 |
| CAUSE NUMBER | CAU:MR2C971675 |

| | |
|---|---|
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 325D |
| COURT FINE | 100 |
| COURT COSTS | 157 |
| AGENCY RECEIVING CUSTODY | BELL COUNTY COURT AT LAW 2 BELTON (TX0140000) |

## ARREST DATE 3/15/1997 (CHARGE A003)

### OFFENSE RECORD

| | |
|---|---|
| ARREST OFFENSE | SALE DISTR OR DISPLAY HARMFUL MATER TO MINOR (37020002) |
| ARREST OFFENSE CITATION | 43.24(B)(1&2) |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS A (MA) |
| DATE OF OFFENSE | 1/31/1997 |
| ARREST DISPOSITION | HELD (205) |
| PROSECUTOR ORI REFERRED TO | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |

### COURT STATUS A

| | |
|---|---|
| AGENCY DESCRIPTION | BELL COUNTY COURT AT LAW 2 BELTON (TX014083J) |
| COURT OFFENSE | SALE DISTR OR DISPLAY HARMFUL MATER TO MINOR (37020002) |
| COURT OFFENSE CITATION | 43.24(B)(1&2) |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS A (MA) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 9/2/1997 |
| DATE OF SENTENCE/STATUS | 9/2/1997 |
| CAUSE NUMBER | CAU:MR2C971672 |
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 325D |
| COURT FINE | 100 |
| COURT COSTS | 157 |
| AGENCY RECEIVING CUSTODY | BELL COUNTY COURT AT LAW 2 BELTON (TX0140000) |

## ARREST DATE 3/19/1997 (2 CHARGES)

### ARREST DETAIL

| | |
|---|---|
| ARREST DATE | 3/19/1997 |
| SEQUENCE CODE | A |
| TRACKING NUMBER | 9015499160 |
| ARRESTING AGENCY | TEMPLE PD (TX0140700) |

### ARREST DATE 3/19/1997 (CHARGE A001)

#### OFFENSE RECORD

| | |
|---|---|
| INTERNAL AGENCY PERSON NUMBER | 98028 |
| INTERNAL AGENCY CASE NUMBER | 97033298 |
| ARREST OFFENSE | VIOL OF PROTECTIVE ORDER (38990001) |
| ARREST OFFENSE CITATION | 25.07 |
| LEVEL AND DEGREE OF OFFENSE | MISDEMEANOR - CLASS A (MA) |
| DATE OF OFFENSE | 3/19/1997 |
| ARREST DISPOSITION DATE | 3/19/1997 |

| | |
|---|---|
| ARREST DISPOSITION | TRANSFERRED TO COUNTY (220) |
| PROSECUTOR ORI REFERRED TO | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |

**PROSECUTION DETAIL**

| | |
|---|---|
| AGENCY | COUNTY ATTORNEYS OFFICE BELTON (TX014013A) |
| PROSECUTOR ACTION FIELD | PROSECUTOR ACCEPTS THE CHARGE (A) |
| PROSECUTOR OFFENSE CITATION | 25.07 |
| PROSECUTOR OFFENSE | VIOL OF PROTECTIVE ORDER (38990001) |
| LEVEL AND DEGREE PROSECUTED | MISDEMEANOR - CLASS A (MA) |

**COURT STATUS A**

| | |
|---|---|
| AGENCY DESCRIPTION | BELL COUNTY COURT AT LAW 2 BELTON (TX014083J) |
| COURT OFFENSE | VIOL OF PROTECTIVE ORDER (38990001) |
| COURT OFFENSE CITATION | 25.07 |
| LEVEL AND DEGREE OFFENSE | MISDEMEANOR - CLASS A (MA) |
| COURT DISPOSITION | CONVICTED (310) |
| COURT DISPOSITION DATE | 9/2/1997 |
| DATE OF SENTENCE/STATUS | 9/2/1997 |
| CAUSE NUMBER | CAU:MR2C971669 |
| FINAL PLEADING | GUILTY (G) |
| COURT CONFINEMENT | 325D |
| COURT FINE | 100 |
| COURT COSTS | 157 |
| AGENCY RECEIVING CUSTODY | BELL COUNTY COURT AT LAW 2 BELTON (TX0140000) |

## ARREST DATE 3/19/1997 (CHARGE A002)

**OFFENSE RECORD**

| | |
|---|---|
| ARREST OFFENSE | TAMPERING/FABRICATING PHYSICAL EVIDENCE (73990280) |
| ARREST OFFENSE CITATION | 37.09 |
| LEVEL AND DEGREE OF OFFENSE | FELONY - 3RD DEGREE (F3) |
| DATE OF OFFENSE | 3/19/1997 |
| ARREST DISPOSITION DATE | 3/26/1998 |
| ARREST DISPOSITION | DISPOSITION UNKNOWN (215) |
| PROSECUTOR ORI REFERRED TO | DISTRICT ATTORNEYS OFFICE BELTON (TX014015A) |

**PROSECUTION DETAIL**

| | |
|---|---|
| AGENCY | DISTRICT ATTORNEYS OFFICE BELTON (TX014015A) |
| PROSECUTOR ACTION FIELD | PROSECUTOR ACCEPTS THE CHARGE (A) |
| PROSECUTOR OFFENSE CITATION | 37.09 |
| PROSECUTOR OFFENSE | TAMPERING/FABRICATING PHYSICAL EVIDENCE (73990280) |
| LEVEL AND DEGREE PROSECUTED | FELONY - 3RD DEGREE (F3) |

**COURT STATUS A**

| | |
|---|---|
| AGENCY DESCRIPTION | 264TH DISTRICT COURT BELTON (TX014045J) |
| COURT OFFENSE | TAMPERING/FABRICATING PHYSICAL EVIDENCE (73990280) |
| COURT OFFENSE CITATION | 37.09 |
| LEVEL AND DEGREE OFFENSE | FELONY - 3RD DEGREE (F3) |
| COURT DISPOSITION | CONVICTED (310) |

| | |
|---|---|
| COURT DISPOSITION DATE | 3/26/1998 |
| DATE OF SENTENCE/STATUS | 3/26/1998 |
| COURT SENTENCE SUSPENDED TIME | 10Y |
| CAUSE NUMBER | CAU:47846 |
| FINAL PLEADING | NO CONTEST OR NOLO CONTENDERE (C) |
| COURT PROBATION | 10Y |
| COURT FINE | 10000 |
| COURT COSTS | 313 |
| AGENCY RECEIVING CUSTODY | 264TH DISTRICT COURT BELTON (CSCD) |

## CUSTODIES

### Custody

| | |
|---|---|
| DATE OF OFFENSE | 10/6/1997 |
| CUSTODIAL AGENCY/ORI | PARDON AND PAROLE BOARD AUSTIN (TX227015G) |
| PERSONAL ID NUMBER | 00819427 |
| COUNTY OF COMMITMENT | BELL (014) |
| STATUS STARTING DATE | 10/6/2005 |
| STATUS SUPERVISION | DISCHARGED (409) |
| STATUS SUPERVISION LITERAL | TX227015G 00819427 |

### Custody

| | |
|---|---|
| DATE OF OFFENSE | 2/12/1997 |
| CUSTODIAL AGENCY/ORI | PARDON AND PAROLE BOARD AUSTIN (TX227015G) |
| PERSONAL ID NUMBER | 00819427 |
| SENTENCE EXPIRATION DATE | 10/6/2005 |
| COUNTY OF COMMITMENT | BELL (014) |
| STATUS STARTING DATE | 5/7/2004 |
| STATUS SUPERVISION | MANDATORY RELEASE (414) |
| STATUS SUPERVISION LITERAL | TX227015G 00819427 |
| RECEIVING AGENCY | 227 |
| PAROLED UNTIL DATE | 10/6/2005 |

### Custody

| | |
|---|---|
| DATE OF OFFENSE | 2/12/1997 |
| CUSTODIAL AGENCY/ORI | PARDON AND PAROLE BOARD AUSTIN (TX227015G) |
| PERSONAL ID NUMBER | 00819427 |
| SENTENCE EXPIRATION DATE | 10/6/2005 |
| COUNTY OF COMMITMENT | BELL (014) |
| STATUS STARTING DATE | 3/30/1998 |
| STATUS SUPERVISION | RECEIVED (421) |
| STATUS SUPERVISION LITERAL | TX236065C 00819427 |

TOP

# EXHIBIT "B"

*RECEIVED*



ONLINE FILING AVAILABLE AT http://cdc.texasbar.com.

12/20/2017

## I.    General Information

**Before you fill out this paperwork, there may be a faster way to resolve the issue you are currently having with an attorney.**

If you are considering filing a grievance against a Texas attorney for any of the following reasons:

> ➤  You are concerned about the progress of your case.
> ➤  Communication with your attorney is difficult.
> ➤  Your case is over or you have fired your attorney and you need documents from your file or your former attorney.

**You may want to consider contacting the Client-Attorney Assistance Program (CAAP) at 1-800-932-1900.**

CAAP was established by the State Bar of Texas to help people resolve these kinds of issues with attorneys quickly, without the filing of a formal grievance.

CAAP can resolve many problems without a grievance being filed by providing information, by suggesting various self-help options for dealing with the situation, or by contacting the attorney either by telephone or letter.

**I have _____ I have not   X   contacted the Client-Attorney Assistance Program.**

**If you prefer, you have the option to file your grievance online at http://cdc.texasbar.com.**

**In order for us to comply with our deadlines, additional information/documentation that you would like to include as part of your grievance submission must be received in this office by mail or fax within (10) days after submission of your grievance. This information will be added to your pending grievance. Information received after that timeframe will be returned and not considered. Thank you for your cooperation in this matter.**

**NOTE: Please be sure to fill out each section completely. Do not leave any section blank. If you do not know the answer to any question, write "I don't know."**

II.    INFORMATION ABOUT YOU -- PLEASE KEEP CURRENT

TDCJ/SID #: _____

Name:    Mr./Ms. Tom Retzlaff _____

Immigration #: _____

Address:    PO Box 46424 _____

City: _____ Phoenix _____ State: _____ AZ _____ Zip Code: ___ 85063-6424 ___

2.    Employer: _____

Employer's Address: _____

City: _____ State: _____ Zip Code: _____

3.    Telephone number:    Residence: _____ Work: _____

Cell:    ████████ _____

4.    Email:    ████████ _____

5.    Driver's License #: _____ Date of Birth: ████ _____

6.    Name, address, and telephone number of person who can always reach you.

Name: _____ Address:
Telephone: _____ _____

7.    Do you understand and write in the English language?    Yes _____
     If no, what is your primary language? _____
     Who helped you prepare this form? _____
     Will they be available to translate future correspondence _____
     during this process? _____

8.    **Are you a Judge?**    No _____
     If yes, please provide Court, County, City, State: _____

## III. INFORMATION ABOUT ATTORNEY

Note: Grievances are not accepted against law firms. You must specifically name the attorney against whom you are complaining. A separate grievance form must be completed for each attorney against whom you are complaining.

1. Attorney name: __Jason Lee Van Dyke_____

   Address: __108 Durango Drive__
   __Denton, TX 76227_____

2. Telephone number: Work: __469-964-5346____ Home: _____ Other: _____

3. Have you or a member of your family filed a grievance about this attorney previously?
   Yes: ____ No: ____ If "yes", please state its approximate date and outcome:
   _____

   Have you or a member of your family ever filed an appeal with the Board of Disciplinary Appeals about this attorney?
   Yes: __X__ No: ____ If "yes", please state its approximate date and outcome:
   _____

4. Please check one of the following:
   _____ This attorney was **hired** to represent me.
   _____ This attorney was **appointed** to represent me.
   __X___ This attorney was hired to represent **someone else**.

   Please give the date the attorney was hired or appointed. __n/a_____

   Please state what the attorney was hired or appointed to do.
   __He is representing himself_____

5. What was your fee arrangement with the attorney? _____

   How much did you pay the attorney? _____

   **If you signed a contract and have a copy, please attach.**
   **If you have copies of checks and/or receipts, please attach.**
   **Do not send originals.**

6. If you did not hire the attorney, what is your connection with the attorney? Explain briefly

   __He is an opposing attorney_____

7.  Are you currently represented by an attorney?          No _____

    If yes, please provide information about your current attorney:

    _____

8.  Do you claim the attorney has an impairment, such as depression or a substance use disorder? If
    yes, please provide specifics (your **personal** observations of the attorney such as slurred speech,
    odor of alcohol, ingestion of alcohol or drugs in your presence etc., including the date you observed
    this, the time of day, and location).

        Yes   He is a violent person suffering from very profound mental illness that self-medicates with
        illegal drugs.

9.  Did the attorney ever make any statements or admissions to you or in your presence that would
    indicate that the attorney may be experiencing an impairment, such as depression or a substance use
    disorder? If so, please provide details.
        He said he was going to murder both me and my family, as well as murder anyone else who
        "interferes" with his law practice.

## IV.  INFORMATION ABOUT YOUR GRIEVANCE

1.  Where did the activity you are complaining about occur?

    County:  Denton _____          City:  Denton _____

2.  If your grievance is about a lawsuit, answer the following, if known:

    a.  Name of court:                        377th Judicial District Court

    b.  Title of the suit:                    Jason Lee Van Dyke vs. Stephen B. Tyler

    c.  Case number and date suit was filed:  17-03-80810-D, filed March 24, 2017

    d.  If you are not a party to this suit, what is your connection with it? Explain briefly.
        I am one of the individuals from whom Van Dyke was attempting to get discovery from in his
        Rule 202 Pre-suit Discovery petition.

    **If you have copies of court documents, please attach.**

3.  Explain in detail why you think this attorney has done something improper or has failed to do
    something which should have been done. Attach additional sheets of paper if necessary.

    **Supporting documents, such as copies of a retainer agreement, proof of payment,
    correspondence between you and your attorney, the case name and number if a specific
    case is involved, and copies of papers filed in connection with the case, may be useful to our**

investigation. <u>Do not send originals, as they will not be returned</u>. Additionally, please do not use staples, post-it notes, or binding.

Include the names, addresses, and telephone number of all persons who know something about your grievance.

Also, please be advised that a copy of your grievance will be forwarded to the attorney named in your grievance.

Van Dyke is a crazy person who regularly gets into violent disputes with people on the internet in which Van Dyke ends up making ridiculous death threats and racists comments. Earlier this year I found out that he had gotten a job as an Assistant District Attorney for Victoria County, Texas, in charge of felony prosecutions. So I contacted Steve Tyler, the District Attorney (who I know because I live in San Antonio) and said "Do not hire this dude - he is a fucking lunatic." I then pointed out that I am convinced that Van Dyke is a drug addict who suffers from a very profound mental illegal that looks to be untreated and he regularly gets into "flame wars" and disputes with random people on the internet. I pointed out that Van Dyke is likely posting on Storm Front (a white nationalist website) as the user "WNLaw". Van Dyke has since been posting online that he is going to murder me because I am the one who cost him his jobw ith Victoria County. He further threatens to murder my family, and many others. Unfortunately for Van Dyke, he has come up against a person who simply cannot be intimidated. You all need to disbar this retard ASAP.

On March 24, 2017, Van Dyke filed a Rule 202 Pre-suit Discover petition in the 377th District Court in Victoria County trying to uncover the reasons why he lost that job at the District Attorney's office. On June 16, 2017, the petition was denied when the judge ruling against Van Dyke poured him out of court for being an idiot for filing such a thing to begin with.

Van Dyke's legal action was clearly in retaliation for my exercising my First Amendment rights and was in violation of the Texas Citizens Participation Act. See In re Chris Elliott, 504 S.W.3d 455 (tex.App. - Austin 2016, no pet.).

Van Dyke's continued public racial attacks and threats of violence against me and against so many others is a disgrace and embarrassment to the Texas State Bar.

## V. HOW DID YOU LEARN ABOUT THE STATE BAR OF TEXAS' ATTORNEY GRIEVANCE PROCESS?

| | | | |
|---|---|---|---|
| ___ | Yellow Pages | ___ | CAAP |
| _X_ | Internet | ___ | Attorney |
| ___ | Other | ___ | Website |

## VI. ATTORNEY-CLIENT PRIVILEGE WAIVER

I hereby expressly waive any attorney-client privilege as to the attorney, the subject of this grievance, and authorize such attorney to reveal any information in the professional relationship to the Office of Chief Disciplinary Counsel of the State Bar of Texas.

I understand that the Office of Chief Disciplinary Counsel maintains as confidential the processing of Grievances.

I hereby swear and affirm that I am the person named in Section II, Question 1 of this form (the Complainant) and that the information provided in this complaint is true and correct to the best of my knowledge.

Signature: _____ Electronically Signed _____ Date: _____ 12/20/2017 _____

TO ENSURE PROMPT ATTENTION, THE GRIEVANCE SHOULD BE MAILED TO:

THE OFFICE OF THE CHIEF DISCIPLINARY COUNSEL
P.O. Box 13287
Austin, TX 78711

# EXHIBIT "C"



To whom can I report an employee who is responsible for creating a very hostile work environment with regards to open racism, posting death threats on social media, and claims to be a Nazi. The guy is literally threatening to MURDER people who get into disagreements with him!!!

This is absolutely no joke and when I say the dude is a white supremacist / Nazi, that is what he really is. Plus, he has a criminal record for assaulting women!

I thought that I would contact management before I go to Facebook and Twitter and blast this out all over the world. This guy has been working for you for a very long time and I am shocked that nothing has been done.

#TimesUp

#MeToo


Dean Anderson



# EXHIBIT "D"

Nor are any of them responsible for its content.

**But, hey – Thanks for playing!!**

.

**IN OTHER NEWS....**





Who is the self-admitted white supremacist / 'Nazi' on the payroll of Texas Title
Company? **GUESS CORRECTLY AND WIN A NEW CAR!!**

**Is it these two guys?**

## EXECUTIVE TEAM



BOB KARLSENG
CEO



CLAUDE RICH
COO & Executive VP

**HERE IS A HINT:** This person recently Tweeted

*"Look good and hard at this picture you fucking nigger [picture of noose].*
*It's where I am going to put your neck!"*

**How about one of these three people?  Are any of them Nazis??**







CHRIS DRUMM
DFW PRESIDENT

SYNDI TOLLIVER
SENIOR VP

ALANA SIDENER
VP OF AGENCY OPERATIONS

**Maybe it is one of these young ladies instead?**

SALES & MARKETING







BECKY PENNARTZ
DIRECTOR OF COMMUNICATIONS/MARKETING

CAMEE PONDER
DIRECTOR OF EDUCATION

ALYCE ECKER
SALES MANAGER

## TEXAS TITLE – CORPORATE OFFICE/PLANO

5412 W. Plano Pkwy., Ste 101

Plano, TX 75093

(972) 733-3800

So have you guessed who the 'Nazi' / white supremacist is? **IT IS THIS GUY RIGHT HERE!!**

*"I have ZERO ethics when it comes to business and will not hesitate to destroy anyone daring to interfere with my interests."*

We guess this is what the State Bar means with regards to Van Dyke's violations of the Rules of Disciplinary Conduct.



— Absolutely incompetent – DO NOT HIRE THIS MAN!!



Follow

Here is a link to Van Dyke's Facebook page:

https://www.facebook.com/TheVanDykeLawFirmPLLC/

**FYI:** There is no "Tommy" here. No one named "Tommy" is an Admin of the *BV Files* or is otherwise responsible for our content. But then again, you guys already know that.

### DO NOT DO BUSINESS WITH THIS MAN OR HIS COMPANY!!!



— Bob Karlseng – Owner, Texas Title Company and paymaster to 'Nazis' / white supremacists

So why does Bob Karlseng give money and economic support to racists? **And what do each and everyone of the corporate clients of Maverick Title of Texas, LLC dba Texas Title Company think about their monies going into the pocket of a racist ass-hat who likes to post ridiculous stuff on The Interwebs?** That, our teeming **MILLIONS** of readers, listeners, and supporters, will be the subject of an upcoming article. **STAY TUNED!!**

Do you guys think that Van Dyke is a Nazi and a white supremacist? **WE REPORT – YOU DECIDE!**

# EXHIBIT "E"

| | |
|---|---|
| **From:** | Pawl Bazile <pawlbazile@gmail.com> |
| **Sent:** | Saturday, May 26, 2018 11:13 PM |
| **To:** | Jason Van Dyke |
| **Subject:** | Fwd: Defamatory Article |
| **Attachments:** | Van Dyke settlement letter.pdf; Letter to McInnes - 5-22-2018.pdf; D's Notice of withdraw of settlement offer & attachments - 5-9-2018.pdf |

Another one

Sent from my iPhone

Begin forwarded message:

> **From:** Tom Retzlaff <retzlaff@texas.net>
> **Date:** May 26, 2018 at 11:28:36 PM EDT
> **To:** "pawl@officialproudboys.com" <pawl@officialproudboys.com>
> **Subject: Defamatory Article**
>
> Dear Mr. Basile,
>
> At some point I suppose that I will get curious about how your article about Van Dyke appeared on a website ostensibly owned by Milo Hanrahan of Milo Worldworld, LLC - an entity which the Secretary of State's office lists as being 'in default' status and, legally, nonoperational, and what the connection is between that non-U.S. citizen here on an O-1 visa and your so-called *Proud Boys* organization. But I doubt it will ever be relevant to anything that I care about, right? (At least that should be your hope.)
>
> In any event, I am checking to see if you have issued a retraction and an apology for defaming me by calling me a liberal and left-wing. Did I mention to you that I was a member of the Republican party before you were even born in January 1984?
>
> Also, if you want something to write about, attached are some court documents for you "Proud Boys" to chew over this weekend. No doubt Van Dyke is crying like a bitch over the upcoming depositions of McInnes and his wife. Tough shit. There is not a damn thing he can do about. I have an absolute right to travel to NY City with a federal subpoena and conduct depositions of persons with knowledge of relevant facts. he can piss and moan all he wants to, but there is not a damn thing he can do about it. And once that video deposition gets posted on the YouTubes, you don't think the liberal media won't be tearing y'all up into pieces?
>
> Van Dyke can huff & puff all he wants, but you and your "Proud Boys" made a terrible mistake by allowing him into your group. The fact that he is claiming to be McInnes' lawyer now is a total joke! Is Van Dyke even licensed to practice law in New York state? No, he is not! (Thus, yet another State Bar grievance is born.)
>
> I meant what I said about your defaming me, Mr. Basile. And if you think I won't use that as an excuse to drag you and the rest of your "Proud Boys" into federal

court and embarrass the fuck out of your group, you clearly don't know me and have not been paying attention.  For the average human, nothing scares them more than legal issues. **I.  Do.  Not.  Care.**  My whole adult life has been spent in litigation.  I am not afraid of high-stakes legal stuff...I'am just going to start swinging and knock people's heads off.  Seriously.

Van Dyke is a public-figure and, at one time, was going to be an assistant district attorney in a state that has the highest use of the death penalty in the nation.  Is it really so unreasonable for black people (or any kind of "people" for that matter!) to be concerned about this guy being a prosecutor?  Someone who, when "provoked" resorts to racist language and death threats?  If you were a defendant who this guy was prosecuting, would you feel confident that race wasn't a factor?  And if you were a black victim and he was prosecuting the white offender, would you feel confident of a fair trial, based upon Van Dyke's demonstrable history of racism and inability to control himself?

Get fucking real, dude!

McInnes and his wife Emily are persons with knowledge of relevant facts.  If Van Dyke thinks he can get a judge to stop me, good luck with that.  His threats of getting an injunction are a total joke.  But then again, Jason L. Van Dyke, Esq. is a total joke.  "Mean Texas Attorney"?  More like "Punk-ass bitch!"


v/r


Thomas Retzlaff

EXHIBIT "F"

**Jason Van Dyke**

| | |
|---|---|
| **From:** | PawL BaZiLe <pawlbazile@gmail.com> |
| **Sent:** | Monday, May 28, 2018 3:56 PM |
| **To:** | Jason Van Dyke |
| **Subject:** | Fwd: |
| **Attachments:** | ECF 28 - D's Notice of Death Threats from Plaintiff.pdf |

---------- Forwarded message ----------
From: **Tom Retzlaff** <retzlaff@texas.net>
Date: Mon, May 28, 2018 at 5:04 AM
Subject:
To: "pawl@officialproudboys.com" <pawl@officialproudboys.com>

Dear Mr. Basile,

Would it surprise you to learn that Jason Van Dyke is a homosexual? He is 38 years old. Never been married, and has no kids. Or even a female girlfriend. But he does like to dress up as a bumble bee in his "Proud Boy" black and gold striped polo shirt - which is like totally gay, right?

So does anyone else get vibes that he's really, really, so far in the closet he's having adventures in Narnia?

Not that there is anything wrong with it, for sure. But Van Dyke did make a name for himself at Michigan State University speechifying against the homosexual agenda, referring to is as the "homosexual deathstyle" and accusing opponents of being intimately familiar with public toilets and cruising.

By the way, are you aware that I have obtained copies of the MSU Police Dept reports detailing Van Dyke's arrest for domestic violence, illegal weapons possession, and stalking incidents on campus involving a male "roommate" of his. Are you aware that when the police searched his college dorm room that they found the books The Turner Diaries and The Protocols of the Elders of Zion. How fucking un-American is that, eh? A so-called "Proud Boy" trafficking in Russian propaganda - lol!

I would like to request that you make an additional correction to your "article". As you know, Van Dyke cries like a bitch because he claims he and his "elderly" parents had received "death threats." Attached is a document that I filed with the federal court detailing a series of actual death threats that Van Dyke sent to me. Which was a horrible mistake. Did I tell you before that I used to be a federal and state law enforcement officer and that my son is a current law enforcement officer?

Would you be surprised to learn that there is an Arizona warrant out for Van Dyke's arrest?

One of the things that I plan on interrogating your buddy Gavin McInnes and his wife about is all of these death threats and harassment shit going on with your Proud Boys organization. See, e.g., https://www.huffingtonpost.com/entry/far-right-proud-boys-menaced-twitter-user-on-his-doorstep_us_5b06de68e4b07c4ea1060e92

Mr. Basile, I cannot emphasize enough just how bad of an idea it would be for one of you people to try something like this with me. I will shoot such a person dead and post the video about it on the YouTubes.

Van Dyke likes to claim that I am a liberal and a member of a left-wing group. Which is extremely surprising since most people I know have accused me of being a member of the Aryan Brotherhood and a "violent psychopath" responsible for "several unsolved homicides." Such a claim is, of course, highly defamatory. But it does show you what a liar Van Dyke is and how his claims shift according to which way the wind blows.

I think the best thing for all concerned would be for the Proud Boys to drop Van Dyke like a bad habit. Lawsuits are messy, unpredictable things and all sorts of collateral damage is likely to occur for you people before the dust finally settles.

v/r

Thomas Retzlaff

# EXHIBIT "G"

Gavin McInnes
88 Park Ave.
Larchmont, NY 10538-4224                     May 22, 2018

Re:   Jason L. Van Dyke vs Thomas Retzlaff
      Case No. 4:18-CV-247-ALM
      U.S. District Court – Eastern District of Texas

Dear Mr. McInnes,

No doubt you have read all of the media reports about the $100 million defamation lawsuit your running buddy, Jason Van Dyke, recently filed against me here in Texas.

No doubt you have heard all the crying from Van Dyke once he realized that he came across a man who simply cannot be intimidated and who has far deeper pockets that he ever imagined.

Also, no doubt, you have heard him despair of the fact that he cannot portray this lawsuit as some kind of "conservative vs. liberal" nonsense because, the truth is, I basically agree with nearly everything you seem to talk about politically. And, honestly, I actually think you are a bit too liberal on many of your views. (seriously)

Be that as it may, I am now forced to deal with Van Dyke. Which means that I am forced to deal with you and your *Proud Boys* organization.

I am a former federal and state law enforcement officer. I am also a former state prisoner having spent six years in Texas prison for illegal weapons possession (something the state legislature recently decided to no longer make a crime!). Thus, I have experience from both sides of the criminal justice fence, so to speak. Which is why I have a serious problem with guys like Van Dyke trying to get jobs as an assistant district attorney in a county next to mine near San Antonio. Fascist, racist beliefs have absolutely no business being involved in the criminal justice system whatsoever.

You and your wife, Emily, are persons with knowledge of relevant facts. Which is why later this summer myself and my attorney will be coming to New York City with a federal subpoena to take your videotaped depositions for use in this federal lawsuit in Texas and why I will be digging into your lives and into your *Proud Boys* organization and membership. I see that a lot of people are suing you guys regarding violent and racist attacks all across the country.

I also have read media reports about how your critics often times find themselves verbally or physically threatened, their homes and families stalked, and all kinds of other bullshit.

As you know, Van Dyke recently filed an identical defamation lawsuit against *The Mocking Bird* newspaper and one of its reporters in federal court. When the attorney for the news organization showed up to fight the lawsuit, Van Dyke folded like a cheap suit, saying in an email:

> My supervisor has instructed me to confer with you concerning a stipulation of dismissal with prejudice for the Mockingbird case and to sign one if you are willing to agree to it.
>
> Since I have learned that your office has a propensity to release my e-mails to the press and post them on Twitter, I am sending this message with the following caveat: This letter does not, and is not intended, to constitute my view on the strength of my case against Mockingbird and Mr. Bello. It is my personal belief that your client is an absolutely contemptible piece of human filth, and I would personally like nothing more than to prosecute this case to its conclusion. This letter is nothing more, and is not intended to be anything more, than compliance with an order from my immediate supervisor at the company where I am employed.

My *spidey sense* is telling me that this "supervisor" is you, Mr. McInnes, and I fully intend to grill both you and your wife like a couple of cheeseburgers until I get the answers that I want. I spent many years of honorable law enforcement service interrogating homicide suspects, white collar criminals, to traitors spilling our nation's secrets to the highest bidders.

Van Dyke is your guy, which means that he is your problem, Mr. McInnes. You gave him a leadership position within your *Proud Boys* organization and I know that Van Dyke represents you in a legal capacity, too, such as in the recent Trademark application process with the U.S.

Government and with regards to the dispute with the Oakland Raiders over your misappropriation of their logo on some stupid T-shirt you clowns were peddling.

Should Van Dyke or any of your *Proud Boys* engage in their typical harassment activities, I will be holding both you and Emily personally responsible.

Respectfully submitted,

Thomas Retzlaff
2402 E. Esplanade Ln.
PO Box 46424
Phoenix, AZ 85063-6424

email: ████████████████
Ph# ██████████████

p.s.

I have been a HUGE fan of Anthony Cumia for many, many years
and I enjoyed listening to your show on his Compound Media network.
When he and Opie got fired, I immediately canceled my XM subscription.
Also, Mark Levin is a good guy and I hope nothing that happens here with
this Van Dyke stuff blows back onto him and his people. Lawsuits are
messy, unpredictable things, as you know.

4

# EXHIBIT "H"



Proud Boys leader Gavin McInnes and his wife have just been notified that they will be forced to appear at a videotaped deposition that will be taking place this summer in New York City. This notice was hand delivered to McInnes' home. **CHECK IT OUT!!**

Gavin McInnes
88 Park Ave
Larchmont, NY 10538-4224          May 22, 2018

Re:   Jason L. Van Dyke vs Thomas Retzlaff
     Case No. 4:18-CV-247-ALM
     U.S. District Court – Eastern District of Texas

Dear Mr. McInnes,

    No doubt you have read all of the media reports about the $100 million defamation lawsuit your running buddy, Jason Van Dyke, recently filed against me here in Texas.

    No doubt you have heard all the crying from Van Dyke once he realized that he came across a man who simply cannot be intimidated and who has far deeper pockets that he ever imagined.

    Also, no doubt, you have heard him despair of the fact that he cannot portray this lawsuit as some kind of "conservative vs liberal" nonsense because, the truth is, I basically agree with nearly everything you seem to talk about politically. And, honestly, I actually think you are a bit too liberal on many of your views  (seriously!)

    Be that as it may, I am now forced to deal with Van Dyke. Which means that I am forced to deal with you and your *Proud Boys* organization

I am a former federal and state law enforcement officer. I am also a former state prisoner having spent six years in Texas prison for illegal weapons possession (something the state legislature recently decided to no longer make a crime). Thus, I have experience from both sides of the criminal justice fence, so to speak. Which is why I have a serious problem with guys like Van Dyke trying to get jobs as an assistant district attorney in a county next to mine near San Antonio. Fascist, racist beliefs have absolutely no business being involved in the criminal justice system whatsoever.

You and your wife, Emily, are persons with knowledge of relevant facts. Which is why later this summer myself and my attorney will be coming to New York City with a federal subpoena to take your videotaped depositions for use in this federal lawsuit in Texas and why I will be digging into your lives and into your *Proud Boys* organization and membership. I see that a lot of people are suing you guys regarding violent and racist attacks all across the country.

I also have read media reports about how your critics often times find themselves verbally or physically threatened, their homes and families stalked, and all kinds of other bullshit.

2

As you know, Van Dyke recently filed an identical defamation lawsuit against *The Mocking Bird* newspaper and one of its reporters in federal court. When the attorney for the news organization showed up to fight the lawsuit, Van Dyke folded like a cheap suit, saying in an email:

> My supervisor has instructed me to confer with you concerning a stipulation of dismissal with prejudice for the Mockingbird case and to sign one if you are willing to agree to it.
>
> Since I have learned that your office has a propensity to release my e-mails to the press and post them on Twitter, I am sending this message with the following caveat. This letter does not, and is not intended, to constitute my views on the strength of my case against Mockingbird and Mr. Bella. It is my personal belief that your client is an absolutely contemptible piece of human filth, and I would personally like nothing more than to prosecute this case to its conclusion. This letter is nothing more, and is not intended to be anything more, than compliance with an order from my immediate supervisor at the company where I am employed.

My *spidey sense* is telling me that this "supervisor" is you, Mr. Mehnes, and I fully intend to grill both you and your wife like a couple of cheeseburgers until I get the answers that I want. I spent many years of honorable law enforcement service interrogating homicide suspects, white collar criminals, to traitors spilling our nation's secrets to the highest bidders.

Van Dyke is <u>your</u> guy, which means that he is <u>your</u> problem, Mr. Mehnes. You gave him a leadership position within your *Proud Boys* organization and I know that Van Dyke represents you in a legal capacity, too, such as in the recent Trademark application process with the U.S.

3

Government and with regards to the dispute with the Oakland Raiders over

your misappropriation of their logo on some stupid T-shirt you clowns were

peddling.

Should Van Dyke or any of your *Proud Boys* engage in their typical

harassment activities, I will be holding both you and Emily personally

responsible

Respectfully submitted,

*Tom*

Thomas Retzlaff
2402 E. Esplanade Ln
PO Box 46424
Phoenix, AZ 85063-6424

email  Retzlaff@texas.net
Ph# (210) 317-9800

p.s.

I have been a HUGE fan of Anthony Cumia for many, many years
and I enjoyed listening to your show on his Compound Media network
When he and Opie got fired, I immediately canceled my XM subscription
Also, Mark Levin is a good guy and I hope nothing that happens here with
this Van Dyke stuff blows back onto him and his people.  Lawsuits are
messy, unpredictable things, as you know.

4

According to sources close to the investigation (which consist solely of the voices in our heads),
Nazi attorney Jason Lee Van Dyke had this to say in response to the deposition notice:

> *"I received a telephone from a client of mine in New York, Gavin McInnes, stating
> that he has received some sort of notification that either you or Mr. Retzlaff intend to
> take his deposition in this case (as well as that of his wife).  I wanted to give you an
> opportunity to respond to this so that I may determine whether I will have to seek a
> protective order from the Court.  The testimony of Mr. McInnes is clearly not relevant
> to any of the issues in this case.  Furthermore, all or substantially all of the
> communications between Mr. McInnes and myself are protected under the attorney-
> client privilege – and therefore – are not subject to discovery.*
>
> *While I am trying to act in a civilized manner, this is the second time in a week that I
> have had to warn you about your client's behavior, and specifically, his obsession with
> contacting or otherwise harassing my clients.  I believe there was no uncertainty in the
> past when I expressed to you that this would not be tolerated under any circumstances.*

*I warned you that there would be consequences, and now, there will be consequences as follows:*

*This correspondence constitutes my first attempt to conference with you concerning the entry of a preliminary injunction against your client to prohibit him from contacting me, from contacting my family, from contacting any person who is my employer, and from contacting any person with whom I have any sort of independent contractor relationship including, but not limited to, an attorney-client relationship.*

*I need to hear from you or otherwise have this ongoing problem resolved before the scheduling conference. Otherwise, I will be filing for the injunctive relief. "*



**Jason Van Douche**
@WestIdLawyer                          ( Follow )   ∨

## The only way I can win a case is if the defendant is too busy laughing at my retardation to file a response :'(

12:03 PM - 22 Sep 2014

When reached by telephone this morning for comment, your *American Hero* had this to say:

*"He seems to think I would be quaking in my boots that he might apply for an injunction. "Warning" me. Ridiculous. What a tragic, flaccid clown. "*

— Thomas Retzlaff



**Jason Van Douche**
@WeakTxLawyer

The only bar I should be a member of is the gay bar! #incompetent

4:04 PM - 19 Sep 2014

**AND ONE MORE BEFORE WE GET TIRED...**



**Jason Van Douche**
@WeakTxLawyer

Look! They sell @MeanTxLawyer at the dollar store!



10:13 PM - 24 Aug 2014



— Gavin McInnes and wife Emily Jendrisak

**FUN FACT:** Gavin McInnes is married to Emily Jendrisak who is a former Manhattan-based publicist and consultant, now a stay-at-home mom. She is a member of the Ho-Chunk tribe of the Native Americans and they have three children.

McInnes is a Nazi and he likes to send members of his group out to peoples' homes to harassment them and their family members. **CHECK IT OUT!!**

*POLITICS*

# A Member Of The Far-Right Proud Boys Menaced A Twitter User On His Doorstep

A videographer made fun of the far-right extremist group online, so they showed up at his house.

 By Andy Campbell

— https://www.huffingtonpost.com/entry/far-right-proud-boys-menaced-twitter-user-on-his-doorstep_us_5b06de68e4b07c4ea1060e92

Gavin Mcinnes Leak

_____ yzw@guerrillamail.com                                        Wed, May 9, 12:04 PM (13 days ago)

I am leaking this from 2 secret proud boy groups. Gavin just posted this. This is in reference to your video on Far Left showing him to be racist.

"These videographer stalkers are making us look like bitches. First, EVERYONE should report this Twitter post for hate speech and have your members do the same. At the very least, we can probably get it taken down and maybe get his ver fied profile deleted. They want Gavin McInnes fired? They want to attack our group?

LET'S SHOW THEM THERE ARE CONSEQUENCES!!!
THESE FUCKS ARE WAY TOO COMFORTABLE!!!
IF WE DO NOTHING, WE SEND A MESSAGE THAT IT'S OPEN SEASON ON PROUD BOYS!! IT'S NOT!!!

Let's get the social media profiles, phone numbers and addresses for their bosses, mothers, fathers, brothers, sisters, boyfriends, fiancés and girlfriends
- Prioritize ads for his mother all over the internet
- Craigslist ads for orgies, yard sales
- Thousands of dollars of food should be delivered to their houses

I'M NOT SAYING ANYONE SHOULD GO STAB ANYONE. BE SMART! POST ANY IDEAS OR INFO YOU HAVE IN THE COMMENTS, POYS"

Sent using Guerrillamail.com
Block or report abuse: https://www.guerrillamail.com/abuse?a=VFVxWHJ5a29BLEh5bG86ckZLS3c3SnVxQG

"These videographer stalkers are making us look like bitches. First, EVERYONE should report this Twitter post for hate speech and have your members do the same. At the very least, we can probably get it taken down and maybe get his verified profile deleted. They want Gavin McInnes fired? They want to attack our group?

LET'S SHOW THEM THERE ARE CONSEQUENCES!!!
THESE FUCKS ARE WAY TOO COMFORTABLE!!!
IF WE DO NOTHING, WE SEND A MESSAGE THAT IT'S OPEN SEASON ON PROUD BOYS!!! IT'S NOT!!!

Let's get the social media profiles, phone numbers and addresses for their bosses, mothers, fathers, brothers, sisters, boyfriends, friends and get to work.
- Hooker ads for his mother all over the internet
- Craigslist ads for orgies, yard sales...
- Thousands of dollars of food should be delivered to their houses

IM NOT SAYING ANYONE SHOULD GO STAB ANYONE. BE SMART! POST ANY IDEAS OR INFO YOU HAVE IN THE COMMENTS. POYB"





**Vic Berger IV**
@VicBergerIV

The end of the Proud Boys. @Gavin_McInnes
@ProudBoysUSA @CRTV

3:49 PM - May 2, 2018

967     314 people are talking about this

Of course, if anyone wants to deliver the same treatment to Gavin, his wife EMily, and their three children, that poor Mr. Vic Berger suffered, we here at the BV Files are only too happy to provide you, our teeming **MILLIONS** of readers, listeners, and supporters, with the home address for the McInnes family!

Antifa members are especially encouraged to show up as milk & cookies are always available.



**88 Park Ave,**
Larchmont, NY 10538
5 beds · 4.5 baths · 4,694 sqft



88 Park Ave, Larchmont, NY 10538

Get directions



— The three McInnes kids

**Funny....**



**Jason Pugh**
@TheJasonPugh

Replying to

"The man who showed up on Berger's
doorstep appears to be Kenneth Lizardo, 54, a
self-proclaimed Proud Boy who lives in
Massachusetts."

54? Wow. He may claim he's a ~~~~~~~ but
he's really just a sad "man".

THE NAZI LAWSUIT STARRING JASON VAN DYKE....



**Texas Lawyer**
@TexasLawyer

A Denton attorney is seeking $100M from a
critic who filed a grievance against him with
the State Bar of Texas and allegedly got him
fired from a Plano law firm after accusing the
lawyer of being a "Nazi" and a "white
supremacist" in internet postings. ow.ly
/Hrhw30jha9r



12 Retweets  35 Likes

♡ 13    ⟲ 12    ♡ 35

**Want to see who is on Team Retzlaff?**

CM/ECF LIVE - U.S. District Court (ver) Attorneys                    https://ecf.txsd.uscourts.gov/cgi-bin/iqtyAttorneys.pl?183664

**4:18-cv-00247-ALM** Van Dyke v. Retzlaff
Amos L. Mazzant, III, presiding
Date filed: 04/10/2018
Date of last filing: 05/23/2018

## Attorneys

| | | |
|---|---|---|
| **Jeffrey L. Dorrell**<br>Hanszen Laporte LLP<br>14201 Memorial Drive<br>Houston, TX 77079<br>713-522-9444<br>713-524-2580 (fax)<br>jdorrell@hanszenlaporte.com<br>*Logged: 05/07/2018*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | representing | **Thomas Christopher Retzlaff**<br>2402 E. Esplanade Ln<br>P.O. Box 46424<br>Phoenix, AZ 85063-1624<br>210-317-9800<br>Retzlaff@texas.net<br>*Defendant* |
| **Kent M Hanszen**<br>Hanszen Laporte<br>4309 Yoakum Blvd<br>Houston, TX 77006<br>713-522-9444<br>17135242580 (fax)<br>khanszen@hanszenlaporte.com<br>*Logged: 05/21/2018*<br>*ATTORNEY TO BE NOTICED* | representing | **Thomas Christopher Retzlaff**<br>2402 E. Esplanade Ln<br>P.O. Box 46424<br>Phoenix, AZ 85063-1624<br>210-317-9800<br>Retzlaff@texas.net<br>*Defendant* |
| **Anthony Laurent Laporte**<br>Hanszen Laporte<br>4309 Yoakum Blvd<br>Houston, TX 77006<br>713-522-9444<br>alaporte@hanszenlaporte.com<br>*Logged: 05/21/2018*<br>*ATTORNEY TO BE NOTICED* | representing | **Thomas Christopher Retzlaff**<br>2402 E. Esplanade Ln<br>P.O. Box 46424<br>Phoenix, AZ 85063-1624<br>210-317-9800<br>Retzlaff@texas.net<br>*Defendant* |
| **Jason Lee VanDyke**<br>The Van Dyke Law Firm PLLC<br>16901 Dallas Parkway<br>Suite 250<br>Addison, TX 75001<br>972-372-0200 | representing | **Jason Lee Van Dyke**<br>108 Durango Dr<br>Aubrey, TX 76227<br>469-964-5346<br>*Plaintiff* |

CM/ECF LIVE - U.S. District Court for the Northern District of California    https://ecf.txnd.uscourts.gov/cgi-bin/qryAttorney.pl?613614

972-248-3212 (fax)
jason.vandyke@mdvlawfirm.com
Assigned: 04-11-2018
ATTORNEY TO BE NOTICED

**William Carlton Wilson**
Hanszen Laporte LLP
14201 Memorial Drive
Houston, TX 77079
832-399-3383
713-524-2580 (fax)
cwilson@hanszenlaporte.com
Assigned: 05-21-2018
ATTORNEY TO BE NOTICED

representing

**Thomas Christopher Retzlaff**
2402 E. Esplanade Ln
P.O. Box 46424
Phoenix, AZ 85063-1624
210-317-9800
Retzlaff@texas.net
Defendant

2 of 2                                                        28-May-18 11:36 AM

By the way, in case Jason Van Dyke and any of his "Proud Boys" are interested in paying Retzlaff a little visit for harassment purposes, the dude is pretty easy to find. Which is surprising because members of the McGibney Gang have been claiming for over FOUR YEARS that all kinds of super secret FBI / AFT / and Grand Juries have been looking for our *American Hero & Honorary Admin of the BV Files* Thomas Retzlaff.

# EXHIBIT "I"

Dude - where is the lawsuit and restraining order and expedited discovery that you have been promising for the past 3 days???

While I cannot speak for this "Tom" person, I can certainly tell you that myself and my Co-Admins at the BV Files blog have been working the phones and emails every spare moment putting pressure on not just your current clients (easy enough to find), but all of your past ones, too!

Dude, your "law office" is going to be a ghost town filled with nothing but spider webs and Past Due notices from all of your student loan holders on account of you having no clients, which equals to NO MONEY, by the time we get done with you.

Ken White totally does not like you and, thanks to his help and guidance, you are going to be put out of business.

Hey, here is an idea! Why don't you send "Tom" an email with a Waiver of Service attached to it! Post it on your Facebook and Twitter, too! Isn't that what you did with your Pink Meth LOLsuit, buddy?

But you are a pussy.

Speaking of lol - you cry harder than Stormy Daniels taking it up the ass, Van Dyke!

WHERE IS THE LAWSUIT, TOUGH GUY??????????????

v/r

Dean Anderson



EXHIBIT "J"

**Jason Van Dyke**

| | |
|---|---|
| **From:** | Dean <dean714@yandex.com> |
| **Sent:** | Tuesday, May 29, 2018 10:41 AM |
| **To:** | Jason Van Dyke |
| **Subject:** | All proud boys magazine staff have been dox'd |

Hello fatso! I just saw your Sambo book reading this morning. How entertaining it was.

I was wondering how you would react upon learning that the entire Proud Boys magazine staff - and their family members - have been totally doxed! SSNs, drivers license #'s, credit scores, home addresses - the whole nine yards!

While not being an expert, it seems to me that this could only happen if someone had complete access to Lexisnexis Accurint for LEOs. Which really sucks for you and your friends. What could you all have been doing that would catch the attention of a law enforcement officer for in such a serious manner? I hear through the grape vine that arrest warrants are being sought for you. wow! How funny with that be!!!

By the way, do you have any clients left? One of the co-administrators on the BV Files blog just got off the phone with the parents of a kid from Allen, TX who you are (now were! (past tense)) repping on a dope charge. I did not know that was still against the law! You should come here to Southern California and you can smoke it up all you want to and it is perfectly legal! Anyways, I do not think that family was very happy to hear from Admin Mike when he told them about you being a Nazi and white supremacist and such that the state bar was going after you.

No more clients for you - not anymore, not ever!!


Dean Anderson

# EXHIBIT "K"

**From:** Dean <dean714@yandex.com>
**Sent:** Wednesday, October 24, 2018 3:40 PM
**To:** Jason Van Dyke

how is ur mom doing?

# EXHIBIT "L"

there really is only one person truly responsible for the man that is known around the world as
"JLVD" and that is the woman who gave birth to this Satan's Spawn in the first place – a
woman who would have been better off swallowing a load of semen than allowing a bunch of
little sperms up inside of her body.



James McGibney and his offspring



**Susan Van Dyke**     102
Customer Service Rep at State Farm Agent
Dallas/Fort Worth Area | Insurance

| | |
|---|---|
| Current | State Farm Agent |
| Previous | State Farm Insurance |
| Education | M.S. in Ed at Butler University |

Experience



**Office Representative for Robert & Daniel Pulaski**
State Farm Agent
March 2012 – Present · 6 years 8 months
Frisco, Texas



**State Farm - Kim Higgins & Kristin Grammar Agencies**
State Farm Insurance
March 2009 – March 2012 · 3 years 1 month
Plano, Texas

Education

**M.S. in Ed at Butler University**
Master of Science, Education

**Northern Illinois University**
Bachelors of Science, Biology and Education

◉ **Street Address**
    1518 Legacy Drive
    Suite 200
    Frisco, TX 75034-5849
    **Get Directions**

☎ **Phone:** 972-712-6000

◉ **Office Hours**
    Mon-Fri 8 30am to 5 00pm
    Evening/Weekends by Appt

🏛 **Landmark**
    On the corner of Legacy and Highway 121

📇 **Languages**
    English

🎓 **Credentials**
    License: TX-729452

🌐 www.bobpulaski.com

**Who else supports Nazis and violent white supremacists who regularly commit criminal acts?**



Joshua L. Van Dyke

Yeah, this guy right here.

**And does his employer know about this?**



# ABOUT US

- Value assessment/alignment of interest
- Five stages of pipeline
- Long-term capital fostering life and creating our investors
- Employee owned

ADV Partners is an Asian private equity firm formed to pursue privately negotiated value investment opportunities within the mid-market corporate segment in Asia. The firm was established in early 2013 by three founding partners with a common desire to build a world-class quality investment platform that combined their diverse yet complementary experience with timely and localized decision making. ADV is 100% employee owned.

ADV specializes in recognizing and identifying the potential for value. As an investor with long-term capital and a value mindset, we aim to generate investment returns by investing in a patient and disciplined manner, employing high-quality people, and aligning our interests with all our partners. We are a firm believer that good environmental social and corporate governance will stand as elemental towards stable business success.

ADV Partners currently manages 'ADV Opportunities Fund I L.P.' that closed fundraising in 2014-15 with a corpus of US$545 million. The Fund's investors include Sovereign Wealth Funds, Pension Plan, Endowments, Family Offices, and fund of funds who have provided the Fund with long term capital to pursue value focused investments.

**Joshua Van Dyke (Associate)**



Joshua L. Van Dyke is based in Hong Kong and his main responsibilities include providing support for deal execution and portfolio management for regional Asia investments. He has 20 years of experience in the finance industry in Asia, of which over 6 years have been in principal investing roles. Prior to ADV, Joshua worked on the Special Situations team at RHJI as a Summer Associate. Previously, he was a Vice President at Sprint Capital in Hong Kong where he was responsible for his deal structuring, execution and post-investment management of private equity and financing transactions to industrials and natural resources sectors. Joshua began his career as an investment banking professional at Deutsche Bank and BNP Paribas in Asia. Joshua is a CFA charter holder and has an MBA from the Wharton School and a Master of Arts in International Studies from the Lauder Institute of University of Pennsylvania. He is fluent in English and Chinese.

Stay tuned for further harrowing updates!

Oh, and this will never not be funny. But more on this later.

---

NO. 2014-CI-17245

| E.M. and V.B.M. | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| PHILIP R. KLEIN, KLEIN | § | |
| INVESTIGATIONS & | § | |
| CONSULTING, and JAMES W. | § | |
| LANDESS. | § | |
| *Defendant* | § | "*3*" JUDICIAL DISTRICT |

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**

Plaintiffs E.M. and V.B.M. file their Second Amended Original Petition, complaining of defendant Philip R. Klein, Klein Investigations & Consulting and James W. Landess, and would respectfully show as follows:

**I. DISCOVERY CONTROL PLAN**

1.    Pursuant to Tex. R. Civ. P. 190.4, plaintiffs intend to conduct discovery in this suit under Level 3.

**II. NO EXPEDITED-ACTIONS PROCESS**

2.    This suit is not eligible for the expedited-actions process of Tex. R. Civ. P. 169 because plaintiffs request injunctive relief and monetary relief in of $100,000.00

**III. PLEADING OF LEVEL OF RELIEF PURSUANT TO TEX. R. CIV. P. 47(c)**

3.    Pursuant to Tex. R. Civ. P. 47(c)(5), plaintiffs plead that they seek monetary relief in excess of $1,000,000.00



— Susan Van Dyke and her Nazi offspring

**DO NOT GO TO THIS HOUSE – YOU WILL MAKE VAN DYKE VERY ANGRY**



EXHIBIT "M"

| | |
|---|---|
| **From:** | Tom Retzlaff <retzlaff@texas.net> |
| **Sent:** | Thursday, November 01, 2018 8:26 AM |
| **To:** | Jeffrey Dorrell |
| **Cc:** | Jason Van Dyke; kristin.brady@texasbar.com |
| **Subject:** | Re: Fwd: Certificate of Conference - 2nd Attempt |

What a stupid cunt! Jeff just tell the bitch to file it already. I'm sick of this clown sitting around telling us what he's gonna do, but not doing it!

I may be going to Cape Town next week for a few days to meet up with my dad. So if this is gonna happen it needs to be soon as I got stuff to do.

Like that shit with his mom. Still waiting on the Frisco police / FBI. Yadda yadda yadda. He is worse that than that cock gobbling fool McGibney with all his stupid police threats. When will these idiots ever learn that we seriously do not give two shits about their crap. But then again, look at whom we are dealing with, I guess. A little boy stomping his feets demanding we pay attention to him - or else. * yawn * Been there, done that.

Here is a cut and past response for you to please use:

**File it, bitch!!** Or shut the fuck up because the adults are busy and got shit to do.

But I still bet you a dollar this pussy won't do it by lunch time, or even at all.

I'm going back to bed. The life of an indolent unemployed lay-about is surprisingly busy. I took my daughter to the West Hollywood Halloween parade last night and we had a blast!!

**From:** JDorrell@hanszenlaporte.com
**Sent:** November 1, 2018 4:38 AM
**To:** retzlaff@texas.net
**Subject:** Fwd: Certificate of Conference - 2nd Attempt

Begin forwarded message:

**From:** Jason Van Dyke <jason@vandykelawfirm.com>
**Subject: Certificate of Conference - 2nd Attempt**
**Date:** October 31, 2018 at 8:39:49 PM CDT
**To:** Jeffrey Dorrell <JDorrell@hanszenlaporte.com>

Mr. Dorrell –

This is my second certificate of conference attempt on the motion for a clarifying order, which I have re-attached for your convenience. I did receive your client's response. However, I think I need to hear from you personally with respect to whether you oppose the motion before I file it. The basis for my belief is the following article, which I stumbled upon earlier this week, which I believe is applicable to your relationship with Mr. Retzlaff.

https://www.texasappleseed.org/sites/default/files/Mental_Health_Handbook_Printed2015.pdf



**Mr. Jason L. Van Dyke**
The Van Dyke Law Firm P.L.L.C.

108 Durango Drive
Crossroads, TX 76227
(469) 964-5346 Work
(972) 421-1830

jason@vandykelawfirm.com

# EXHIBIT Two


TX Federal Court Petition

CAUSE NO. 18-2793-431

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF a/k/a | § | |
| Dean Anderson d/b/a BV Files, ViaView Files | § | |
| L.L.C., and ViaView Files | § | |
| Defendant. | § | DENTON COUNTY, TEXAS |

### PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

### I.   DISCOVERY CONTROL PLAN AND LOCAL RULE DISCLOSURE

1.1   Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas

Rules of Civil Procedure.  Plaintiff seeks damages in the amount of one million dollars or

more.

### II.   PARTIES

2.1   Plaintiff, Jason Lee Van Dyke, ("Van Dyke"), an individual, is a resident of Denton

County, Texas whose address is 108 Durango Drive, Crossroads, TX 76227.

2.2   Defendant, Thomas Christopher Retzlaff a/k/a Dean Anderson d/b/a ViaView Files LLC,

BV Files, and ViaView Files ("Retzlaff"), an individual, may be served with process at

PO Box 46424, Phoenix AZ 85063

2.3   Subject matter jurisdiction is appropriate in this Court because Plaintiff seeks damages

within the jurisdictional limits of this Court.  Personal jurisdiction over the Defendant is

appropriate in this Court because Defendant has committed numerous tortious acts

against a resident of this state.  It should further be noted that Defendant has voluntarily

litigated in this state in multiple separate occasions and has previously been declared a

vexatious litigant in this state.

ORIGINAL PETITION AND APPLICATION FOR TRO

2.4     Venue in this state is mandatory in Denton County, Texas pursuant to Tex. Civ. Prac. &
        Rem. Code § 15.016 because Plaintiff resided in Denton County on the date that his
        causes of action for defamation and for invasion of privacy accrued.

### III.   FACTS

3.1     Van Dyke is an attorney licensed to practice law in the State of Texas who represents
        both individuals and small-to-medium sized businesses in a variety of matters which
        include, but are not limited to, criminal defense, civil litigation, family law, and
        consumer law.  He was, until March 28, 2018, employed by Karlseng, LeBlanc & Rich
        L.L.C. ("KLR") for the purpose of investigating claims and litigating cases on behalf of
        Maverick Title of Texas L.L.C. d/b/a Texas Title ("Texas Title").

3.2     Retzlaff is a convicted felon and a vexatious litigant.  A copy of the order declaring
        Retzlaff a vexatious litigant is attached hereto as Exhibit "A" and incorporated by
        reference herein.  A copy of Retzlaff's criminal history in Texas is attached hereto as
        Exhibit "B" and incorporated by reference herein.

3.3     On or around December 20, 2017, Retzlaff filed a frivolous grievance against Plaintiff
        with the State Bar of Texas in which he made the following claim:

> "Earlier this year I found out that he had gotten a job as an Assistant District
> Attorney for Victoria County, Texas, in charge of felony prosecutions. So I
> contacted Steve Tyler, the District Attorney (who I know because I live in San
> Antonio) and said "Do not hire this dude - he is a flicking lunatic." I then pointed
> out that I am convinced that Van Dyke is a drug addict who suffers from a very
> profound mental illegal that looks to be untreated and he regularly gets into
> "flame wars" and disputes with random people on the internet. I pointed out that

ORIGINAL PETITION AND APPLICATION FOR TRO

Van Dyke is likely posting on Storm Front (a white nationalist website) as the

user "WNLaw". Van Dyke has since been posting online that he is going to

murder me because I am the one who cost him his job with Victoria County. He

further threatens to murder my family, and many others. Unfortunately for Van

Dyke, he has come up against a person who simply cannot be intimidated. You all

need to disbar this retard ASAP.   On March 24, 2017, Van Dyke filed a Rule 202

Pre-suit Discover petition in the 377th District Court in Victoria County trying to

uncover the reasons why he lost that job at the District Attorney's office. On June

16, 2017, the petition was denied when the judge ruling against Van Dyke poured

him out of court for being an idiot for filing such a thing to begin with.  Van

Dyke's legal action was clearly in retaliation for my exercising my First

Amendment rights and was in violation of the Texas Citizens Participation Act.

See In re Chris Elliott, 504 S.W.3d 455 (tex.App. - Austin 2016, no pet.)."

Plaintiff is not suing Defendant for the act of filing the grievance.  However, he is suing

Defendant in part for the allegations made by him in the grievance and for tortious

conduct that he has committed against Plaintiff since the filing of the grievance.  The

facts and circumstances surrounding the grievance also demonstrate that Defendant

controls a website that has been responsible for tortious conduct against Van Dyke.

3.4     The grievance referenced in paragraph 3.3 above was initially dismissed by the State Bar

of Texas as an inquiry.  Defendant appealed this decision to the Board of Disciplinary

Appeals (BODA), which reversed this determination on or around March 1, 2018.  On or

around the same date, the website known as "BV Files", which can be located at

www.viaviewfiles.net (referred to herein as "BV Files", posted a copy of the letter sent to

Defendant from BODA.  As matters of this nature before the State Bar of Texas and

BODA are confidential, it stands to reason that the person responsible for the content of

BV Files is, in fact, Defendant.  A true and correct copy of the relevant excepts forom

3.5    On March 25, 2018, Retzlaff made the following statements of fact concerning Van Dyke

on his website at the following link (http://www.viaviewfiles.net/tag/jason-van-dyke/):

(a)    Van Dyke is a Nazi;

(b)    Van Dyke is a white supremacist;

(c)    Van Dyke has a criminal record for abusing women; and

(d)    Van Dyke has committed professional misconduct against him (Retzlaff).

He also posted pictures of the principals of KLR and Texas Title, referring specifically to

Robert Karlseng as a "Nazi Paymaster".  He also posted the address of Van Dyke's

employer.  A true and correct copy of the relevant except from this post is attached hereto

as Exhibit "D" and incorporated by reference herein.

3.6    In addition to the foregoing, Plaintiff learned that Retzlaff sent numerous e-mail

messages to Robert Karlseng and Claude Rich.  In one e-mail communication he wrote:

> "I thought that I would contact management before I go to Facebook and Twitter
>
> and blast this out all over the world.  This guy has been working for you for a
>
> very long time and I am shocked that nothing has been done."  In the same e-mail
>
> string, Retzlaff threatened to contact every judge and opposing counsel in every
>
> case that Van Dyke is currently involved in. "

It should be noted that, in these communications, Retzlaff used the name "Dean

Anderson" in an apparent attempt to mask his tortious conduct against Van Dyke.  In

these messages, Defendant stated that he would be calling all of Van Dyke's clients, the

opposing counsel in all of his cases, and the judges in all of his cases. Similar threats were made to Plaintiff in the electronic communications attached hereto as Exhibit "E" and Exhibit "F" and incorporated by reference herein.

3.7  On March 27, 2018, Plaintiff was informed that he was being terminated from his employment with KLR due to the postings made by Defendant. But for the harassment of KLR and its principals by Defendant, Plaintiff would not have lost his job.

## IV.  CAUSES OF ACTION

4.1  Plaintiff incorporates paragraphs 1.1 – 3.7 above into each cause of action below by reference.

### ( Libel Per Se )

4.2  Defendant published the statements of fact concerning Plaintiff referenced in paragraph 3.5 and 3.6 above, and in an electronic communication to Plaintiff's employer.

4.3  The statements were false and defamatory.

4.4  With regard to making the statements, the Defendant was acting with actual malice.

4.5  Damages are presumed in favor of Plaintiff and against Defendant because he made statements which tended to (a) injure Van Dyke in his office, profession, or occupation; and (b) falsely charges Van Dyke with the commission of a crime. *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). Nevertheless, Plaintiff has suffered actual monetary loss due to the loss of his employment as a result of Defendant's conduct.

4.6  Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for libel per se.

ORIGINAL PETITION AND APPLICATION FOR TRO

### ( Intrusion on Seclusion )

4.7    Retzlaff intentionally intruded on Van Dyke's solitude, seclusion or private affairs.
       While this tort has always included physical intrusions, it has also included non-physical
       intrusions such as following, spying-on, or harassing a plaintiff. *Kramer v. Downey*, 680
       S.W.2d 524, 525 (Tex. App. – Dallas 1984, writ ref'd n.r.e).

4.8    This type of intrusion into ones private affairs (repeated demands to plaintiff's boss with
       the clear intent that Van Dyke's employment be terminated) would be highly offensive to
       a reasonable person. *Household Credit Servs. v. Driscol*, 989 S.W.2d 72, 84-85 (Tex.
       App. – El Paso 1998, pet. denied); *Donnel v. Lara*, 703 S.W.2d 257, 259 (Tex. App. –
       San Antonio 1985, writ ref'd n.r.e).

4.9    Van Dyke has suffered injury as a result of Retzlaff's intrusion.  In this case, Van Dyke
       has suffered the complete loss of his employment and severe emotion distress concerning
       that loss of employment.  He has also suffered emotional distress due to the ongoing and
       continuing harassment by Retzlaff.

### ( Tortious Interference With Contract – Victoria County )

4.10   Plaintiff had an existing contract with the Victoria County District Attorney for
       employment as a felony prosecutor, which he had been scheduled to begin on April 3,
       2017 at a salary of $63,600.00 plus other employment benefits.

4.11   Through the actions to which Defendant has freely admitted, and which is recited in
       paragraph 3.3 above, Defendant willfully and intentionally interfered with the contract
       between Plaintiff and Victoria County.

4.12   Defendant's interference with the contract was the proximate cause of Plaintiff's injury,
       to wit, the loss of his employment, as well as earnest money he had placed a house

located at 110 Teakwood in Victoria, Texas and severe damage to his professional reputation.

4.13    Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for tortious interference

### ( Tortious Interference With Contract –  KLR )

4.14    Plaintiff had an existing contract with KLR for employment.  To wit, Plaintiff was employed as an associate attorney with KLR for a salary of sixty thousand dollars ($60,000) per year, plus health and other employment benefits.

4.15    Through the actions outlined in paragraphs 1.1 – 3.7 above, Defendant willfully and intentionally interfered with the contract between Plaintiff and KLR.

4.16    Defendant's interference with the contract was the proximate cause of Plaintiff's injury, to wit, the loss of his employment.

4.17    Plaintiff specifically alleges that he can prove his claim against Defendant by clear and convincing evidence, including actual malice, and that he is entitled to recover of exemplary damages on his claim for tortious interference.

### ( Intentional Infliction of Emotional Distress )

4.18    The conduct of Defendant as alleged in paragraphs 1.1 – 3.7 above was intentional, extreme, and so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

4.19    Defendant's conduct has caused Plaintiff severe emotional distress due to the loss of his job and ongoing harassment by Defendant.

ORIGINAL PETITION AND APPLICATION FOR TRO

## V.    APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

5.1    Plaintiff reincorporates the allegations contained in paragraphs 1.1 –4.19 above.

### (Temporary Restraining Order)

5.2    Pursuant to Tex. R. Civ. P. 680, Plaintiff requests that a temporary restraining orders be entered against Defendant.  An affidavit in support of the temporary restraining order is attached hereto as Exhibit "F" and incorporated by reference herein.

5.3    The evidence contained in the affidavit demonstrates that Defendant has harassed Plaintiff in an extreme and outrageous matter, that he has caused Plaintiff to lose his job, and that he is likely to interfere with Plaintiff's clients and other possible means of employment.  He has expressly stated that he intends to destroy Plaintiff's career and continue this conduct into the foreseeable future.

5.4    Defendant is well known to Texas courts, to the Texas legal community, and to the public at large for engaging in this type of behavior.  In fact, he has engaged in similar conduct toward attorneys in this county (Evan Stone) in the past.  Plaintiff has already suffered irreparable injury and damage.  Defendant also represents an imminent threat to continued immediate and irreparable injury, loss, or damage due to his threats to continue harassing Plaintiff and contacting his clients.

5.5    Plaintiff has a substantial likelihood of success on their claims.  The evidence attached to this petition could not possibly be more damning and the conduct committed by Defendant is extreme and outrageous to such an extent that it is nearly without precedent.  Injunctive relief is Plaintiff's sole remedy to stop continuing damage to his livelihood and reputation.

5.6    Texas courts have held that injunctive relief is appropriate in cases when restraining the

publication of a defamatory statement is essential to avoid impending danger or to protect a business or other property interest that is threatened by intimidation or coercion. *Kinney v. Barnes*, 443 S.W.3d 87, 99 (Tex. 2014) (permitting injunctive relief in a defamation case to avoid impending danger); *Ex parte Tucker*, 220 S.W.75, 76 (Tex. 1920) (permitting injunctive relief to protect against intimidation or coercion).  A constant barrage of false and defamatory statements directed toward an individual's employer and his clients is not protected by the First Amendment; it is tortious conduct that this Court clearly has the power to prohibit.  Such a prohibition is especially appropriate in this case, where Defendant has managed to cause extreme harm to Plaintiff in a very short period of time.

5.7     The relief which Plaintiff immediately requests from this Court is that Defendant be enjoined and restrained from:

> (a)     having further contact of any kind with Plaintiff, unless Defendant represents himself as a *pro se*, and in that case, only to the minimum extent necessary to comply with the Texas Rules of Civil Procedure.

> (b)     having any contact with any employer of Plaintiff;

> (c)     having any contact with any potential employer of Plaintiff;

> (d)     having any contact with any past, current, or future client of Plaintiff;

> (e)     making any further publication, on the Internet or elsewhere, which relate or pertain to Plaintiff in any way;

5.8     Plaintiff asks that the Court set bond at no more than $100.00.  This bond is reasonable in light of the fact that Plaintiff just lost his job due to Defendant's wrongful conduct and is currently making only $24,000.00 per year at what used to be his second job.

ORIGINAL PETITION AND APPLICATION FOR TRO

**(Temporary Injunction)**

5.9    Pursuant to Tex. R. Civ. P. 681-84, Plaintiff requests that Defendant be cited to appear,

and following such a hearing, for the Court to enter a temporary injunction enjoining and

restraining the conduct referenced in paragraph 5.7 above.

5.10   Plaintiff requests that the temporary injunctive relief under paragraph 5.7 begin to run at

the time this Court signs a temporary restraining order (or temporary injunction) and

terminate at the conclusion of this lawsuit's trial.

5.11   Plaintiff asks that the Court set bond at no more than $100.00.

**( Permanent Injunction )**

5.12   At the conclusion of trial, Van Dyke requests that any injunction entered as requested in

paragraphs 5.1 – 5.11 above be made permanent.  Plaintiff also requests that Defendant

be ordered to remove any and all content that he has published concerning Plaintiff that is

adjudged to be defamatory. *Kinney*, 443 S.W.3d at 93.

## VI.    PRAYER

6.1    Plaintiff prays that—

   a.    Defendant be cited to appear and answer;

   b.    Plaintiff be awarded actual damages against Defendant that were incurred
         as a result of his wrongful conduct including, but not limited to, damages
         for mental anguish, loss to personal reputation, loss to professional
         reputation, and loss of business, in the amount of at least thirty million
         dollars ($30,000,000.00);

   d.    Plaintiff be awarded exemplary damages against Defendant in the amount
         of at least seventy million dollars ($70,000,000.00);

   e.    Plaintiff be granted a temporary restraining order for the relief requested
         in paragraphs 5.7 until a hearing on the issue can be held;

   f.    That upon such hearing on the request for injunctive relief set forth above,
         that this Court will order, restrain, and enjoin Defendant as plead in

ORIGINAL PETITION AND APPLICATION FOR TRO

paragraphs 5.7 and 5.9 – 5.11 above;

g.     Plaintiffs be granted permanent injunctive relief against Defendant;

h.     Plaintiffs be granted judgment for all costs of court; and

i.     Plaintiffs be granted all further relief to which it may be entitled.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
State Bar No. 24057426
108 Durango Drive
Crossroads, TX 76227
P – (469) 964-5346
F – (972) 421-1830
Email:  jason@vandykelawfirm.com

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 2.1.3

I certify that, to the best of my knowledge, the party against whom relief is sought ex parte is not represented by counsel in the matter made the basis of the relief sought.  Upon investigating this case, I came to believe that Retzlaff was represented by Jeffrey Dorrell of Hanszen LaPorte.  I spoke with Mr. Dorrell prior to filing this lawsuit and he stated to me that he does not represent Mr. Retzlaff.  Accordingly, Retzlaff is not, to the best of my knowledge, represented by counsel.

/s/ Jason Lee Van Dyke
JASON L.VAN DYKE

# Exhibit Three

# Texas CPCR
# Ch. 27

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE B. TRIAL MATTERS

CHAPTER 27. ACTIONS INVOLVING THE EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS

Sec. 27.001. DEFINITIONS. In this chapter:
(1) "Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.
(2) "Exercise of the right of association" means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests.
(3) "Exercise of the right of free speech" means a communication made in connection with a matter of public concern.
(4) "Exercise of the right to petition" means any of the following:
(A) a communication in or pertaining to:
(i) a judicial proceeding;
(ii) an official proceeding, other than a judicial proceeding, to administer the law;
(iii) an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;
(iv) a legislative proceeding, including a proceeding of a legislative committee;
(v) a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;
(vi) a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;
(vii) a proceeding of the governing body of any political subdivision of this state;
(viii) a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or
(ix) a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;
(B) a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other

governmental body or in another governmental or official proceeding;

(C)  a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D)  a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E)  any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

(5)  "Governmental proceeding" means a proceeding, other than a judicial proceeding, by an officer, official, or body of this state or a political subdivision of this state, including a board or commission, or by an officer, official, or body of the federal government.

(6)  "Legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.

(7)  "Matter of public concern" includes an issue related to:

(A)  health or safety;

(B)  environmental, economic, or community well-being;

(C)  the government;

(D)  a public official or public figure; or

(E)  a good, product, or service in the marketplace.

(8)  "Official proceeding" means any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant.

(9)  "Public servant" means a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties:

(A)  an officer, employee, or agent of government;

(B)  a juror;

(C)  an arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy;

(D)  an attorney or notary public when participating in the performance of a governmental function; or

(E)  a person who is performing a governmental function under a claim of right but is not legally qualified to do so.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.002.  PURPOSE.  The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.003.  MOTION TO DISMISS.  (a)  If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

(b)  A motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action.  The court may extend the time to file a motion under this section on a showing of good cause.

(c)  Except as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.004.  HEARING.  (a)  A hearing on a motion under Section 27.003 must be set not later than the 60th day after the date of service of the motion unless the docket conditions of the court require a later hearing, upon a showing of good cause, or by agreement of the parties, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

(b)  In the event that the court cannot hold a hearing in the time required by Subsection (a), the court may take judicial notice that the court's docket conditions required a hearing at a later date, but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c).

(c)  If the court allows discovery under Section 27.006(b), the court may extend the hearing date to allow discovery under that subsection, but in no event shall the hearing occur more than 120 days after the service of the motion under Section 27.003.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17,

2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 1, eff. June 14, 2013.


    Sec. 27.005.  RULING.  (a)  The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.
    (b)  Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court shall dismiss a legal action against the moving party if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:
        (1)  the right of free speech;
        (2)  the right to petition; or
        (3)  the right of association.
    (c)  The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.
    (d)  Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 2, eff. June 14, 2013.


    Sec. 27.006.  EVIDENCE.  (a)  In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based.
    (b)  On a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


    Sec. 27.007.  ADDITIONAL FINDINGS.  (a)  At the request of a party making a

motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

(b)  The court must issue findings under Subsection (a) not later than the 30th day after the date a request under that subsection is made.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.


Sec. 27.008.  APPEAL.  (a)  If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b)  An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c)  Repealed by Acts 2013, 83rd Leg., R.S., Ch. 1042, Sec. 5, eff. June 14, 2013.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 5, eff. June 14, 2013.


Sec. 27.009.  DAMAGES AND COSTS.  (a)  If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:

(1)  court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and

(2)  sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

(b)  If the court finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

Sec. 27.010.  EXEMPTIONS.  (a)  This chapter does not apply to an enforcement action that is brought in the name of this state or a political subdivision of this state by the attorney general, a district attorney, a criminal district attorney, or a county attorney.

(b)  This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

(c)  This chapter does not apply to a legal action seeking recovery for bodily injury, wrongful death, or survival or to statements made regarding that legal action.

(d)  This chapter does not apply to a legal action brought under the Insurance Code or arising out of an insurance contract.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.
Amended by:
    Acts 2013, 83rd Leg., R.S., Ch. 1042 (H.B. 2935), Sec. 3, eff. June 14, 2013.


Sec. 27.011.  CONSTRUCTION.  (a)  This chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.

(b)  This chapter shall be construed liberally to effectuate its purpose and intent fully.

Added by Acts 2011, 82nd Leg., R.S., Ch. 341 (H.B. 2973), Sec. 2, eff. June 17, 2011.

# EXHIBIT FOUR

Plaintiff's Motion for Injunction

*Van Dyke v. Retzlaff*

Case No. 4:18-cv-00247-ALM

Filed in the U.S. District Court for the Eastern
District of Texas – Sherman Division

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | |
| a/k/a Dean Anderson d/b/a BV Files, Via | § | |
| View Files L.L.C., and ViaView Files | § | |
| Defendant | § | |

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, Jason Lee Van Dyke, asks that this Court grant a preliminary injunction against Defendant.

### I.     INTRODUCTION

1.    Plaintiff is Jason Lee Van Dyke. Defendant is Thomas Christopher Retzlaff.

2.    This case arose from ongoing harassment of Plaintiff and interference with his employment by Defendant. The harassment has been ongoing for at least fourteen months and, in that time, Defendant's acts have caused Plaintiff to lose his full time employment on two separate occasions. He has lost other clients as a result of Defendant's tortious conduct as well.

3.    Harassment by sending repeated electronic communications occurs when (a) a person; (b) with the intent to harass, annoy, alarm, abuse, torment, or embarrass another; (c) sends repeated electronic communications; (d) in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.  Tex. Pen. Code § 42.07(a)(7). Stalking is when (a) a person; (b) on more than one occasion; (c) pursuant to the same scheme or course of conduct; (d) knowingly; (e) engages in conduct that

constitutes an offense under Tex. Pen. Code § 42.07 [harassment].  Tex. Pen. Code §

42.072.

4.      Defendant's electronic communications to Plaintiff, his employers, and his clients is

criminal harassment of Plaintiff. In an effort to destroy Plaintiff's legal career, he has

taken this action multiple times over the course of the past fourteen months. This action

meets the legal definition of stalking and Plaintiff now seeks a preliminary injunction

from this Court to compel Defendant to cease and desist his stalking of Plaintiff.

### III.   FACTS

5.      On information and belief, Defendant has been utilizing both PACER and the Texas

Electronic Filing Systems to systematically identify Plaintiff's clients, the judges

assigned to cases where Plaintiff is acting as counsel, and the opposing attorney in

those cases.

6.      Since the filing of this lawsuit, Plaintiff lost a contract with Claude and Catia Rich,

which pre-dated his employment with Karlseng, LeBlanc & Rich L.L.C. ("KLR")

under which he had been retained to represent them in a claim for negligence and

deceptive trade practices for damages related to faulty concrete in the construction of

their house. This was Cause No. DC-17-06085, styled *Claude Rich, et al. v. Big D

Concrete, Inc., et al.,* in the 160th District Court in and for Dallas County, Texas.

7.      Continued stalking by Defendant was confirmed when, on May 3, 2018, Plaintiff was

approached by attorney Jared Julian (opposing counsel) and informed that he too had

been contacted by Defendant. The case was Cause No. 17-10442-431, styled *In The

Matter of the Marriage of Jennifer Melisa Jaynes and Chris David Roberts*, and

pending in the 431st District Court in and for Denton County, Texas. Plaintiff has had

several conversations with other potential clients and attorneys who have specifically referenced fear of reprisal from Defendant as the reasons for their refusal to hire or associated with him.

8.   On or around May 22, 2018, Plaintiff was interviewed by Pawl Bazile for an article on "Dangerous.com", a website affiliated with conservative media personality Milo Yiannopolous, concerning the tortious acts that Defendant has committed against him over the course of the past fourteen months, as well as the events leading up to Defendant's stalking of Plaintiff. The article was published on May 24, 2018 in an article entitled "Leftwing Stalkers Cost Me Two Jobs, Here's How I'm Fighting Back".

9.   In response to the article, Defendant sent the electronic e-mail communication attached hereto as Exhibit "A" to Mr. Bazile. The electronic e-mail communication specifically references Gavin McInnes, who has been a client of Plaintiff since August of 2017, and who Plaintiff was recently retained to represent in Cause No. 2:18-cv-10542-LJM-EAS, styled *Joel Vangheluwe, et al. v. GotNews, LLC, et al.* in the U.S. District Court for the Eastern District of Michigan (Plaintiff is licensed to practice law before that court). Mr. Bazile contacted Mr. McInnes about the e-mail communication who, in turn, reached out to Plaintiff concerning its contents.

10.  The following day, Defendant sent a second e-mail communication to Mr. Bazile. The e-mail communication is attached hereto as Exhibit "B" and incorporated by reference herein. As an attachment, Defendant sent Mr. Bazile a copy of a letter that he allegedly sent to Mr. McInnes. That attachment is attached hereto as Exhibit "C" and incorporated by reference herein.

11.  On May 28, 2018, Plaintiff learned that Defendant had begun blogging about Mr.

McInnes on his "BV Files" blog. Plaintiff has attached relevant copies of this posting hereto as Exhibit "D" and they are incorporated by reference herein. The blog post contains pictures of Mr. McInnes' wife and children. It also contains the home address of Mr. McInnes and encourages members of the domestic terrorist collective known as "Antifa" to stalk Mr. McInnes and his family at their home. Additional communications concerning Plaintiff were made by Defendant the same day, and are attached to this motion as Exhibit "E" and incorporated by reference herein.

12. On the morning of May 29, 2018, Plaintiff received the electronic mail communication from Defendant, using his "Dean Anderson" pseudonym, attached hereto as Exhibit "F".

13. Plaintiff has made multiple efforts to confer with Mr. Dorrell, counsel for Defendant, to control his client's behavior. Prior to the communications with Mr. McInnes, Plaintiff warned Mr. Dorrell on multiple occasions that further communications by Defendant with Plaintiff's clients would not be tolerated. Mr. Dorrell is unable to control his client and this lawsuit has clearly not sent the appropriate message to Defendant that his stalking of Plaintiff will not be tolerated.

14. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff seeks to enjoin and restrain Defendant, his agents, and his representative from continuing to harass him during the pendency of this lawsuit. Defendant's arguments thus far have been that he has a First Amendment right to harass Plaintiff as much as he wants. This is nonsense. Defendant is a felon, a vexatious litigant, and is obviously a sociopath. He is represented by counsel that, during the short time he has represented Defendant, has proven woefully unable or unwilling to control his client.

15.   Plaintiff attaches as Exhibit "G" his own affidavit in support of this motion.  Plaintiff

would further note that the evidence attached to this motion constitutes additional

circumstantial evidence of Defendant's ownership the "BV Files" blog, which should

be also considered by this Court in rejecting Defendant's motion to dismiss under the

TCPA (and awarding attorney fees to Plaintiff for defending against the same).

## II. ARGUMENT

16.   Plaintiff seeks to enjoin Defendant, together with his agents, representatives, and all

other persons associated with Defendant, from the following activities:

     (a)     From having any contact, of any nature, type, or description, through any

           type of communications medium, with Plaintiff.  Defendant should not be

           permitted to contact Plaintiff, his co-workers, or his office staff, either at

           home or at work, for any reason except that which may be expressly

           permitted by the orders of this Court, any other court, or the applicable

           rules of practice or procedure;

     (b)     From having any contact, of any nature, type, or description, through any

           type of communications medium, with any member of Plaintiff's family

           including, but not limited to, Plaintiff's mother and father;

     (c)     From having any contact concerning Plaintiff, of any nature, type, or

           description, through any type of communications medium, with any

           person or entity that is an employer of Plaintiff, an employer of any

           member of Plaintiff's family, or with whom Plaintiff, or any business in

           which Plaintiff has an interest, has an independent contractor relationship;

(d)     From having any contact concerning Plaintiff, of any nature, type, or description, with any person or entity with whom Plaintiff has an attorney-client relationship.  Defendant should further be enjoined and restrained from contacting the relatives and employers of any of Plaintiff's clients;

(e)     From having any contact concerning Plaintiff with any judicial officer in any case where Plaintiff is acting as an attorney and representing a client, except for communications and court filings permitted by the rules of civil procedure, rules of criminal procedure, rules of appellate procedure, or duly promulgated local rules of practice; and

(f)     From having any contact concerning Plaintiff with any opposing attorney in any case where Plaintiff is acting as an attorney and representing a client, except in cases where Defendant is also a party;

Plaintiff *does not* seek an order prohibiting Defendant from participating in disciplinary proceedings against Plaintiff and would pray that, if this Court grants Plaintiff's injunction, that this Court expressly permit Defendant's participation in those proceedings.  Such language is necessary to prevent Defendant from further lying to disciplinary authorities that Plaintiff is using this lawsuit to prevent his participation in those proceedings.

17.     There is a substantial likelihood that Plaintiff will prevail on the merits of his case against the Defendant.  This court clearly has personal jurisdiction over Defendant.  The allegations contained in Defendant's Motion to Dismiss under the Texas Citizens Participation Act are patently absurd.  The TCPA utilizes an evidentiary standard that is completely foreign to federal courts and procedures that directly conflict with Fed. R.

Civ. P. 12(d).  Accordingly, it is not applicable in federal court.  Even if it were applicable in federal court, the statements for which Defendant is being sued are not matters of public concern and Plaintiff is able to make a *prima facie* case against Defendant on all three of his claims.

18.   Plaintiff again stresses that he is not now, nor has he even, been suing Defendant for statements he made concerning Plaintiff to the State Bar of Texas or to Judge Jonathan Bailey of the 431st District Court in and for Denton County, Texas.  The bulk of Plaintiff's claim stems from communications between Defendant and Plaintiff's former supervisor, Robert Karlseng, in which Defendant caused the termination of Plaintiff's employment with KLR through lies, threats, and extortion.  The remainder of those claims stem from posts made by Defendant and/or those acting in concert with him on his "BV Files" blog.  None of the conduct complained of in this suit is legally privileged and none of it is protected by the First Amendment.

19.   If the Court does not grant a preliminary injunction, Plaintiff will suffer imminent and irreparable harm because Plaintiff will continue his tortious conduct against Plaintiff. Defendant has admitted to causing Plaintiff to lose his job with the Victoria County District Attorney. ECF 22-1. There is substantial evidence before this Court that he did the same thing with KLR.  *See generally* ECF 40.

20.   Plaintiff has no adequate remedy at law. Defendant has made it clear by his words and conduct that he has no intention of leaving Plaintiff alone and allowing him to practice his trade. Defendant himself has stated that he will not stop harassing Plaintiff unless he surrenders his license to practice law or is disbarred. This arrangement is not acceptable to Plaintiff.  Plaintiff's efforts to confer with Defendant's counsel with respect to this

ongoing problem have failed. This is a case where the parties profoundly hate each other and where there is no reasonable likelihood of settlement through alternative dispute resolution

21.   Defendant will not suffer any undue hardship or loss by the issuance of a preliminary injunction. Plaintiff is asking only that this Court compel Defendant to so certain things that ordinary people who *aren't* sociopaths do without being ordered: (1) stop harassing Plaintiff and his family; (2) stop trying to get Plaintiff fired from his job; (3) stop contacting Plaintiff's clients and trying to get them to fire him; and (4) stop sticking his nose into legal matters where he is not a party and in which he has no legitimate interest.

22.   The issuance of a preliminary injunction would not adversely affect the public interest. The Defendant has no First Amendment right to harass Plaintiff or members of his family. He has no First Amendment right to tortuously interfere with the contracts or prospective relations of Plaintiff relating to his practice of law (including employment agreements, independent contractor relationships, and contracts creating an attorney-client relationship). He certainly has no First Amendment right to send ex parte communications to judges in courts where Plaintiff is trying a case, or opposing counsel in those cases, for the purpose of harming Plaintiff's professional reputation or manipulate results in those cases. In short, **Defendant has absolutely no constitutional right to stop Plaintiff from practicing law or continuing to tortiously interfere with his law practice.**

23.   Plaintiff is willing to post bond in an amount the Court deems appropriate.  As Plaintiff remains unemployed due to Defendant's conduct, and Plaintiff is only asking that the

Court order Defendant to leave him alone, Plaintiff asks that bond be set no higher than $100.00.

24.   Plaintiff asks the Court to set this request for preliminary injunction for hearing at the earliest possible time. Plaintiff further requests that a telephonic appearance for the hearing on this preliminary injunction be denied and that Defendant and his counsel be ordered to appear in person.

### III.   CONCLUSION

25.   Plaintiff's lawsuit has failed to deter Defendant from continuing to commit tortious acts against Plaintiff. Defendant's counsel has proven unable or unwilling to control Defendant's behavior. Plaintiff and his family do not wish to be further harassed by Defendant. Furthermore, Plaintiff has a right to practice his trade unimpeded by Defendant's continued defamatory statements, by extortion, or by threats of reprisal against his clients. The bond amount should be nominal because Plaintiff is only asking this Court to order Defendant to do certain things that normal people - who aren't crazy - do without being asked.

### IV.   PRAYER

26.   Plaintiff prays that this Honorable Court enter an order granting a preliminary injunction in this case and prohibiting Defendant from the conduct set forth in paragraph sixteen of this motion.

Respectfully submitted,

/s/ Jason Lee Van Dyke
Jason L. Van Dyke
State Bar No. 24057426
108 Durango Drive
Crossroads, TX 76227
P – (469) 964-5346
F – (972) 421-1830
Email:  jason@vandykelawfirm.com

## CERTIFICATE OF CONFERENCE

I certify that, on multiple occasions prior to 5-29-2018, I e-mailed Jeffrey Dorrell to advise that I would be filing the foregoing motion asking the Court to enter a preliminary injunction against Thomas Christopher Retzlaff.  Mr. Dorrell informed me that he was opposed to the motion.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed on the CM/ECF System, which will automatically serve a Notice of Electronic Filing on Jeffrey Dorrell, Attorney for Defendant.

/s/ Jason Lee Van Dyke
JASON LEE VAN DYKE

# EXHIBIT "A"

## Jason Van Dyke

| | |
|---|---|
| **From:** | Pawl Bazile <pawlbazile@gmail.com> |
| **Sent:** | Friday, May 25, 2018 8:47 PM |
| **To:** | Jason Van Dyke |
| **Subject:** | Fwd: Defamatory article |

Sent from my iPhone

Begin forwarded message:

> **From:** Tom Retzlaff <retzlaff@texas.net>
> **Date:** May 25, 2018 at 4:09:05 AM EDT
> **To:** pawl@officialproudboys.com
> **Subject: Defamatory article**

Dear Sir,

Earlier today (May 24) you posted a news article about me (https://www.dangerous.com/44134/leftwing-stalkers-cost-two-jobs-heres-im-fighting-back) in which you falsely label me as being "left wing."

**I find that characterization to be extremely defamatory and it is totally false and I request that you make a retraction and a correction, as provided by the Defamation Mitigation Act.** The fact that in an April 20 article with The Daily Beast Van Dyke claims that I am a KKK member should tell you right there that the guy is totally lying to you people. (I am not a KKK member, but Van Dyke has claimed that I am.)

I have been a life-long member of the Republican Party since Ronald Reagan. I was an original supporter for Donald Trump and even received tickets to the Inauguration. I have been to 12 of Pres. Trump's rallies all over the SW, and am a frequent guest at the Trump Hotels having been a Trump Card holder for many years.

Calling me "liberal" or "left wing" is a total lie.

My complaint to the State Bar has absolutely NOTHING to do with politics, but everything to do with someone wanting to be a DA who is absolutely unqualified for the job and it has to do with someone being a lawyer that should not be one. If you think this is just over one or two (or even a dozen) angry tweets using the N word, you are sorely mistaken.

Since the filing of this lawsuit, Van Dyke has sent me several emails threatening to murder me and my family, and even called up my attorney (Jeff Dorrell in Houston) saying that he was going to come to Arizona and murder me.

1

I am a former federal and state law enforcement officer.  My son is a current law enforcement officer.  In this day and age, threats of violence cannot go unchallenged.  I see hand cuffs in the future for Van Dyke.

As you know from personal experience, Van Dyke has a history of being involved with violence.

By the way, I think Van Dyke failed to tell you what the biggest news story about this matter is:  Later this summer myself and Mr. Dorrell will be going to New York City with a federal subpoena to take the videotaped deposition of Gavin McInnes and his wife Emily.  Mr. McInnes has just recently been notified of this, I believe, and we will be coordinating with his attorney on a date and time to do this.

This is not the first SLAPP lawsuit that Van Dyke has filed.  But, unfortunately for him, he has come up against a person who simply cannot be intimidated and who has extremely deep pockets.

Please make the correction and issue a retraction forthwith.


v/r


Thomas Retzlaff

# EXHIBIT "B"

## Jason Van Dyke

| | |
|---|---|
| **From:** | Pawl Bazile <pawlbazile@gmail.com> |
| **Sent:** | Saturday, May 26, 2018 11:13 PM |
| **To:** | Jason Van Dyke |
| **Subject:** | Fwd: Defamatory Article |
| **Attachments:** | Van Dyke settlement letter.pdf; Letter to McInnes - 5-22-2018.pdf; D's Notice of withdraw of settlement offer & attachments - 5-9-2018.pdf |

Another one

Sent from my iPhone

Begin forwarded message:

> **From:** Tom Retzlaff <retzlaff@texas.net>
> **Date:** May 26, 2018 at 11:28:36 PM EDT
> **To:** "pawl@officialproudboys.com" <pawl@officialproudboys.com>
> **Subject: Defamatory Article**
>
> Dear Mr. Basile,
>
> At some point I suppose that I will get curious about how your article about Van Dyke appeared on a website ostensibly owned by Milo Hanrahan of Milo Worldworld, LLC - an entity which the Secretary of State's office lists as being 'in default' status and, legally, nonoperational, and what the connection is between that non-U.S. citizen here on an O-1 visa and your so-called *Proud Boys* organization. But I doubt it will ever be relevant to anything that I care about, right? (At least that should be your hope.)
>
> In any event, I am checking to see if you have issued a retraction and an apology for defaming me by calling me a liberal and left-wing. Did I mention to you that I was a member of the Republican party before you were even born in January 1984?
>
> Also, if you want something to write about, attached are some court documents for you "Proud Boys" to chew over this weekend. No doubt Van Dyke is crying like a bitch over the upcoming depositions of McInnes and his wife. Tough shit. There is not a damn thing he can do about. I have an absolute right to travel to NY City with a federal subpoena and conduct depositions of persons with knowledge of relevant facts. he can piss and moan all he wants to, but there is not a damn thing he can do about it. And once that video deposition gets posted on the YouTubes, you don't think the liberal media won't be tearing y'all up into pieces?
>
> Van Dyke can huff & puff all he wants, but you and your "Proud Boys" made a terrible mistake by allowing him into your group. The fact that he is claiming to be McInnes' lawyer now is a total joke! Is Van Dyke even licensed to practice law in New York state? No, he is not! (Thus, yet another State Bar grievance is born.)
>
> I meant what I said about your defaming me, Mr. Basile. And if you think I won't use that as an excuse to drag you and the rest of your "Proud Boys" into federal

1

court and embarrass the fuck out of your group, you clearly don't know me and have not been paying attention.  For the average human, nothing scares them more than legal issues. **I.  Do.  Not.  Care.**  My whole adult life has been spent in litigation.  I am not afraid of high-stakes legal stuff...I'am just going to start swinging and knock people's heads off.  Seriously.

Van Dyke is a public-figure and, at one time, was going to be an assistant district attorney in a state that has the highest use of the death penalty in the nation.  Is it really so unreasonable for black people (or any kind of "people" for that matter!) to be concerned about this guy being a prosecutor?  Someone who, when "provoked" resorts to racist language and death threats?  If you were a defendant who this guy was prosecuting, would you feel confident that race wasn't a factor?  And if you were a black victim and he was prosecuting the white offender, would you feel confident of a fair trial, based upon Van Dyke's demonstrable history of racism and inability to control himself?

Get fucking real, dude!

McInnes and his wife Emily are persons with knowledge of relevant facts.  If Van Dyke thinks he can get a judge to stop me, good luck with that.  His threats of getting an injunction are a total joke.  But then again, Jason L. Van Dyke, Esq. is a total joke.  "Mean Texas Attorney"?  More like "Punk-ass bitch!"

v/r

Thomas Retzlaff

# EXHIBIT "C"

Gavin McInnes
88 Park Ave.
Larchmont, NY 10538-4224                                    May 22, 2018


Re:    Jason L. Van Dyke vs Thomas Retzlaff
       Case No. 4:18-CV-247-ALM
       U.S. District Court – Eastern District of Texas


Dear Mr. McInnes,

No doubt you have read all of the media reports about the $100

million defamation lawsuit your running buddy, Jason Van Dyke, recently

filed against me here in Texas.

No doubt you have heard all the crying from Van Dyke once he

realized that he came across a man who simply cannot be intimidated and

who has far deeper pockets that he ever imagined.

Also, no doubt, you have heard him despair of the fact that he cannot

portray this lawsuit as some kind of "conservative vs. liberal" nonsense

because, the truth is, I basically agree with nearly everything you seem to

talk about politically.  And, honestly, I actually think you are a bit too liberal

on many of your views.  (seriously)

Be that as it may, I am now forced to deal with Van Dyke.  Which

means that I am forced to deal with you and your *Proud Boys* organization.

I am a former federal and state law enforcement officer.  I am also a former state prisoner having spent six years in Texas prison for illegal weapons possession (something the state legislature recently decided to no longer make a crime!).  Thus, I have experience from both sides of the criminal justice fence, so to speak.  Which is why I have a serious problem with guys like Van Dyke trying to get jobs as an assistant district attorney in a county next to mine near San Antonio.  Fascist, racist beliefs have absolutely no business being involved in the criminal justice system whatsoever.

You and your wife, Emily, are persons with knowledge of relevant facts.  Which is why later this summer myself and my attorney will be coming to New York City with a federal subpoena to take your videotaped depositions for use in this federal lawsuit in Texas and why I will be digging into your lives and into your *Proud Boys* organization and membership.  I see that a lot of people are suing you guys regarding violent and racist attacks all across the country.

I also have read media reports about how your critics often times find themselves verbally or physically threatened, their homes and families stalked, and all kinds of other bullshit.

As you know, Van Dyke recently filed an identical defamation lawsuit

against *The Mocking Bird* newspaper and one of its reporters in federal

court.  When the attorney for the news organization showed up to fight the

lawsuit, Van Dyke folded like a cheap suit, saying in an email:

> My supervisor has instructed me to confer with you concerning a stipulation of dismissal
> with prejudice for the Mockingbird case and to sign one if you are willing to agree to it.
>
> Since I have learned that your office has a propensity to release my e-mails to the press
> and post them on Twitter, I am sending this message with the following caveat:  This
> letter does not, and is not intended, to constitute my view on the strength of my case
> against Mockingbird and Mr. Bello.  It is my personal belief that your client is an
> absolutely contemptible piece of human filth, and I would personally like nothing more
> than to prosecute this case to its conclusion.  This letter is nothing more, and is not
> intended to be anything more, than compliance with an order from my immediate
> supervisor at the company where I am employed.

My *spidey sense* is telling me that this "supervisor" is you, Mr. McInnes,

and I fully intend to grill both you and your wife like a couple of

cheeseburgers until I get the answers that I want.  I spent many years of

honorable law enforcement service interrogating homicide suspects, white

collar criminals, to traitors spilling our nation's secrets to the highest

bidders.

Van Dyke is your guy, which means that he is your problem, Mr.

McInnes.  You gave him a leadership position within your *Proud Boys*

organization and I know that Van Dyke represents you in a legal capacity,

too, such as in the recent Trademark application process with the U.S.

3

Government and with regards to the dispute with the Oakland Raiders over your misappropriation of their logo on some stupid T-shirt you clowns were peddling.

Should Van Dyke or any of your *Proud Boys* engage in their typical harassment activities, I will be holding both you and Emily personally responsible.

Respectfully submitted,

Thomas Retzlaff
2402 E. Esplanade Ln.
PO Box 46424
Phoenix, AZ 85063-6424

email: Retzlaff@texas.net
Ph# (210) 317-9800

p.s.

I have been a HUGE fan of Anthony Cumia for many, many years
and I enjoyed listening to your show on his Compound Media network.
When he and Opie got fired, I immediately canceled my XM subscription.
Also, Mark Levin is a good guy and I hope nothing that happens here with
this Van Dyke stuff blows back onto him and his people. Lawsuits are
messy, unpredictable things, as you know.

4

# EXHIBIT "D"

ABOUT    ABUSE REPORTS    CONTACT US    LEGAL DISCLAIMER

## *BV Files* ~ *James McGibney is a complete fraud, and here is why…*



**Bullyville**
@BullyVille

 **Blocked**

# I don't get nearly enough credit for managing not to be a violent psychopath.

 Reply     Retweet     Favorite     More

**1,538**
RETWEETS

**148**
FAVORITES

      

11:07 AM - 22 Jul 2013

*28 Monday May 2018*

### San Jose Revenge Porno Perv James McGibney GUILTY Of Stolen Valor Fraud!!

POSTED BY BV FILES IN UNCATEGORIZED                    ≈ 2 COMMENTS

Tweet

*Tags*

*88 Park Ave Larchmont NY 10538, Emily Jendrisak, Gavin McInnes, James McGibney Bullyville, James McGibney Rosendin Electric, Rosendin Electric sexual harassment, Stolen Valor, The Proud Boys, Tom Sorley Rosendin Electric, Tom Sorley sexual harassment*



**San Jose, California based employee of Rosendin Electric, Revenge pornographer, ACCUSED PEDOPHILE, and serial sexual blackmail artist James McGibney, CEO/Founder of ViaView, Inc. and its websites Bullyville.com and Cheaterville.com, is GUILTY of**



Proud Boys leader Gavin McInnes and his wife have just been notified that they will be forced to appear at a videotaped deposition that will be taking place this summer in New York City. This notice was hand delivered to McInnes' home. **CHECK IT OUT!!**

Gavin McInnes
88 Park Ave.
Larchmont, NY 10538-4224                    May 22, 2018

Re:   Jason L. Van Dyke vs Thomas Retzlaff
      Case No. 4:18-CV-247-ALM
      U.S. District Court – Eastern District of Texas

Dear Mr. McInnes,

        No doubt you have read all of the media reports about the $100 million defamation lawsuit your running buddy, Jason Van Dyke, recently filed against me here in Texas.

        No doubt you have heard all the crying from Van Dyke once he realized that he came across a man who simply cannot be intimidated and who has far deeper pockets that he ever imagined.

        Also, no doubt, you have heard him despair of the fact that he cannot portray this lawsuit as some kind of "conservative vs. liberal" nonsense because, the truth is, I basically agree with nearly everything you seem to talk about politically. And, honestly, I actually think you are a bit too liberal on many of your views. (seriously)

        Be that as it may, I am now forced to deal with Van Dyke. Which means that I am forced to deal with you and your *Proud Boys* organization.

                                                                          1

I am a former federal and state law enforcement officer. I am also a former state prisoner having spent six years in Texas prison for illegal weapons possession (something the state legislature recently decided to no longer make a crime!). Thus, I have experience from both sides of the criminal justice fence, so to speak. Which is why I have a serious problem with guys like Van Dyke trying to get jobs as an assistant district attorney in a county next to mine near San Antonio. Fascist, racist beliefs have absolutely no business being involved in the criminal justice system whatsoever.

You and your wife, Emily, are persons with knowledge of relevant facts. Which is why later this summer myself and my attorney will be coming to New York City with a federal subpoena to take your videotaped depositions for use in this federal lawsuit in Texas and why I will be digging into your lives and into your *Proud Boys* organization and membership. I see that a lot of people are suing you guys regarding violent and racist attacks all across the country.

I also have read media reports about how your critics often times find themselves verbally or physically threatened, their homes and families stalked, and all kinds of other bullshit.

2

As you know, Van Dyke recently filed an identical defamation lawsuit
against *The Mocking Bird* newspaper and one of its reporters in federal
court. When the attorney for the news organization showed up to fight the
lawsuit, Van Dyke folded like a cheap suit, saying in an email:

My supervisor has instructed me to confer with you concerning a stipulation of dismissal
with prejudice for the Mockingbird case and to sign one if you are willing to agree to it.

Since I have learned that your office has a propensity to release my e-mails to the press
and post them on Twitter, I am sending this message with the following caveat. This
letter does not, and is not intended, to constitute my view on the strength of my case
against Mockingbird and Mr. Bella. It is my personal belief that your client is an
absolutely contemptible piece of human filth, and I would personally like nothing more
than to prosecute this case to its conclusion. This letter is nothing more, and is not
intended to be anything more, than compliance with an order from my immediate
supervisor at the company where I am employed.

My *spidey sense* is telling me that this "supervisor" is you, Mr. McInnes,
and I fully intend to grill both you and your wife like a couple of
cheeseburgers until I get the answers that I want. I spent many years of
honorable law enforcement service interrogating homicide suspects, white
collar criminals, to traitors spilling our nation's secrets to the highest
bidders.

Van Dyke is your guy, which means that he is your problem, Mr.
McInnes. You gave him a leadership position within your *Proud Boys*
organization and I know that Van Dyke represents you in a legal capacity,
too, such as in the recent Trademark application process with the U.S.

3

Government and with regards to the dispute with the Oakland Raiders over your misappropriation of their logo on some stupid T-shirt you clowns were peddling.

Should Van Dyke or any of your *Proud Boys* engage in their typical harassment activities, I will be holding both you and Emily personally responsible.

Respectfully submitted,

Tom

Thomas Retzlaff
2402 E. Esplanade Ln.
PO Box 46424
Phoenix, AZ 85063-6424

email: Retzlaff@texas.net
Ph# (210) 317-9800


p.s.

I have been a HUGE fan of Anthony Cumia for many, many years and I enjoyed listening to your show on his Compound Media network. When he and Opie got fired, I immediately canceled my XM subscription. Also, Mark Levin is a good guy and I hope nothing that happens here with this Van Dyke stuff blows back onto him and his people. Lawsuits are messy, unpredictable things, as you know.

4

According to sources close to the investigation (which consist solely of the voices in our heads), Nazi attorney Jason Lee Van Dyke had this to say in response to the deposition notice:

> *"I received a telephone from a client of mine in New York, Gavin McInnes, stating that he has received some sort of notification that either you or Mr. Retzlaff intend to take his deposition in this case (as well as that of his wife). I wanted to give you an opportunity to respond to this so that I may determine whether I will have to seek a protective order from the Court. The testimony of Mr. McInnes is clearly not relevant to any of the issues in this case. Furthermore, all or substantially all of the communications between Mr. McInnes and myself are protected under the attorney-client privilege – and therefore – are not subject to discovery.*
>
> *While I am trying to act in a civilized manner, this is the second time in a week that I have had to warn you about your client's behavior, and specifically, his obsession with contacting or otherwise harassing my clients. I believe there was no uncertainty in the past when I expressed to you that this would not be tolerated under any circumstances.*

The top has a date stamp and case caption overlaid.

*I warned you that there would be consequences, and now, there will be consequences as follows:*

*This correspondence constitutes my first attempt to conference with you concerning the entry of a preliminary injunction against your client to prohibit him from contacting me, from contacting my family, from contacting any person who is my employer, and from contacting any person with whom I have any sort of independent contractor relationship including, but not limited to, an attorney-client relationship.*

*I need to hear from you or otherwise have this ongoing problem resolved before the scheduling conference. Otherwise, I will be filing for the injunctive relief. "*

 

**Jason Van Douche**
@WeakTxLawyer

Follow

The only way I can win a case is if the defendant is too busy laughing at my retardation to file a response :'(

12:09 PM - 22 Sep 2014

When reached by telephone this morning for comment, your *American Hero* had this to say:

*"He seems to think I would be quaking in my boots that he might apply for an injunction. "Warning" me. Ridiculous. What a tragic, flaccid clown. "*

— Thomas Retzlaff



**AND ONE MORE BEFORE WE GET TIRED...**





— Gavin Mcinnes and wife Emily Jendrisak

**FUN FACT:** Gavin Mcinnes is married to Emily Jendrisak who is a former Manhattan-based publicist and consultant, now a stay-at-home mom. She is a member of the Ho-Chunk tribe of the Native Americans and they have three children.

McInnes is a Nazi and he likes to send members of his group out to peoples' homes to harassment them and their family members. **CHECK IT OUT!!**

*POLITICS*  05/25/2018 03:00 pm ET

# A Member Of The Far-Right Proud Boys Menaced A Twitter User On His Doorstep

A videographer made fun of the far-right extremist group online, so they showed up at his house.

 By Andy Campbell

— https://www.huffingtonpost.com/entry/far-right-proud-boys-menaced-twitter-user-on-his-doorstep_us_5b06de68e4b07c4ea1060e92



Gavin Mcinnes Leak

[●] vzw@guerrillamail.com                                    Wed, May 9  12:04 PM (13 days ago)

to me ▾

I am leaking this from 2 secret proud boy groups. Gavin just posted this. This is in reference to your video on twitter showing him to be racist.

"These videographer stalkers are making us look like bitches. First, EVERYONE should report this Twitter post for hate speech and have your members do the same. At the very least, we can probably get it taken down and maybe get his verified profile deleted. They want Gavin McInnes fired? They want to attack our group?

LET'S SHOW THEM THERE ARE CONSEQUENCES!!!
THESE FUCKS ARE WAY TOO COMFORTABLE!!!
IF WE DO NOTHING, WE SEND A MESSAGE THAT IT'S OPEN SEASON ON PROUD BOYS!!! IT'S NOT!!!

Let's get the social media profiles, phone numbers and addresses for their bosses, mothers, fathers, brothers, sisters, boyfriends, friends and get to work.
- Hooker ads for his mother all over the internet
- Craigslist ads for orgies, yard sales . . .
- Thousands of dollars of food should be delivered to their houses

IM NOT SAYING ANYONE SHOULD GO STAB ANYONE. BE SMART! POST ANY IDEAS OR INFO YOU HAVE IN THE COMMENTS. POYB"


----
Sent using GuerrillaMail.com
Block or report abuse: https://www.guerrillamail.com/abuse/?a=V0638wg3RlEHaAeb6XcTPl8tQA%3D%3D

"These videographer stalkers are making us
look like bitches. First, EVERYONE should
report this Twitter post for hate speech and
have your members do the same. At the
very least, we can probably get it taken
down and maybe get his verified profile
deleted. They want Gavin McInnes fired?
They want to attack our group?

LET'S SHOW THEM THERE ARE
CONSEQUENCES!!!
THESE FUCKS ARE WAY TOO
COMFORTABLE!!!
IF WE DO NOTHING, WE SEND A MESSAGE
THAT IT'S OPEN SEASON ON PROUD
BOYS!!! IT'S NOT!!!

Let's get the social media profiles, phone
numbers and addresses for their bosses,
mothers, fathers, brothers, sisters,
boyfriends, friends and get to work.
- Hooker ads for his mother all over the
internet
- Craigslist ads for orgies, yard sales...
- Thousands of dollars of food should be
delivered to their houses

IM NOT SAYING ANYONE SHOULD GO
STAB ANYONE. BE SMART! POST ANY
IDEAS OR INFO YOU HAVE IN THE
COMMENTS. POYB"




**Vic Berger IV**
@VicBergerIV

The end of the Proud Boys. @Gavin_McInnes
@ProudBoysUSA @CRTV
3:49 PM - May 2, 2018

967    314 people are talking about this

Of course, if anyone wants to deliver the same treatment to Gavin, his wife EMily, and their three
children, that poor Mr. Vic Berger suffered, we here at the BV Files are only too happy to provide
you, our teeming **MILLIONS** of readers, listeners, and supporters, with the home address for the
McInnes family!

Antifa members are especially encouraged to show up as milk & cookies are always available.



**88 Park Ave,**
Larchmont, NY 10538
5 beds · 4.5 baths · 4,694 sqft

SOLD: $2,684,000
Sold on 04/13/16
Zestimate:
$3,072,062

**Home Shoppers are
Waiting**

Ask an agent about market
conditions in your
neighborhood.



88 Park Ave, Larchmont, NY 10538



— The three McInnes kids

**Funny....**



**Jason Pugh**
@TheJasonPugh

Follow

Replying to

"The man who showed up on Berger's doorstep appears to be Kenneth Lizardo, 54, a self-proclaimed Proud Boy who lives in Massachusetts."

54? Wow. He may claim he's a #ProudBoy but he's really just a sad "man".

6:51 PM · 26 May 2018 from

**THE NAZI LAWSUIT STARRING JASON VAN DYKE....**



**Texas Lawyer**
@TexasLawyer

Follow

A Denton attorney is seeking $100M from a critic who filed a grievance against him with the State Bar of Texas and allegedly got him fired from a Plano law firm after accusing the lawyer of being a "Nazi" and a "white supremacist" in internet postings. ow.ly /Hrhw30jha9r

1:03 PM · 2 Apr 2018

12 Retweets 35 Likes

♡ 13     ⟲ 12     ♡ 35

**Want to see who is on Team Retzlaff?**

**4:18-cv-00247-ALM** Van Dyke v. Retzlaff
Amos L. Mazzant, III, presiding
Date filed: 04/10/2018
Date of last filing: 05/23/2018

## Attorneys

**Jeffrey L. Dorrell**
Hanszen Laporte LLP
14201 Memorial Drive
Houston, TX 77079
713-522-9444
713-524-2580 (fax)
jdorrell@hanszenlaporte.com
*Assigned: 05/09/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

representing

**Thomas Christopher Retzlaff**
2402 E. Esplanade Ln.
P.O. Box 46424
Phoenix, AZ 85063-4624
210-317-9800
Retzlaff@texas.net
*(Defendant)*

**Kent M Hanszen**
Hanszen Laporte
4309 Yoakum Blvd
Houston, TX 77006
713-522-9444
1713524.2580 (fax)
khanszen@hanszenlaporte.com
*Assigned: 05/21/2018*
*ATTORNEY TO BE NOTICED*

representing

**Thomas Christopher Retzlaff**
2402 E. Esplanade Ln.
P.O. Box 46424
Phoenix, AZ 85063-4624
210-317-9800
Retzlaff@texas.net
*(Defendant)*

**Anthony Laurent Laporte**
Hanszen Laporte
4309 Yoakum Blvd
Houston, TX 77006
713-522-9444
alaporte@hanszenlaporte.com
*Assigned: 05/21/2018*
*ATTORNEY TO BE NOTICED*

representing

**Thomas Christopher Retzlaff**
2402 E. Esplanade Ln.
P.O. Box 46424
Phoenix, AZ 85063-4624
210-317-9800
Retzlaff@texas.net
*(Defendant)*

**Jason Lee VanDyke**
The Van Dyke Law Firm PLLC
16901 Dallas Parkway
Suite 250
Addison, TX 75001
972-372-0200

representing

**Jason Lee Van Dyke**
108 Durango Dr.
Aubrey, TX 76227
469-964-5346
*(Plaintiff)*

1 of 2

25-May-18, 11:34 AM

972-248-3212 (fax)
jason@vandykelawfirm.com
*Assigned: 04/11/2018*
*ATTORNEY TO BE NOTICED*

**William Carlton Wilson**
Hanszen Laporte LLP
14201 Memorial Drive
Houston, TX 77079
832-399-3383                    representing
713-524-2380 (fax)
cwilson@hanszenlaporte.com
*Assigned: 05/21/2018*
*ATTORNEY TO BE NOTICED*

**Thomas Christopher Retzlaff**
2402 E. Esplanade Ln.
P.O. Box 46424
Phoenix, AZ 85063-4624
210-317-9800
Retzlaff@rtexas.net
*(Defendant)*

2 of 2                                                    25-May-18, 11:34 AM

By the way, in case Jason Van Dyke and any of his "Proud Boys" are interested in paying Retzlaff a little visit for harassment purposes, the dude is pretty easy to find. Which is surprising because members of the McGibney Gang have been claiming for over FOUR YEARS that all kinds of super secret FBI / AFT / and Grand Juries have been looking for our *American Hero & Honorary Admin of the BV Files* Thomas Retzlaff.



— Where TR lives in Phoenix



# ESPLANADE PLACE
## 2402 E. ESPLANADE LN, PHOENIX, AZ 85016

### ABOUT ESPLANADE PLACE

Esplanade Place is an ultra-luxurious condominium community in the heart of the Biltmore District, within the Esplanade. Built at the turn of the 21st-century, this community was a model for developers to follow at that time. Located just off the corner of 24th Street and Camelback, a highly desired location for urban living in Phoenix, Esplanade Place grants residents an easy walk to a wide array of shops and restaurants nearby. Residents of the building can also enjoy exclusive access to an unparalleled rooftop pool and spa, barbecue grills and lounge area.

Esplanade Place is a 12-story, 56-unit community developed by the Pivotal Group and former home builder Geoffrey Edmunds who sold his luxury home building business to Toll Brothers back in 1995. Esplanade Place, at the time it was constructed, was the first luxury condo project built in the Valley since the 18-story, 59-unit Crystal Point project was built in 1990.



**Security is pretty heavy here, so watch out!**



— This image comes entirely from the Bullyville.com website – so take it with a heavy grain of salt



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT "E"

## Jason Van Dyke

| | |
|---|---|
| **From:** | PawL BaZiLe <pawlbazile@gmail.com> |
| **Sent:** | Monday, May 28, 2018 3:56 PM |
| **To:** | Jason Van Dyke |
| **Subject:** | Fwd: |
| **Attachments:** | ECF 28 - D's Notice of Death Threats from Plaintiff.pdf |

---------- Forwarded message ----------
From: **Tom Retzlaff** <retzlaff@texas.net>
Date: Mon, May 28, 2018 at 5:04 AM
Subject:
To: "pawl@officialproudboys.com" <pawl@officialproudboys.com>

Dear Mr. Basile,

Would it surprise you to learn that Jason Van Dyke is a homosexual? He is 38 years old. Never been married, and has no kids. Or even a female girlfriend. But he does like to dress up as a bumble bee in his "Proud Boy" black and gold striped polo shirt - which is like totally gay, right?

So does anyone else get vibes that he's really, really, so far in the closet he's having adventures in Narnia?

Not that there is anything wrong with it, for sure. But Van Dyke did make a name for himself at Michigan State University speechifying against the homosexual agenda, referring to is as the "homosexual deathstyle" and accusing opponents of being intimately familiar with public toilets and cruising.

By the way, are you aware that I have obtained copies of the MSU Police Dept reports detailing Van Dyke's arrest for domestic violence, illegal weapons possession, and stalking incidents on campus involving a male "roommate" of his. Are you aware that when the police searched his college dorm room that they found the books The Turner Diaries and The Protocols of the Elders of Zion. How fucking un-American is that, eh? A so-called "Proud Boy" trafficking in Russian propaganda - lol!

I would like to request that you make an additional correction to your "article". As you know, Van Dyke cries like a bitch because he claims he and his "elderly" parents had received "death threats." Attached is a document that I filed with the federal court detailing a series of actual death threats that Van Dyke sent to me. Which was a horrible mistake. Did I tell you before that I used to be a federal and state law enforcement officer and that my son is a current law enforcement officer?

Would you be surprised to learn that there is an Arizona warrant out for Van Dyke's arrest?

One of the things that I plan on interrogating your buddy Gavin McInnes and his wife about is all of these death threats and harassment shit going on with your Proud Boys organization. See, e.g., https://www.huffingtonpost.com/entry/far-right-proud-boys-menaced-twitter-user-on-his-doorstep_us_5b06de68e4b07c4ea1060e92

Mr. Basile, I cannot emphasize enough just how bad of an idea it would be for one of you people to try something like this with me. I will shoot such a person dead and post the video about it on the YouTubes.

Van Dyke likes to claim that I am a liberal and a member of a left-wing group. Which is extremely surprising since most people I know have accused me of being a member of the Aryan Brotherhood and a "violent psychopath" responsible for "several unsolved homicides." Such a claim is, of course, highly defamatory. But it does show you what a liar Van Dyke is and how his claims shift according to which way the wind blows.

I think the best thing for all concerned would be for the Proud Boys to drop Van Dyke like a bad habit. Lawsuits are messy, unpredictable things and all sorts of collateral damage is likely to occur for you people before the dust finally settles.


v/r


Thomas Retzlaff

# EXHIBIT "F"

## Jason Van Dyke

**From:** Dean <dean714@yandex.com>
**Sent:** Tuesday, May 29, 2018 10:41 AM
**To:** Jason Van Dyke
**Subject:** All proud boys magazine staff have been dox'd

Hello fatso! I just saw your Sambo book reading this morning.  How entertaining it was.

I was wondering how you would react upon learning that the entire Proud Boys magazine staff - and their family members - have been totally doxed!  SSNs, drivers license #'s, credit scores, home addresses - the whole nine yards!

While not being an expert, it seems to me that this could only happen if someone had complete access to Lexisnexis Accurint for LEOs.  Which really sucks for you and your friends.  What could you all have been doing that would catch the attention of a law enforcement officer for in such a serious manner?  I hear through the grape vine that arrest warrants are being sought for you.  wow!  How funny with that be!!!

By the way, do you have any clients left?  One of the co-administrators on the BV Files blog just got off the phone with the parents of a kid from Allen, TX who you are (now were! (past tense)) repping on a dope charge.  I did not know that was still against the law!  You should come here to Southern California and you can smoke it up all you want to and it is perfectly legal!  Anyways, I do not think that family was very happy to hear from Admin Mike when he told them about you being a Nazi and white supremacist and such that the state bar was going after you.

No more clients for you - not anymore, not ever!!

Dean Anderson

1

# EXHIBIT "G"

STATE OF TEXAS          §
                                 §

COUNTY OF DENTON     §

## AFFIDAVIT OF JASON L. VAN DYKE

      Before me, the undersigned notary, on this day personally appeared Jason L. Van Dyke, a person whose identity is known to me.  After I administered an oath to him, upon his oath he stated:

1.       "My name is Jason L. Van Dyke. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.       I hold the degree of Bachelor of Arts, with a major in Politics, from the University of Dallas. I also hold the degree of Juris Doctor, as well as a Certificate of Concentration in Advocacy, from Stetson University College of Law. I am an attorney licensed to practice law in the State of Texas and have been so licensed since February 8, 2007. I am also licensed to practice law before a number of other jurisdictions outside the State of Texas.

3.       This lawsuit was initially filed after Defendant, Thomas Christopher Retzlaff, used his "Dean Anderson" pseudonym to cause my employment with Karlseng, LeBlanc, & Rich L.L.C. ("KLR") to be terminated.  Defendant's assertions that this lawsuit was filed in retaliation for a bar complaint are false. The state bar grievance referred to by Defendant had been pending since approximately December 20, 2017. Plaintiff was fired as a result of Defendant's tortious conduct on March 27, 2018. This lawsuit was filed in state court on March 28, 2018.

4.       On or around April 1, 2018, I learned that my social security number had been posted in the comments section of Defendant's BV Files blog. I have monitored the blog regularly since that time to obtain evidence of Defendant's ongoing tortious conduct and criminal activity so that appropriate preventative and defensive measures can be taken. Defendant named many of my clients in both the blog itself and the comments section. Some of these posts have contained the personal information of my clients. These clients include, but are not limited to, Claude Rich, Christine Scallin, Chris David Roberts, Jason McNiel Williams, Spencer Dyson, Jon Langbert, Michael Levy, and Gavin McInnes.

5.       I first learned that Defendant was continuing to reach out to his clients when, on or around April 24, 2018, I was terminated from representing Claude and Catia Rich in Cause No. DC-17-06085, styled *Claude Rich, et al. v. Big D Concrete, Inc., et. al.* pending in the 160th District Court in and for Dallas County, Texas. Mr. Rich confirmed to me that Defendant was continuing to contact him. He stressed that the termination had everything to do with Defendant's continued stalking behavior and nothing to do with my skill as an attorney.

6.     On May 3, 2018, I was present in the 367th District Court in and for Denton County, Texas for the purpose of a divorce prove-up in Cause No. 17-10442-431, styled *In The Matter of the Marriage of Jennifer Melisa Jaynes and Chris David Roberts*. After the prove-up I spoke with attorney Jared Julian, the opposing counsel in the case, who stated to me that he had been contacted by Defendant about both Plaintiff and Hon. Jonathan Bailey of the 431st District Court. I informed Mr. Julian that Defendant has been stalking me and further advised him not to correspond with Defendant in any way.

7.     Between May 4, 2018 and May 21, 2018, I received communications from other potential clients that they could not hire me because they had read about this case and were fearful that Defendant might take action against them. While seeking local counsel for a case in Michigan, attorneys in that state expressed similar hesitancy about working with me.

8.     I was interviewed by Pawl Bazile on or around May 22, 2018 concerning, among other things, how I have been stalked by Defendant over the past fourteen months. The interview was published on Dangerous.com on May 24, 2018.

9.     On May 25, 2018, Gavin Innes (my client) informed me that he had received from Mr. Bazile a copy of the correspondence which is attached as Exhibit "A" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support. I immediately notified Defendant's counsel that Defendant was again interfering with my clients and demanded that this interference stop immediately.

10.    On May 26, 2018, Mr. Bazile contacted me directly and forwarded him additional correspondence from Defendant, which is attached as Exhibit "B" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

11.    The correspondence reference in paragraph 10 above contained a letter apparently sent by Defendant to Mr. McInnes on or around May 22, 2018.  That letter is attached as Exhibit "C" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

12.    During the morning of May 28, 2018, I learned that Defendant published another post to his "BV Files" blog. The post contained a copy of the correspondence referenced in paragraph eleven above.  It contained portions of the electronic communications to Defendant's counsel referenced in paragraph nine above.  The post contained pictures of Mr. McInnes, his wife, and his children.  It contained an address allegedly associated with Mr. McInnes and a picture of their home.  It also contained the message "Antifa members are especially encouraged to show up as milk and cookies are always available."  The entire post is attached as Exhibit "D" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

13. During the afternoon of May 28, 2018, I learned that Defendant had sent a third communication to Mr. Bazile which, in addition to other false and defamatory material about me, continued to promise action against Mr. McInnes. It also suggested that the *Proud Boys*, a fraternity in which I am a member, would suffer "collateral damage" if it continued to associate with me. This letter is attached as Exhibit "E" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

14. On the morning of May 29, 2018, I received additional harassing correspondence from Defendant through his "Dean Anderson" pseudonym, which is attached as Exhibit "F" to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law In Support.

15. The frequency of Defendant's correspondence, as well as the nature of it, demonstrates to this Court precisely what I have been forced to endure at the hands of Defendant. He has intruded into as many possible areas of my private life as possible. He has already caused irreparable injury to my law practice and my legal career as a whole over the course of the past fourteen months. There is no doubt that Defendant will continue to behave in this manner during the pendency of this lawsuit unless he is compelled to stop.

16. My previous efforts to confer with Defendant's counsel for to negotiate an end to Defendant's tortious conduct – as well as to reach a resolution of this lawsuit under which Defendant will finally leave me alone – have failed in all respects. Defendant's counsel is unable to control his client. Defendant has very publicly stated that he will accept only my "unconditional surrender" and that it is his goal to put a permanent end to my legal career. Accordingly, this case is likely to continue for years and be the subject of multiple appeals by one or both parties. I have no remedy at law other than a preliminary injunction to protect myself and my law practice during the pendency of what is likely to be very lengthy litigation.

17. I am willing to post security for a temporary injunction as required by Rule 65(c) of the Federal Rules of Civil Procedure. However, I remain unemployed as a result of Defendant's tortious conduct against me and can only afford to post nominal bond.

JASON LEE VAN DYKE
Affiant

SWORN AND SUBSCIBED TO before me, the undersigned authority, on May 29, 2018.

MARISA PETROVIC
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 1-23-2019

Notary Public
State of Texas

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JASON LEE VAN DYKE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. 4:18cv247 |
| | § | |
| THOMAS CHRISTOPHER RETZLAFF | § | |
| a/k/a Dean Anderson d/b/a BV Files, Via | § | |
| View Files L.L.C., and ViaView Files | § | |
| Defendant | § | |

## PRELIMINARY INJUNCTION

After considering Plaintiff's Application for Preliminary Injunction, this Court finds that Defendant has admitted to interfering with Plaintiff's full time employment with the Victoria County District Attorney in March of 2017. This Court also finds that there is substantial evidence before this Court demonstrating that Defendant interfered with Plaintiff's employment with Karlseng, LeBlanc & Rich L.L.C. ("KLR") in March of 2018. Furthermore, the evidence before the Court demonstrates that Defendant has continued to interfere with Plaintiff's employment through inappropriate communications directed toward persons with whom Plaintiff has an attorney-client relationship, with judges in courts where Plaintiff practices law, and with other attorneys involved in cases where Plaintiff is representing a client as an attorney. This Court also finds that the evidence already before this Court indicates that Plaintiff has a substantial likelihood of prevailing on the merits of his case, that Plaintiff will suffer imminent and irreparable harm if Defendant is not restrained from further interfering in both his law practice and personal life, that Defendant will not suffer any undue hardship or loss by the issuance of a preliminary injunction, that a preliminary injunction will not adversely affect the public interest. The Court finds that Plaintiff has no other adequate remedy at law to prevent further interference by Defendant into his personal life and his law practice.

It is accordingly ORDERED that Defendant, together with his officer, agents, servants employees, and attorneys, together with all other persons acting in active concert or participation with such person, who receive actual notice of this order through personal service or otherwise are hereby ENJOINED AND RESTRAINED from:

(a)   Having any contact, of any nature, type, or description, through any type of communications medium, with Plaintiff, his co-workers, or employees. The persons named above may only communicate with Plaintiff to the extent necessary to comply with the orders of this or any other Court, the Federal Rules of Civil Procedure, the Texas Disciplinary Rules of Professional Conduct, and the Model Rules of Professional Conduct;

(b)     Having any contact, of any nature, type, or description, through any type of communications medium, with any member of Plaintiff's family including, but not limited to, Plaintiff's mother and father;

(c)     Having any contact concerning Plaintiff, of any nature, type, or description, through any type of communications medium, with any person or entity that is an employer of Plaintiff, an employer of any member of Plaintiff's family, or with whom Plaintiff, or any business in which Plaintiff has an interest, has an independent contractor relationship;

(d)     Having any contact concerning Plaintiff, of any nature, type, or description, with any person or entity with whom Plaintiff has an attorney-client relationship, their relatives, or their employers;

(e)     Having any contact concerning Plaintiff with any judicial officer in any case where Plaintiff is acting as an attorney and representing a client, except for communications and court filings permitted by court order, the rules of civil procedure, rules of criminal procedure, rules of appellate procedure, or duly promulgated local rules of practice; and

(f)     Having any contact concerning Plaintiff with any opposing attorney in any case where Plaintiff is acting as an attorney and representing either himself or a client, except in cases where Defendant is also a party and where such communication is permitted by court order, the rules of civil procedure, rules of criminal procedure, rules of appellate procedure, or duly promulgated local rules of practice.

This order does not prohibit, and is not intended to prohibit, Defendant's participation in any state bar disciplinary proceeding against or involving Plaintiff.

Pursuant to Rule 65(c), Plaintiff is ordered to post security in the amount of $100.00, which this Court finds proper to pay the costs and damages of any person wrongfully enjoined or restrained.