Thomas Retzlaff
PO Box 46424
Phoenix, AZ 85063-6424
P: (210) 317-9800
Email: retzlaff@texas.net

Defendant, Pro se

# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF ARIZONA
# PHOENIX DIVISION

| | |
|---|---|
| JASON LEE VAN DYKE,<br><br>      Plaintiff,<br><br>vs.<br><br>THOMAS CHRISTOPHER RETZLAFF,<br><br>      Defendant. | Case No.: 2:18-cv-04003-JJT<br><br>**RETZLAFF'S AMENDED ANTI-SLAPP MOTION TO DISMISS AND SUPPORTING MEMORANDUM**<br><br>**-- ORAL ARGUMENT REQUESTED --** |

Defendant, Tom Retzlaff, asks the Court to dismiss plaintiff's petition and request for injunction pursuant to the anti-SLAPP statute under the Texas Citizens Participation Act (codified in Texas Civil Practice & Remedies Code chapter 27). Retzlaff seeks $1 million in attorney's fees and mandatory sanctions.

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 1

## A. INTRODUCTION

Plaintiff is Jason Lee Van Dyke; defendant is Tom Retzlaff. In his original petition, Van Dyke sued Retzlaff for injunctive relief. (See ECF Dkt. #1-1.) Van Dyke, who is an attorney licensed in Colorado, Georgia, Texas, and Washington, D.C. is also suing Retzlaff on behalf of two other adult individuals who do not live in his household (Susan L. Van Dyke and Joshua L. Van Dyke).

## II. BACKGROUND FACTS

On November 8, 2018, Van Dyke filed (on behalf of himself and two other adult non-household members) a lawsuit seeking an injunction against harassment against Retzlaff in the Maricopa County Superior Court. (Dkt. #1-1.)

Retzlaff then filed Notice of Removal with the U.S. District Court for the District of Arizona – Phoenix Division. (Dkt. # 1.)

As stated above, Jason Van Dyke is an attorney licensed in Texas. In March 2017 he had been hired as an Assistant District Attorney in Victoria County, Texas.[1] He is also a leader within a violent white supremacist group called the *Proud Boys*. As

---

[1] Van Dyke lost this job on March 21, 2017, allegedly based upon a complaint Retzlaff filed with Steve Tyler, District Attorney of Victoria County. The complaint was based upon Van Dyke's violently racist views and his leadership within a white supremacist group being incompatible with being a public employee and a prosecutor in Texas – a state with the highest death penalty usage in the country.

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 2

an attorney, he frequently represents the *Proud Boys* and its leader Gavin McInnes in legal disputes all across the country.

According to recent news reports, the FBI has classified the *Proud Boys* as a violent, 'extremist' hate group with ties to white nationalism.  See attached **Exhibit One** – The Guardian news article: *FBI now classifies far-right Proud Boys as 'extremist group'*; **Exhibit Two** – Huffington Post article: *New Proud Boys Arrests Highlight Far-right Gangs Ties To Fascists Groups*; **Exhibit Three** – Report from the Clark Cty (Wash.) Sheriff's Office; **Exhibit Four** – Southern Poverty Law Ctr report.

Van Dyke is extremely violent and threatening on social media.  See attached **Exhibit Five** – a compilation of Van Dyke's recent social media posts.

As a direct result of the March 8, 2018, decision by the Texas Board of Disciplinary Appeals to order the commencement of disbarment proceedings against Van Dyke, on March 28, 2018, Van Dyke filed a lawsuit in the 431st District Court of Denton County, Texas, retaliating against Retzlaff seeking $100,000,000.00 in damages for libel, intrusion on seclusion, tortious interference with contract, and intentional infliction of emotional distress.  See attached **Exhibit Six** – the Texas lawsuit.  As a part of that lawsuit, Van Dyke is seeking injunctive relief identical to that which he seeks in the instant lawsuit here in Arizona.  See attached **Exhibit Seven** – the Injunction Motion.  This motion is currently pending before U.S. District Court

Judge Amos Mazzant of the Eastern District of Texas – Sherman Division in Case No. 4:18-cv-00247; **Exhibit Eight** – Van Dyke's motion to set injunction for hearing.

Even before each of these lawsuits were filed against Retzlaff, Van Dyke had openly bragged that he had sued "everyone who has ever filed a formal grievance against [him] with the State Bar:"

> Jason Lee Van Dyke <jason@vandykelawfirm.com>  Tue, Nov 12, 2013 at 5:02 PM
> To: Les Holtzman <57poker.pro@gmail.com>
>
> You stated that I filed a harmful and frivolous lawsuit. That is enough for me. . I will warn you: I have sued everyone who has ever filed a formal grievance against me with the State Bar. If you file some sort of groundless grievance with the State Bar I will make your life a living hell unlike anything you could imagine. I don't take such threats lightly. I will also warn you about that link you sent me: That information is false and defamatory. Any republication of the same by you or anyone under control will get you sued. I'd strongly advise you not to test me.

It appears Van Dyke was continuing his stated policy of "making your life a living hell unlike anything you could imagine" when he filed the instant series of SLAPP lawsuits against Retzlaff simultaneously in Arizona and Texas.

As an assistant district attorney (and as an attorney licensed in four states who is also a leader and spokesman for a well-known white supremacist group), Van Dyke is a public official who has, or appears to the public to have, a significant role in the business of government and public affairs. Courts have interpreted these criteria broadly, extending the public official classification to civil servants far down the government hierarchy. For example, the supervisor of a county recreational ski center was held to be a "public official" for purposes of defamation law. See *Rosenblatt v.*

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 4

*Baer*, 383 U.S. 75 (1966). The idea that lawyers occupy a special role in society is strong in the literature about the legal profession.[2] Lawyers are often described as leaders and public citizens who occupy special places of prominence within the community.[3]

## III. ARGUMENT & AUTHORITIES

When an individual attempts to manipulate the legal system to intimidate and silence others who have used the system to vindicate their rights, the act threatens a core value of democracy – the right to petition the government to address a grievance. Laura Lee Prather and Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech L. Rev. 725, 727 (2015).

A strategic lawsuit against public participation (SLAPP) is a lawsuit that is intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition. The typical SLAPP plaintiff does not normally expect to win the lawsuit. The plaintiff's goals are

---

[2] Se*e* Alex B. Long, *The Lawyer as Public Figure for First Amendment Purposes, 57 B.C.L. Rev.1543 (2016).*

[3] *See* Office of Lawyer Regulation v. Brandt (*In re* Disciplinary Proceedings Against Brand), 766 N.W.2d 194, 202 (Wis. 2009) (noting that "[a]ttorneys are officers of the court and should be leaders in their communities and should set a good example for others"); ANTHONY T. KRONMAN, THE LOST LAWYER: FAILING IDEALS OF THE LEGAL PROFESSION 14–16 (1993) (discussing the idea of the "lawyer-statesman" who is a leader in the community).

accomplished if the defendant succumbs to fear, intimidation, mounting legal costs, or simple exhaustion and abandons the criticism. A SLAPP may also intimidate others from participating in the debate. A SLAPP is often preceded by a legal threat not unlike the ones Van Dyke's has expressed via email or social media postings.

**A. This Action Is Governed By Texas Law**

Due to Arizona choice-of-law provisions, the Texas Anti-SLAPP statute (TCPA) is applicable to this case involving a plaintiff who claims Texas citizenship and who claims his injuries happened in Texas. *Pounders v. Enserch E&C Inc.*, 306 P.3d 9, 11-13 (Ariz. 2013); see, e.g., *Clifford v. Trump*, 2018 U.S. Dist. LEXIS 178688, *7-9 (C.D. of Calif. Oct 15, 2018) (applying TCPA to Calif. lawsuit involving Pres. Trump due to choice-of-law principals).

Arizona follows the Restatement's "most significant relationship" test. See *Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Magellan Real Estate Inv. Tr. v. Losch*, 109 F.Supp.2d 1144, 1155 (D. Ariz. 2000); Restatement (Second) of Conflict of Laws. Under this test, the law of the state that has the most significant relationship to an issue governs that issue. In a tort claim, factors to consider include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is

centered." *Magellan*, 109 F.Supp.2d at 1156 (quoting Restatement (Second) of Conflict of Laws § 145).

Further, the Restatement (Second) Conflicts of Law supports this Court finding that Texas law applies. In defamation lawsuits involving "multistate communication," a court must apply "the local law of the state where the plaintiff has suffered the greatest injury by reason of [his] loss of reputation," which "will usually be the state of the plaintiff's domicile if the matter complained of has there been published." Restatement (Second) of Conflict of Laws § 150 (1971).

Van Dyke states in his petition that he is a citizen and resident **of Texas** (Dkt. # 1-1 at ¶1.1), that he lost employment and other job opportunities **in Texas** (at ¶3.1, 3.2, 3.4), and damage to his reputation **in Texas** (at ¶3.3), and suffered alleged "stalking" and "harassment" **in Texas** (at ¶3.5-3.13) and that he has suffered $100 million in damages **in Texas** (Exhibit Six at ¶6.1(b), (d)) – all as a result of Retzlaff's alleged actions – *in Texas!*

## B. The Texas anti-SLAPP Statute Applies To This Legal Action

The TCPA has been referred to as an "across-the-board gamechanger in Texas civil litigation,"[4] creating a sweeping dismissal mechanism that extends far beyond the

---

[4] *Serafine v. Blunt*, 466 S.W.3d 352, 365 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring).

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 7

traditional aims of strategic lawsuits targeting First Amendment rights. One pair of authors has called the TCPA the "broadest anti-SLAPP statute in the nation."[5] The TCPA applies to any "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief" that is based on or relates to a communication made in connection with a "matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3) (defining "exercise of the right of free speech") and (6) (defining "legal action"). A "matter of public concern" is defined expansively to include an issue related to such topics as "health or safety"; economic or community "well-being"; and even a "good, product, or service in the marketplace." *Id*., § 27.001(7) (defining "matter of public concern"). See attached **Exhibit Nine** – Full text of the TCPA.

The communication need not even be public to trigger the TCPA's protection. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). The TCPA also protects a party's exercise of the "right to petition" and the "right of association"— statutory terms that are defined much more broadly than their constitutional counterparts. *See* Tex. Civ. Prac. & Rem. Code § 27.003(2), (4); *see also Elite Auto Body LLC v. Autocraft Bodywerks, Inc*., 520 S.W.3d 191, 202 (Tex. App.—Austin 2017, pet. dism'd) ("The Texas Supreme Court in Coleman seems to have put to rest any notion

---

[5] April Farris and Matthew Zorn, Law 360, "State Anti-SLAPP in Federal Court: An Update From Texas," November 1, 2018.

that any constitutional connotations of 'right of association,' 'right of free speech,' or 'right to petition' should inform the meaning of the TCPA's corresponding 'exercise of' definitions....").

In the lawsuits at hand (within this Court and within the E.D. of Texas), Van Dyke is seeking to chill Retzlaff's First Amendment rights when he admits facts in his petition that shows that this lawsuit (styled as a "Petition for Injunction Against Harassment") is the direct result of (1) Retzlaff's petitioning the government in the form of a grievance filed with the State Bar of Texas, and (2) his further petitioning the government with regards to the qualifications (or complete lack thereof) Van Dyke has for the public office of Chief Felony Prosecutor in the Victoria County, Texas, District Attorney's Office, or (3) Retzlaff's alleged communications to others in the community relating to the legal services offered by Van Dyke (an attorney) in the marketplace, or (4) Retzlaff alleged communications pertaining to a public figure / public official on matters of public controversy. In an email dated October 19, 2018, to Retzlaff's attorney, Van Dyke specifically states that this is his goal. See attached **Exhibit Ten**.

The fact that Van Dyke publicly lists his political views as "Fascist" on his Facebook account should give the Court pause when considering plaintiff's request for injunctive relief demanding that Retzlaff stop calling him a Nazi. See attached **Exhibit Eleven** – Van Dyke's Facebook profile.

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 9

## C. The TCPA Safeguards Substantive Rights

The TCPA uses procedural mechanisms to safeguard important *substantive* rights. As the Ninth Circuit observed in reaffirming that California's anti-SLAPP statute is applicable in federal court:

> **Refusing to recognize [the limitations placed on SLAPPs by seven state legislatures is] bad policy.... If we ignore how state legislatures have limited actions under their own laws, we not only flush away state legislatures' considered decisions on matters of state law, but we also put the federal courts at risk of being swept away in a rising tide of frivolous state actions that would be filed in our circuit's federal courts.**

*Makeoff v. Trump University, LLC*, 736 F.3d 1180, 1181-87 (9th Cir. 2013).

The reasoning of the courts finding state anti-SLAPP laws applicable in federal court is consistent with the "outcome determination" test used in this circuit to determine whether a state rule or law is procedural or substantive. *Cnty. of Orange v. United States Dist. Court*, 784 F.3d 520, 528 (9th Cir. 2015). Under the outcome-determination test, courts consider whether it would "significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court." *Gasperini v. Ctr. For Humanities*, 518 U.S. 415, 427 (1996). That test, however, "must be guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Gasperini*, 518 U.S. at 428; *see also U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999)

(California's anti-SLAPP statute furthered "substantive" interests and served dual *Erie* purposes).

To safeguard these constitutional rights expeditiously and by cost-effective means, the TCPA gives defendants the power to resolve at an early stage whether a legal action impinging on such rights has merit by filing a motion to dismiss (commonly referred to as an "anti-SLAPP motion" or a motion to dismiss a "Strategic Lawsuit Against Public Participation"). See Tex. Civ. Prac. & Rem. Code §27.003(a), (b). Once the motion is filed, all discovery is stayed in the legal action until the court rules on the motion, which must occur within 60 days after the motion is served. See *id*. §§27.003(c), 27.004, 27.005. If the defendant is successful in dismissing the legal action, the defendant is entitled to court costs, attorney fees, and other expenses incurred in defending against the action as justice and equity may require. Id. §27.009(a)(1). ==The court must also impose sanctions sufficient to deter the plaintiff from bringing a similar action in the future==. *Id*. §§27.007(a), 27.009(a)(2).

To succeed on a motion to dismiss under the TCPA, the defendant must show by a preponderance of the evidence that the plaintiff's legal action is based on, related to, or in response to the defendant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. Tex. Civ. Prac. & Rem. Code §27.005(b); *Hersh v. Tatum*, 526 S.W.3d 462 (Tex. 2017); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015).

If the defendant meets its burden, the court must dismiss the plaintiff's action unless the plaintiff can either (1) establish that the challenged claim is exempt from the TCPA, or (2) establish by clear and specific evidence a prima facie case for each essential element of the challenged claim. See Tex. Civ. Prac. & Rem. Code §§27.005(c), 27.010; *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017); In re Lipsky, 460 S.W.3d at 587. ==In evaluating a motion to dismiss, the court must construe the TCPA liberally to fully effectuate its purpose and intent to encourage and safeguard a defendant's constitutional rights==. See Tex. Civ. Prac. & Rem. Code §§27.002, 27.011.

**D. Dismissal Of Van Dyke's Legal Action Is Warranted Under The TCPA**

Van Dyke's petition should be dismissed because it is clearly based on, related to, or in response to Retzlaff's exercise of his right of free speech. Under the TCPA, a defendant exercises his right of free speech when he makes a communication in connection with a matter of public concern. Tex. Civ. Prac. & Rem. Code §27.001(3); *Hersh*, 526 S.W.3d at 466; *ExxonMobil*, 512 S.W.3d at 898; Lippincott, 462 S.W.3d at 509.

In his petition, Van Dyke seeks an injunction prohibiting Retzlaff from:

a) Committing any act of harassment against Plaintiff or the other protected persons, either through his own name, the use of a pseudonym (e.g. "Dean Anderson"), or on his "BV Files" website located at www.ViaViewFiles.net;

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 12

b) Having any contact with Plaintiff except through attorneys, legal process, court hearings, and hearings of administrative agencies (e.g. State Bar of Texas;

c) Having any contact with the other protected persons except through attorneys, legal process, court hearings, and hearings of administrative agencies (e.g. State Bar of Texas);

d) From going near 108 Durango Drive, Crossroads, TX 76227 or 13360 Chittamwood Lane, Frisco, TX 75035 for any reason;

e) From having any contact with Plaintiff's employers, persons or entities with whom Plaintiff has an independent contractor relationship, or any persons or entities with whom Plaintiff has an attorney-client relationship; and,

f) From having any contact with any employer of the other protected persons, or any other person or entity with whom the other protected persons have an independent contractor relationship.

See Petition at ¶5.1 (Dkt. # 1-1.)

In construing the TCPA liberally (as this Court is required to do), these allegations clearly fall within the scope of the TCPA because they are based on, related to, or in response to a communication made by Retzlaff on a matter of public concern. Van Dyke's fitness and qualifications for the job of felony prosecutor (let alone being a member of the State Bar!), in light of his open and violently racist statements, is clearly a matter of public concern. See, e.g., recent news articles regarding Van Dyke and the *Proud Boys* in attached **Exhibits Thirteen – Sixteen**. The same is true regarding Van Dyke's claims that Retzlaff made statements to the KLM law firm and many others relating to legal services offered by attorney Van Dyke in the marketplace. See, e.g., *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App. – Houston

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 13

[14th Dist.] 2015, no pet.) (website dedicated to criticism of attorney addressed the attorney's legal services which were offered on the public marketplace, and qualified as a communication made in connection with a matter of public concern, i.e., the exercise of free speech within scope of TCPA); see also *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App. – Dallas 2012, pet. denied) (communication on television about lawyer's handling of cases was a matter of public concern because it related to lawyer's services in the marketplace).

Van Dyke himself (whose recent arrest for filing false police reports garnered international publicity[6]) is a leader within the *Proud Boys* organization and frequently acts as their attorney. See, e.g., *Vangheluwe v. Got News, LLC, et al.*, 2:18-cv-10542 (E.D. of Mich.) (Van Dyke is representing *Proud Boys* leader Gavin McInnes in a lawsuit related to the Charlottesville, VA "alt-right" march organized by members of the *Proud Boys* that led to several deaths and injuries last year).

Even taking Van Dyke's claims as true, Retzlaff has a Constitutional right to contact Van Dyke's employers, clients, potential clients, and the community at large, about his racially charged online activities, or his fitness and qualifications for public office and being a member of the State Bar. The United States Supreme Court has determined in similar cases that speech like Retzlaff's is protected. See *Org for a*

---

[6] Andy Campbell, *Proud Boys Lawyer Arrested For Lying To Cops, Can Still Practice Law*, The Huffington Post, September 19, 2018 – **Exhibit 12**.

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 14

*Better Austin v Keefe*, 402 US, 415, 417-419 (1971) (holding that First Amendment protection applied to the distribution of leaflets even where those leaflets accused an individual of racism, provided personal information about the person including his telephone number, and urged the recipients of the leaflets to contact him); *see also NAACP v Claiborne Hardware Co.*, 458 US 886, 909-910 (1982) (holding that "[s]peech does not lose its protected character," even where the speech involved publicly listing the names of individuals that did not participate in a boycott, which undoubtedly was meant to lead to unconsented contact with those individuals, so as to "persuade [them] to join the boycott through social pressure and the 'threat' of social ostracism.").

At its very base, the exception to the First Amendment for incitement of imminent lawless action requires that the incitement be for actually illegal actions, not just inconvenient or aggravating ones. See *id*. "There is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v State College Area Sch Dist.*, 240 F3d 200, 204 (3rd Cir. 2001) (opinion by ALITO, J.). Here, the record does not support that Retzlaff's statements were intended to incite imminent lawless action. *Keefe*, 402 US at 417-419.

What Van Dyke blithely characterizes as the "legal torts" of "harassment" and "stalking" consists of Constitutionally protected petitioning of the government, engaging or participating in an economic boycott, and speech regarding a matter of

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 15

public concern that pertains to a public official / public figure who is embroiled in numerous public controversies.

With regards to the rest of Van Dyke's allegations, Retzlaff states in his attached affidavit that he has never had any contact at all with either Sandra Van Dyke or Joshua Van Dyke.[7] See Retzlaff affidavit at ¶4.

**E. Sanctions & Attorney's Fees Under The TCPA Are Mandatory**

The TCPA provides, in pertinent part:

(a) If the court orders dismissal of a legal action under this chapter, the court **shall** award to the moving party:

(1) court costs, reasonable **attorney's fees**, and other expenses **incurred in defending against the legal action** as justice and equity may require;

(2) **sanctions** against the party who brought the legal action as the court determines sufficient to **deter the party who brought the legal action** from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code § 27.009(a)(1)-(2) (emphasis added).

The award of attorney's fees is mandatory. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *Cruz v. Van Sickle*, 452 S.W.3d 503, 522 (Tex.App. – Dallas 2014, pet. denied). Further, because the TCPA requires an award of fees

---

[7] The Texas Supreme Court has held that, under the TCPA, a defendant moving for dismissal need show only that the plaintiff's "legal action is based on, relates to, or is in response to the [defendant's] exercise of . . . the right of free speech" – that is, "a communication made in connection with a matter of public concern" – not that the communication actually occurred. *Hersh*, 526 S.W.3d at 467.

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 16

"incurred in defending against the legal action," the award includes **all fees incurred from the inception of the dispute through its conclusion**, not just those related to the anti-SLAPP motion.

The award of sanctions is mandatory. Under the TCPA, a successful movant is entitled to sanctions "to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). "[W]hen a legal action is dismissed under the TCPA, an award of sanctions against the party who brought the action **is mandatory** under section 27.009." *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 612-13 (Tex.App. – Fort Worth 2017, pet denied) (emphasis added); *see also Serafine v. Blunt*, 2017 WL 2224528, at *7 (Tex.App. – Austin May 19, 2017, pet. denied) (Section 27.009(a)(2) gives "the trial court broad discretion to determine an amount" of sanctions).

As we have just seen in *Clifford v. Trump*, the TCPA not only applies in federal court, but it applies to federal courts within the Ninth Circuit.

Respectfully submitted,

Dated: November 23, 2018   By:_____
                                                     Thomas Retzlaff
                                                    Defendant, In Pro Per

# CERTIFICATE OF SERVICE

I certify that I delivered a true copy of this document to the pro se plaintiff, Jason Van Dyke, via 1st class US Mail to his address of record, 108 Durango Dr., Crossroads, TX 76227, on November 23, 2018.

By:_____
Thomas Retzlaff
Defendant, In Pro Per

DEFENDANT'S ANTI-SLAPP MOTION TO DISMISS AND FOR SANCTIONS- 18